United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 15, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AVAYA INC., *et al.*,[1] | ) Case No. 23-90088 (DRJ) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No.  52** |

**ORDER (I) SCHEDULING
A COMBINED DISCLOSURE STATEMENT
APPROVAL AND PLAN CONFIRMATION HEARING,
(II) CONDITIONALLY APPROVING THE DISCLOSURE
STATEMENT, (III) ESTABLISHING A PLAN AND DISCLOSURE STATEMENT
OBJECTION DEADLINE AND RELATED PROCEDURES, (IV) APPROVING
THE SOLICITATION PROCEDURES, (V) APPROVING THE COMBINED NOTICE,
(VI) EXTENDING THE TIME BY WHICH THE U.S. TRUSTEE CONVENES A MEETING
OF CREDITORS AND THE DEBTORS FILE (A) SCHEDULES AND SOFAS AND
(B) RULE 2015.3 FINANCIAL REPORTS, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) scheduling the Combined Hearing; (b) conditionally approving the Disclosure Statement; (c) establishing the Objection Deadline and approving related procedures; (d) approving the Solicitation Procedures; (e) approving the form and manner of the Combined Notice; (f) approving the form and manner of the Publication Notice; (g) approving the form of the Opt-Out Forms; (h) approving the form of the Ballots; (i) approving the RO Procedures and related dates and deadlines and the RO Materials; (j) extending the time by which (i) the U.S. Trustee convenes the Creditors' Meeting under section 341(e) of the Bankruptcy Code and (ii) the Debtors file Schedules, SOFAs, and

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/avaya.  The location of Debtor Avaya Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 350 Mount Kemble Avenue, Morristown, New Jersey 07960.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Motion.

2015.3 Reports, in each case, until April 14, 2023, and without prejudice to the Debtors' ability to request additional extensions for cause or to file a motion with the Court seeking a modification of such reporting requirements for cause; (k) allowing the notice period for the Disclosure Statement and the Combined Hearing to run simultaneously; and (l) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Combined Hearing, at which time this Court will consider, among other things, final approval of the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on **March 22, 2023, at 10:00 a.m., prevailing Central Time**.

2.      The Disclosure Statement is conditionally approved and its use in the Debtors' prepetition solicitation of acceptances of the Plan is approved.

3.      The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

4.      Any objections to adequacy of the Disclosure Statement and confirmation of the Plan must be filed on or before **March 17, 2023, at 4:00 p.m., prevailing Central Time**.

5.      Any objections to the Disclosure Statement or confirmation of the Plan must:

a.      be in writing;

b.      comply with the Bankruptcy Rules and the Bankruptcy Local Rules;

c.      state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity;

d.      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

e.      be filed with this Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

6.      Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled.

7.      The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including any applicable registration requirements under the Securities Act, and any exemptions from registration under Blue Sky requirements and are approved.

8.      The form of the Combined Notice, substantially in the form attached hereto as **Exhibit 1**, the Publication Notice, substantially in the form attached hereto as **Exhibit 2**, and the

Opt-Out Forms, substantially in the forms attached hereto as **Exhibits 3**, **3A**, **3B**, **3C**, **3D**, and **3E**, and service thereof, comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and are approved.

9.     The Confirmation Schedule is approved (subject to modification as necessary) as follows:

| Event | Date |
|---|---|
| Voting Record Date | February 9, 2023 |
| Solicitation Commencement Date | February 14, 2023 |
| Voting Deadline | March 17, 2023, at 4:00 p.m., prevailing Central Time |
| Opt-Out Deadline | March 17, 2023, at 4:00 p.m., prevailing Central Time |
| Objection Deadline | March 17, 2023, at 4:00 p.m., prevailing Central Time |
| Combined Hearing | March 22, 2023 at 10:00 a.m., prevailing Central Time |

10.     The Solicitation Packages provide the Holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code, and the Bankruptcy Local Rules.  Service of the Solicitation Packages shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

11.     The Debtors are authorized to enter into transactions to cause the Publication Notice to be published in the *New York Times* within five (5) business days following entry of this Order, or as soon as reasonably practicable thereafter, and to make reasonable payments required for such publication.  The Publication Notice, together with the Combined Notice provided for in the Motion, is deemed to be sufficient and appropriate under the circumstances.

12.     The Ballots, substantially in the forms attached hereto as **Exhibits 4A**, **4B**, and **4C**, are approved.

13.     The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballot are approved.

14.     The RO Procedures, substantially in the form attached hereto as **Exhibit 5** and related dates and deadlines, and the form of materials necessary to consummate the Rights Offering under the terms of the RO Procedures, including the Subscription Forms, substantially in the forms attached hereto as **Exhibit 6** and **6A**, are approved.

15.     The Debtors are authorized, subject to any consent rights set forth in the RSA, to make non-substantive changes to the Disclosure Statement, the Plan, the Solicitation Packages, the Combined Notice, the Publication Notice, the Opt-Out Forms, the Ballots, the RO Procedures, the RO Materials, and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any materials in the Solicitation Packages before distribution.

16.     The Debtors reserve the right to modify the Plan in accordance with the terms thereof and the consent rights set forth in the RSA, without further order of the Court in accordance with Article X of the Plan.

17.     The time by which the U.S. Trustee convenes a Creditors' Meeting under section 341(e) of the Bankruptcy Code is extended to and including April 14, 2023, without prejudice to the Debtors' right to request further extensions or a waiver thereof either by agreement with the U.S. Trustee or by further motion.

18.     The time by which the Debtors file their Schedules and SOFAs is extended to and including April 14, 2023, without prejudice to the Debtors' rights to request further extensions thereof either by agreement with the U.S. Trustee or by further motion.

19.     The time by which the Debtors file the 2015.3 Reports is extended to and including April 14, 2023, without prejudice to the Debtors' rights to seek an additional extension or waiver upon cause shown therefor or to file a motion with the Court seeking a modification of the reporting requirements for cause.

20.     The notice and objection procedures set forth in this Order and the Motion constitute good and sufficient notice of the Confirmation Hearing, commencement of these Chapter 11 Cases, deadline and procedures for objection to approval of the Solicitation Procedures, adequacy of the Disclosure Statement, and confirmation of the Plan, and no other or further notice shall be necessary.

21.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to Holders of Claims that are unimpaired under, and conclusively presumed to accept, the Plan or Holders of Claims that do not receive or retain any property under, and conclusively presumed to reject, the Plan.

22.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

23.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

25.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

27.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  February 15, 2023.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## __Exhibit 1__

**Combined Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 23-90088 (DRJ) |
| AVAYA INC., *et al.*,[1] | ) |
| | ) (Joint Administration Requested) |
| Debtors. | ) |

**NOTICE OF (I) COMMENCEMENT OF**
**PREPACKAGED CHAPTER 11 BANKRUPTCY**
**CASES, (II) HEARING ON THE DISCLOSURE STATEMENT,**
**CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11**
**PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINES**
**AND SUMMARY OF THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

**NOTICE IS HEREBY GIVEN** as follows:

On February 14, 2023 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") the *Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and proposed disclosure statement [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection, for a fee, at https://pacer.gov (account required) or, free of charge, on the Debtors' restructuring website at http://www.kccllc.net/avaya.[2]

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/avaya. The location of Debtor Avaya Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 350 Mount Kemble Avenue, Morristown, New Jersey 07960.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

The Plan is a "prepackaged" plan of reorganization.  The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, and additional costs, and, ultimately, would jeopardize recoveries for holders of allowed claims.

### <u>Hearing on Confirmation of the Plan and the Adequacy of the Disclosure Statement</u>

A hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "<u>Combined Hearing</u>") will be held before David R. Jones, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on [●], 2023, at [●] [a./p.]m., prevailing Central Time, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court.  Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

### <u>Information Regarding the Plan</u>

**<u>Voting Record Date</u>**. The voting record date was **<u>February 9, 2023</u>**, which was the date used for determining which Holders of Claims in Class 4 were entitled to vote on the Plan.

**<u>Objections to the Plan</u>**.  The deadline for filing objections to the Plan is **<u>March 17, 2023, at 4:00 p.m., prevailing Central Time</u>**.  Any objections (each, an "<u>Objection</u>") to the Plan or the Disclosure Statement must:  (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; and (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

---

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**

---

Objections must be filed with the Bankruptcy Court and served so as to be **actually received** no later than **March 17, 2023, at 4:00 p.m., prevailing Central Time**, by those parties who have filed a notice of appearance in the Debtors' Chapter 11 Cases as well as the following parties:

| | |
|---|---|
| **Debtors** | **Avaya Holdings Corp.** <br> 350 Mt. Kemble Avenue <br> Morristown, NJ 07960 <br> Attn:  Shefali Shah, Chief Administrative Officer and Vito Carnevale, General Counsel |
| **Proposed Counsel to the Debtors** | **Kirkland & Ellis LLP** <br> **Kirkland & Ellis International LLP** <br> 601 Lexington Avenue <br> New York, New York 10022 <br> Attn:  Joshua A. Sussberg, P.C., Aparna Yenamandra, P.C., Rachael M. Bentley, and Andrew Townsell <br><br> -and- <br><br> 300 North LaSalle Street <br> Chicago, Illinois 60654 <br> Attn:  Patrick J. Nash, Jr., P.C. <br><br> -and- <br><br> **Jackson Walker LLP** <br> 1401 McKinney Street, Suite 1900 <br> Houston, Texas 77010 |

|  | Attn:  Matthew D. Cavenaugh, Rebecca Blake Chaikin, Genevieve M. Graham, and Emily Meraia |
|---|---|
| **United States Trustee** | **Office of the United States Trustee for the Southern District of Texas** 515 Rusk Street, Suite 3516 Houston, Texas 77002 Attn:   Stephen Statham and Hector Duran |

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**AS DESCRIBED BELOW, YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Summary of Plan Treatment

The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtors, and indicates the voting status of each class.

| SUMMARY OF ESTIMATED RECOVERIES | | | | |
|---|---|---|---|---|
| **Class** | **Claim/Interest** | **Treatment of Claim/ Interest** | **Projected Allowed Amount of Claims** | **Estimated % Recovery Under Plan[3]** |
| Class 1 | Other Secured Claims | Each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the option of the applicable Debtor or Reorganized Debtor, either:  (i) payment in full in Cash of its Allowed Other Secured Claim; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. | $17 million | 100% |
| Class 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. | $22 million | 100% |
| Class 3 | Prepetition ABL Claims | Each Holder of a Prepetition ABL Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Prepetition ABL Claim. | $56 million *plus* $39 million of letter of credit obligations | 100% |

---

[3]   The estimated recovery for Class 4 is subject to dilution on account of the Management Incentive Plan.

| | | SUMMARY OF ESTIMATED RECOVERIES | | |
|---|---|---|---|---|
| **Class** | **Claim/Interest** | **Treatment of Claim/ Interest** | **Projected Allowed Amount of Claims** | **Estimated % Recovery Under Plan[3]** |
| Class 4 | First Lien Claims | Each Holder of a First Lien Claim shall receive, in full and final satisfaction of such Claim, (i) such Holder's applicable Takeback Term Loan Recovery, (ii) its *Pro Rata* share of 100% of the New Equity Interests, subject to dilution on account of the Management Incentive Plan Pool; the RO Common Shares, the RO Backstop Shares, the RO Premium Shares, and the DIP Commitment Shares, and (iii) its *Pro Rata* share of the Rights. | $3,006 million | 17.3–24.1%[4] |
| Class 5 | B-3 Escrow Claims | Each Holder of a B-3 Escrow Claim shall receive, in full and final satisfaction of such Claim, its *Pro Rata* share of the Escrow Cash. | $221 million | 100% |
| Class 6 | Non-HoldCo General Unsecured Claims | Each Holder of an Allowed Non-HoldCo General Unsecured Claim shall receive, in full and final satisfaction of such Claim, either: (i) reinstatement of such Allowed Non-HoldCo General Unsecured Claim pursuant to section 1124 of the Bankruptcy Code; or (ii) payment in full in cash on (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Non-HoldCo General Unsecured Claim. | $219 million | 100% |
| Class 7 | HoldCo Convertible Notes Claims | On the Effective Date, all HoldCo Convertible Notes Claims will be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of HoldCo Convertible Notes Claims will not receive any distribution on account of such HoldCo Convertible Notes Claims. | $221 million | 0% |
| Class 8 | HoldCo General Unsecured Claims | On the Effective Date, all HoldCo General Unsecured Claims will be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of HoldCo General Unsecured Claims will not receive any distribution on account of such HoldCo General Unsecured Claims. | $0 | 0% |
| Class 9 | Intercompany Claims | Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor (with the consent of the Required Lenders, which consent shall not be unreasonably withheld), either Reinstated, converted to equity, otherwise set off, settled, distributed, contributed, canceled, or released, in each case, in accordance with the Description of Transaction Steps. | N/A | 0% or 100% |

---

4    Recoveries shown include value in respect of rights to participate in the Rights Offering. The low end of the range of recovery assumes the Holder of a First Lien Claim does not participate in the Rights Offering, whereas the high end of the range of recovery assumes the Holder of a First Lien Claim fully participates in the Rights Offering.

| SUMMARY OF ESTIMATED RECOVERIES | | | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Allowed Amount of Claims | Estimated % Recovery Under Plan[3] |
| Class 10 | Section 510 Claims | On the Effective Date, all Section 510 Claims will be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of Section 510 Claims will not receive any distribution on account of such Section 510 Claims. | N/A | 0% |
| Class 11 | Intercompany Interests | On the Effective Date, Intercompany Interests shall, at the election of the applicable Debtor (with the consent of the Required Lenders, which consent shall not be unreasonably withheld), be (i) Reinstated or (ii) set off, settled, addressed, distributed, contributed, merged, canceled, or released, in each case, in accordance with the Description of Transaction Steps. | N/A | 0% or 100% |
| Class 12 | Existing Avaya Interests | On the Effective Date, all Existing Avaya Interests will be cancelled, released, and extinguished and will be of no further force and effect, and Holders of Existing Avaya Interests will not receive any distribution on account thereof. | N/A | 0% |

## Discharge, Injunctions, Exculpation, and Releases

Please be advised that the Plan contains certain release, exculpation, and injunction provisions as follows:

### Relevant Definitions

"**Exculpated Parties**" means, collectively, and in each case in its capacity as such: (a) the Debtors, and (b) the directors or managers of any Debtor.

"**Related Party**" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

"**Released Party**" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Settlement Group Releasing Party; (e) RingCentral; (f) each Agent/Trustee; (g) each DIP Commitment Party and each DIP Lender; (h) each RO Backstop Party; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); (j) each Related Party of each Entity in clause (c) through this clause (j); (k) each Debtor Related Party of each Entity in clause (a) and

(b); *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article VIII.D or Article VIII.E of the Plan; (y) timely objects to the releases contained in Article VIII.D or Article VIII.E of the Plan and such objection is not resolved before Confirmation; or (z) was the beneficiary of the repurchase, redemption, or other satisfaction of HoldCo Convertible Notes prior to the Petition Date.

"**Releasing Party**" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) RingCentral; (e) each DIP Lender; (f) each Agent/Trustee; (g) each Consenting Stakeholder; (h) all Holders of Claims that vote to accept the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) each current and former Affiliate of each Entity in clause (a) through (k); and (m) each Related Party of each Entity in clause (a) through (l) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation. Notwithstanding the foregoing, any Entity that is a Settlement Group Releasing Party shall not be a Releasing Party unless such Entity is a member of the PW Ad Hoc Group as of the Petition Date, in which case such Entity shall not be a Releasing Party solely with respect to any HoldCo Convertible Notes Claims.

"**Settlement Group Releasing Party**" means a holder of HoldCo Convertible Notes Claims, solely in its capacity as such, that does not (x) elect to opt out of the releases contained in Article VIII.E of the Plan; or (y) object to, challenge, or impede in any manner, formally or informally, any action taken by the Debtors or any Consenting Stakeholders in the Chapter 11 Cases, the transactions contemplated by the RSA, the Plan, the Restructuring Transactions or the entry of any order consistent with, or contemplated by, the terms of the RSA.

**A.   *Discharge of Claims and Termination of Interests.***

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have**

been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

**B.   *Release of Liens*.**

Except as otherwise provided in the Exit Facilities Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Error! Reference source not found. hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

**C.   *Releases by the Debtors*.**

As of the Effective Date and subject to (i) the settlement set forth in Article IV.B of the Plan, as applicable, (ii) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this Release, and (iii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the

Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan (including the Preserved Tranche B-3 Claims), the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, the Governance Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release (including the release of the Preserved Tranche B-3 Claims), which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith

settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**D. *Releases by Third Parties Other than the Settlement Group Releasing Parties*.**

As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

E. *Releases by the Settlement Group Releasing Parties*.

As of the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by each Settlement Group Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Settlement Group Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the

restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained in the Plan to the contrary, but subject in all respects to the immediately following sentence, the Settlement Group Release shall include any and all claims and Causes of Action alleged in, or related to, that certain Summons with Notice filed in the Supreme Court of the State of New York, New York County, Index Number: 650626/2023, which shall be deemed released with prejudice by the Settlement Releasing Parties, in their capacity as such, and withdrawn upon the occurrence of the Effective Date. Notwithstanding the foregoing, (a) to the extent the largest Holder of Secured Exchangeable Notes Claims in the Akin Ad Hoc Group as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Secured Exchangeable Notes Claim, a Settlement Group Releasing Party that is also a Holder of a Secured Exchangeable Notes Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Secured Exchangeable Notes Claim, (b) to the extent a Holder or group of Holders holding at least 25% of the amount of B-3 Term Loan Claims as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a B-3 Term Loan Claim, a Settlement Group Releasing Party that is also a Holder of a B-3 Term Loan Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such B-3 Term Loan Claim, and (c) to the extent a Holder or group of Holders holding at least 50% of the amount of Legacy Term Loan Claims or Legacy Notes Claims, as applicable, in the aggregate as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Legacy Term Loan Claim or a Legacy Notes Claim, as applicable, a Settlement Group Releasing Party that is also a Holder of Legacy Term Loan Claims or Legacy Notes Claim, as applicable, as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Legacy Term Loan Claim or Legacy Notes Claim, as applicable; provided, for the avoidance of doubt, no Settlement Group Releasing Party shall bring any claims or Causes of Action against any Entity in respect of any HoldCo Convertible Notes Claims or in respect of any Claims previously owned by such Settlement Group Releasing Party prior to the Petition Date but not owned as of the Petition Date. Notwithstanding anything in this Settlement Party Release, any member of the PW Ad Hoc Group as of the Petition Date shall only be a Settlement Group Releasing Party with respect to its HoldCo Convertible Notes Claims.

F. *Exculpation*.

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the

negotiation and pursuit of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action (including, for the avoidance of doubt, any Claim or Cause of Action with respect to (i) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (ii) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

## G. *Injunction*.

Except as otherwise expressly provided in this Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff

on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, Article VIII.E, and Article VIII.F hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Houston, Texas
Dated:  [●], 2023

/s/
_____

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Rebecca Blake Chaikin (TX Bar No. 24133055)
Genevieve M. Graham (TX Bar No. 24085340)
Emily Meraia (TX Bar No. 24129307)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:       (713) 752-4200
Facsimile:       (713) 752-4221
Email:           mcavenaugh@jw.com
                 rchaikin@jw.com
                 ggraham@jw.com
                 emeraia@jw.com


*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra , P.C. (*pro hac vice* pending)
Rachael M. Bentley (*pro hac vice* pending)
Andrew Townsell (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                 aparna.yenamandra@kirkland.com
                 rachael.bentley@kirkland.com
                 andrew.townsell@kirkland.com

                 -and-

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       patrick.nash@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit 2

**Proposed Publication Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 23-90088 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

## NOTICE OF COMMENCEMENT OF PREPACKAGED CHAPTER 11
## BANKRUPTCY CASES AND HEARING ON THE DISCLOSURE STATEMENT
## AND CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN

**TO:**   **ALL HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND PARTIES IN INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

**PLEASE TAKE NOTICE THAT** on February 14, 2023 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") the *Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code]* [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and proposed disclosure statement [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection, for a fee, at https://pacer.gov (account required) or, free of charge, on the Debtors' restructuring website at http://www.kccllc.net/avaya.[2]

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Combined Hearing") will be held before David R. Jones, United States Bankruptcy Judge, in Courtroom 400, 4th Floor of the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on [●], 2023, at [●]

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/avaya. The location of Debtor Avaya Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 350 Mount Kemble Avenue, Morristown, New Jersey 07960.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

[a./p.]m., prevailing Central Time, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court.  Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** objections (each, an "Objection"), if any, to the Plan or the Disclosure Statement <u>must</u>: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the the of the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity or individual; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Bankruptcy Court (contemporaneously with a proof of service) and served so as to be **actually received** no later than **March 17, 2023, at 4:00 p.m., prevailing Central Time**, by those parties who have a filed a notice of appearance in the Debtors' Chapter 11 Cases as well as each of the following parties:

| | |
|---|---|
| **Debtors** | **Avaya Holdings Corp.**<br>350 Mt. Kemble Avenue<br>Morristown, NJ 07960<br>Attn:   Shefali Shah, Chief Administrative Officer and Vito Carnevale, General Counsel |
| **Proposed Counsel to the Debtors** | **Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:   Joshua A. Sussberg, P.C., Aparna Yenamandra, P.C., Rachael M. Bentley, and Andrew Townsell<br><br>-and-<br><br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn:   Patrick J. Nash, Jr., P.C.<br><br>-and-<br><br>**Jackson Walker LLP**<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Attn:   Matthew D. Cavenaugh, Rebecca Blake Chaikin, Genevieve M. Graham, and Emily Meraia |

| | |
|---|---|
| **United States Trustee** | **Office of the United States Trustee**<br>**for the Southern District of Texas**<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attn:   Stephen Statham and Hector Duran |

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

---

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE, AND ARTICLE VIII.E CONTAINS A SETTLEMENT GROUP RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

---

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLES VIII.D OR VIII.E OF THE PLAN; OR (Y) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLES VIII.D OR VIII.E OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**

---

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## **Exhibit 3**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 23-90088 (DRJ) |
| AVAYA INC., *et al.*,[1] | ) |
| | ) (Joint Administration Requested) |
| Debtors. | ) |

**NOTICE OF NON-VOTING STATUS**
**TO HOLDERS OR POTENTIAL HOLDERS**
**OF UNIMPAIRED CLAIMS CONCLUSIVELY**
**PRESUMED TO ACCEPT THE PLAN AND HOLDERS OR POTENTIAL**
**HOLDERS OF IMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO REJECT THE PLAN**

**PLEASE TAKE NOTICE THAT** on February 14, 2023 (the "Petition Date"), Avaya Inc. and its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") the *Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Plan")[2] and a related disclosure statement [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection, for a fee, at https://pacer.gov (account required) or, free of charge, on the Debtors' restructuring website at http://www.kccllc.net/avaya.

**PLEASE TAKE FURTHER NOTICE THAT** you are a Holder or potential Holder of a Claim against or Interest in the Debtors that, due to the nature and treatment of such Claim or Interest under the Plan, *is **not** entitled to vote on the Plan*. Specifically, under the terms of the Plan, a Holder of a Claim in a Class that is not Impaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or a Holder of a Claim or Interest in a Class that is Impaired under the Plan and, therefore, conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, is ***not*** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents at no additional cost**, you should contact Kurtzman Carson Consultants LLC, the Debtors' solicitation agent in the chapter 11 cases (the "Claims and Noticing Agent"), by: (a) visiting the Debtors' restructuring website at:  http://www.kccllc.net/avaya; (b) writing to Avaya Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/avaya.  The location of Debtor Avaya Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 350 Mount Kemble Avenue, Morristown, New Jersey 07960.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Segundo, CA 90245; (c) contacting the Claims and Noticing Agent at http://www.kccllc.net/avaya/inquiry; and/or (d) calling the Debtors' restructuring hotline at 877-709-4751 (USA or Canada); 424-236-7231 (International).

**PLEASE TAKE FURTHER NOTICE THAT** the following provisions are included in the Plan:

**ARTICLE VIII** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D** OF THE PLAN CONTAINS THE FOLLOWING THIRD-PARTY RELEASE (THE "**THIRD-PARTY RELEASE**"):

**As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable**

Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

<u>ARTICLE VIII.E</u> OF THE PLAN CONTAINS THE FOLLOWING SETTLEMENT GROUP RELEASE (THE "<u>SETTLEMENT GROUP RELEASE</u>"):

As of the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by each Settlement Group Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Settlement Group Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained in the Plan to the contrary, but subject in all respects to the immediately following sentence, the Settlement Group Release shall include any and all claims and Causes of Action alleged in, or related to, that certain Summons with Notice filed in the Supreme Court of the State of New York, New York County, Index Number: 650626/2023, which shall be deemed released with prejudice by the Settlement Releasing Parties, in their capacity as such, and withdrawn upon the occurrence of the Effective Date. Notwithstanding the foregoing, (a) to the extent the largest Holder of Secured Exchangeable Notes Claims in the Akin Ad Hoc Group as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Secured

**Exchangeable Notes Claim, a Settlement Group Releasing Party that is also a Holder of a Secured Exchangeable Notes Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Secured Exchangeable Notes Claim, (b) to the extent a Holder or group of Holders holding at least 25% of the amount of B-3 Term Loan Claims as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a B-3 Term Loan Claim, a Settlement Group Releasing Party that is also a Holder of a B-3 Term Loan Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such B-3 Term Loan Claim, and (c) to the extent a Holder or group of Holders holding at least 50% of the amount of Legacy Term Loan Claims or Legacy Notes Claims, as applicable, in the aggregate as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Legacy Term Loan Claim or a Legacy Notes Claim, as applicable, a Settlement Group Releasing Party that is also a Holder of Legacy Term Loan Claims or Legacy Notes Claim, as applicable, as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Legacy Term Loan Claim or Legacy Notes Claim, as applicable; provided, for the avoidance of doubt, no Settlement Group Releasing Party shall bring any claims or Causes of Action against any Entity in respect of any HoldCo Convertible Notes Claims or in respect of any Claims previously owned by such Settlement Group Releasing Party prior to the Petition Date but not owned as of the Petition Date. Notwithstanding anything in this Settlement Party Release, any member of the PW Ad Hoc Group as of the Petition Date shall only be a Settlement Group Releasing Party with respect to its HoldCo Convertible Notes Claims.**

Definitions Related to the Third-Party Release and the Settlement Group Release under the Plan:

"**RELATED PARTY**" MEANS EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, COMMITTEE MEMBERS, MEMBERS OF ANY GOVERNING BODY, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS (INCLUDING ANY OTHER ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS AND ANY SUCH PERSON'S OR ENTITY'S RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES.

"**RELEASED PARTY**" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH SETTLEMENT GROUP RELEASING PARTY; (E) RINGCENTRAL; (F) EACH AGENT/TRUSTEE; (G) EACH DIP COMMITMENT PARTY AND EACH DIP LENDER; (H) EACH RO BACKSTOP PARTY; (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (C) THROUGH THIS CLAUSE (J); (K) EACH DEBTOR RELATED PARTY OF EACH ENTITY IN CLAUSE (A) AND (B); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OR ARTICLE VIII.E OF THE PLAN; (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OR ARTICLE VIII.E OF THE

PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION; OR (Z) WAS THE BENEFICIARY OF THE REPURCHASE, REDEMPTION, OR OTHER SATISFACTION OF HOLDCO CONVERTIBLE NOTES PRIOR TO THE PETITION DATE.

"**RELEASING PARTY**" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) RINGCENTRAL; (E) EACH DIP LENDER; (F) EACH AGENT/TRUSTEE; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (K); AND (M) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (L) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  NOTWITHSTANDING THE FOREGOING, ANY ENTITY THAT IS A SETTLEMENT GROUP RELEASING PARTY SHALL NOT BE A RELEASING PARTY UNLESS SUCH ENTITY IS A MEMBER OF THE PW AD HOC GROUP AS OF THE PETITION DATE, IN WHICH CASE SUCH ENTITY SHALL NOT BE A RELEASING PARTY SOLELY WITH RESPECT TO ANY HOLDCO CONVERTIBLE NOTES CLAIMS**.**

"**SETTLEMENT GROUP RELEASING PARTY**" MEANS A HOLDER OF HOLDCO CONVERTIBLE NOTES CLAIMS, SOLELY IN ITS CAPACITY AS SUCH, THAT DOES NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.E OF THE PLAN; OR (Y) OBJECT TO, CHALLENGE, OR IMPEDE IN ANY MANNER, FORMALLY OR INFORMALLY, ANY ACTION TAKEN BY THE DEBTORS OR ANY CONSENTING STAKEHOLDERS IN THE CHAPTER 11 CASES, THE TRANSACTIONS CONTEMPLATED BY THE RSA, THE PLAN, THE RESTRUCTURING TRANSACTIONS OR THE ENTRY OF ANY ORDER CONSISTENT WITH, OR CONTEMPLATED BY, THE TERMS OF THE RSA.

*        *        *

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE RELEASES, EXCULPATION, INJUNCTION, AND THIRD-PARTY RELEASES PROVIDED IN THE PLAN.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

Houston, Texas
Dated:  [●], 2023

/s/

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Rebecca Blake Chaikin (TX Bar No. 24133055) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Genevieve M. Graham (TX Bar No. 24085340) | Aparna Yenamandra (*pro hac vice* pending) |
| Emily Meraia (TX Bar No. 24129307) | Rachael M. Bentley (*pro hac vice* pending) |

JACKSON WALKER LLP
Matthew D. Cavenaugh (TX Bar No. 24062656)
Rebecca Blake Chaikin (TX Bar No. 24133055)
Genevieve M. Graham (TX Bar No. 24085340)
Emily Meraia (TX Bar No. 24129307)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:            mcavenaugh@jw.com
                      rchaikin@jw.com
                      ggraham@jw.com
                      emeraia@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra (*pro hac vice* pending)
Rachael M. Bentley (*pro hac vice* pending)
Andrew Townsell (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                      aparna.yenamandra@kirkland.com
                      rachael.bentley@kirkland.com
                      andrew.townsell@kirkland.com

                      -and-

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**<u>Exhibit 3A</u>**

**Equity Opt-Out Form (Master)**

**MASTER INTEREST OPT-OUT FORM**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS MASTER OPT-OUT FORM.

**THIS MASTER OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED TO KURTZMAN CARSON CONSULTANTS LLC (THE "<u>CLAIMS AND NOTICING AGENT</u>") SO THAT IT IS ACTUALLY RECEIVED ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023 (THE "<u>OPT-OUT DEADLINE</u>").**

This Master Opt-Out Form may not be used for any purpose other than conveying their Beneficial Holder clients' elections to opt out of the Third-Party Release set forth in Article VIII.D of the Plan (the "<u>Release</u>").  If you believe you have received this Master Opt-Out Form in error, or if you believe that you have received the wrong opt out form, please contact the Claims and Noticing Agent <u>immediately</u> by calling 877-499-4509 (USA or Canada); 917-281-4800 (International) or sending an electronic mail message to <u>http://www.kccllc.net/avaya</u> with "Avaya" in the subject line.  Nothing contained herein or in the enclosed documents shall render you or any other entity an agent of the Debtors or the Claims and Noticing Agent or authorize you or any other entity to use any document or make any statements on behalf of any of the Debtors with respect to the Plan, except for the statement contained in the documents enclosed herewith.

You are required to distribute the Beneficial Holder Opt-Out Form contained herewith to your Beneficial Holder clients holding Interests in Avaya Holdings Corp. ("<u>Avaya</u>") as of February 9, 2023 (the "<u>Opt-Out Record Date</u>"), within five business days of your receipt of the Solicitation Packages in which this Master Opt-Out Form was included.  With respect to the Beneficial Holder Opt-Out Forms returned to you, you must (1) execute this Master Opt-Out Form so as to reflect the Release elections set forth in such Beneficial Holder Opt-Out Forms and (2) forward this Master Opt-Out Form to the Claims and Noticing Agent in accordance with the Form Instructions accompanying this Master Opt-Out Form.  The CUSIP numbers for Class 12 Interests entitled to opt of the Release are set forth on Exhibit A attached hereto.  **Any election delivered to you by a Beneficial Holder shall not be counted unless you complete, sign, and return this Master Opt-Out Form to the Claims and Noticing Agent so that it is actually received by the Opt-Out Deadline.**

Before completing this Master Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Master Opt-Out Form" carefully to ensure that you complete, execute, and return this Master Opt-Out Form properly.

<u>Item 1</u>. **Certification of Authority to Make Elections.**

The undersigned certifies that as of the Opt-Out Record Date, the undersigned:

☐  Is a Nominee for the Beneficial Holders in the number of Interests in Avaya listed in Item 2 below, or

☐  Is acting under a power of attorney or agency (a copy of which will be provided upon request) granted by a Nominee for the Beneficial Holders in the number of Interests in Avaya listed in Item 2 below, or

☐    Has been granted a proxy (an original of which is attached hereto) from a Nominee for the Beneficial Holders (or the Beneficial Holders itself/themselves) in the number of Interests in Avaya listed in Item 2 below;

and accordingly, has full power and authority to convey decisions to opt-out of the Release, on behalf of the Beneficial Holders of the Interests in Avaya described in Item 2.

**Item 2. Optional Release Election.**

The undersigned certifies that that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Holders of Interests in Avaya, as identified by their respective account numbers, that made a decision to opt-out of the Release via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary means of conveying such information.

Indicate in the appropriate column below the Beneficial Holder/Account Number of each Beneficial Holder that completed and returned the Beneficial Holder Opt-Out Form and the number of Interests in Avaya held by such Beneficial Holder/Account Number electing to opt-out of the Release or attach such information to this Master Opt-Out Form in the form of the following table.

Please complete the information requested below (add additional sheets if necessary):

| Beneficial Holder/Account Number | Amount of Interest in Avaya Holders Electing to Opt-Out of the Release |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| **TOTAL** | |

**Item 3. Additional Certifications.**

By signing this Master Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

    a.    that either:  (i) the undersigned has received a completed Opt-Out Form from each Beneficial Holder of Interests in Avaya listed in Item 2 of this Master Opt-Out Form, or (ii) an e-mail, recorded telephone call, internet transmission, facsimile, voting instruction form, or other customary means of communication conveying a decision to opt-out of the releases from each Holder of Interests in Avaya;

    b.    that the undersigned is a Nominee (or agent of the Nominee) of the Beneficial Holders of Interests in Avaya listed in Item 2 of this Master Opt-Out Form; and

c.  that the undersigned has properly disclosed for each Beneficial Holder who submitted a Beneficial Holder Opt-Out Form or opt-out decisions via other customary means:  (i) the respective number of the Interests in Avaya owned by each Beneficial Holder and (ii) the customer account or other identification number for each such Beneficial Holder.

| Institution: | |
|---|---|
| | **(Print or Type)** |
| **DTC Participant Number:** | |
| **Signature:** | |
| **Name of Signatory:** | |
| **Title:** | |
| **Address:** | |
| | |
| | |
| **Date Completed:** | |

**PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA (I) EMAIL (PREFERRED METHOD) AT <u>AVAYABALLOTS@KCCLLC.COM</u>, OR (II) FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO:**

> Avaya Ballot Processing Center
> c/o KCC
> 222 N. Pacific Coast Highway, Suite 300
> El Segundo, CA 90245
>
> If you have any questions on the procedures for voting on the Plan, please call the Claims and Noticing Agent at: 877-499-4509 (USA or Canada) or 917-281-4800 (International).

> IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-OUT FORM ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN THE ELECTIONS TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.
>
> OPT-OUT FORMS SENT BY FACSIMILE OR TELECOPY WILL <u>NOT</u> BE ACCEPTED.

**INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM**

1. Capitalized terms used in the Master Opt-Out Form or in these instructions (the "Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2. **Distribution of the Opt-Out Forms:**

   ➤ You should immediately distribute the Beneficial Holder Opt-Out Forms accompanied by pre-addressed, postage-paid return envelopes to all Beneficial Holders of Interests in Avaya as of the Opt-Out Record Date and take any action required to enable each such Beneficial Holders to make an opt-out election timely. You must include a pre-addressed, postage-paid return envelope or must certify that your Beneficial Holder clients that did not receive return envelopes were provided with electronic or other means (consented to by such Beneficial Holder clients) of returning their Beneficial Holder Opt-Out Forms in a timely manner.

   ➤ Any election delivered to you by a Beneficial Holder shall not be counted until you complete, sign, and return this Master Opt-Out Form to the Claims and Noticing Agent, so that it is actually received by the Opt-Out Deadline.

3. You should solicit elections from your Beneficial Holder clients via the (a) delivery of duly completed Beneficial Holder Opt-Out Forms or (b) conveyance of their decision to opt-out of the releases via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary and approved means of conveying such information.

4. With regard to any Beneficial Holder Opt-Out Forms returned to you by a Beneficial Holder, you must: (a) compile and validate the elections and other relevant information of each such Beneficial Holder on the Master Opt-Out Form using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Opt-Out Form; and (c) transmit the Master Opt-Out form to the Claims and Noticing Agent.

5. **Return of Master Opt-Out Form**: The Master Opt-Out Form must be returned to the Claims and Noticing Agent so as to be **actually received** by the Claims and Noticing Agent on or before the Opt-Out Deadline, which is **4:00 p.m. (prevailing Central Time) on March 17, 2023**.

6. If a Master Opt-Out Form is received by the Claims and Noticing Agent after the Opt-Out Deadline, it will not be effective.  Additionally, the following Opt-Out Forms will NOT be counted:

   ➤ ANY MASTER OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE EQUITY INTEREST;

   ➤ ANY MASTER OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE RELEASE;

   ➤ ANY MASTER OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AND NOTICING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

   ➤ ANY UNSIGNED MASTER OPT-OUT FORM; OR

    ➢  ANY MASTER OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SCHEDULING ORDER.

7.     The method of delivery of Master Opt-Out Forms to the Claims and Noticing Agent is at the election and risk of Nominee.  Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Claims and Noticing Agent **actually receives** the originally executed Master Opt-Out Form.  Nominees should allow sufficient time to assure timely delivery.

8.     Multiple Master Opt-Out Forms may be completed and delivered to the Claims and Noticing Agent.  Elections reflected by multiple Master Opt-Out Forms will be deemed valid.  If two or more Master Opt-Out Forms are submitted, please mark the subsequent Master Opt-Out Form(s) with the words "Additional Election" or such other language as you customarily use to indicate an additional election that is not meant to revoke an earlier election.

9.     The Master Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to transmit elections to opt-out of the Release. Holders of Interests in Avaya should not surrender certificates (if any) representing their Interests at this time, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates transmitted together with a Master Opt-Out Form.

10.    This Master Opt-Out Form does not constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

11.    <u>Please be sure to sign and date your Master Opt-Out Form.</u>  If you are signing a Master Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Opt-Out Form.

12.    No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation.  Upon written request, however, the Debtor will reimburse you for reasonable, customary mailing and handling expenses incurred by you in forwarding the Opt-Out Forms to your client(s).

**PLEASE RETURN YOUR MASTER OPT-OUT FORM PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AND NOTICING AGENT AT:**

**877-499-4509 (USA or Canada) or 917-281-4800 (International)**

**Or via email at: AVAYABALLOTS@KCCLLC.COM**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT ACTUALLY RECEIVE THIS
MASTER OPT-OUT FORM FROM YOU BEFORE THE OPT-OUT DEADLINE,
WHICH IS 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN
THE OPT-OUT ELECTIONS TRANSMITTED THEREBY WILL NOT BE EFFECTIVE.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO
MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN
WHAT IS CONTAINED IN THE DOCUMENTS MAILED HEREWITH.

## Exhibit A

***Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Master Opt Out Form pertains (or clearly indicate such information directly on the Master Opt Out Form or on a schedule thereto). If you check more than one box below, the Beneficial Holder votes submitted on this Master Opt Out Form may be invalidated:***

| | DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | Common Shares | CUSIP 05351X 10 1 / ISIN US05351X1019 |

7

## **Exhibit 3B**

**Equity Opt-Out Form (Beneficial Holders)**

## OPTIONAL:  BENEFICIAL HOLDERS OF INTERESTS OPT-OUT FORM

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a Holder of an Interest that is not entitled to vote on the *Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan").  Except as otherwise set forth in the Plan, Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in Article VIII.D (the "Release"), unless a Holder affirmatively opts out of the Release or timely objects to the Release on or before March 17, 2023, at 4:00 p.m., prevailing Central Time, and such objection is not resolved before confirmation.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS BENEFICIAL HOLDER OPT-OUT FORM.

**UNLESS YOU CHECK THE BOX ON THIS BENEFICIAL HOLDER OPT-OUT FORM BELOW AND FOLLOW ALL INSTRUCTIONS, YOU WILL BE HELD TO FOREVER RELEASE THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**THIS BENEFICIAL HOLDER OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED TO YOUR NOMINEE IN SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO PROCESS YOUR INSTRUCTIONS ON A MASTER OPT-OUT FORM AND RETURN TO KURTZMAN CARSON CONSULTANTS LLC (THE "<u>CLAIMS AND NOTICING AGENT</u>") SO THAT IS ACTUALLY RECEIVED ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023 (THE "<u>OPT-OUT DEADLINE</u>").**

This Beneficial Holder Opt-Out Form may not be used for any purpose other than opting out of the Release contained in the Plan.  If you believe you have received this Beneficial Holder Opt-Out Form in error, or if you believe that you have received the wrong opt out form, please contact the Claims and Noticing Agent <u>immediately</u> by calling 877-709-4751 (USA or Canada) or 424-236-7231 (International) or sending an electronic message via online form at www.kccllc.net/avaya/inquiry with "Avaya" in the subject line.

Before completing this Beneficial Holder Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Beneficial Holder Opt-Out Form" carefully to ensure that you complete, execute, and return this Beneficial Holder Opt-Out Form properly.

<u>Item 1</u>. Optional Third-Party Release.

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH BELOW.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐　　**By checking this box, you elect to opt <u>out</u> of the Release set forth below.**

**Article VIII.D of the Plan contains the following Third-Party Release:**

As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related

**provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions related to the Third-Party Release:

"*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

"*Released Party*" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Settlement Group Releasing Party; (e) RingCentral; (f) each Agent/Trustee; (g) each DIP Commitment Party and each DIP Lender; (h) each RO Backstop Party; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); (j) each Related Party of each Entity in clause (c) through this clause (j); (k) each Debtor Related Party of each Entity in clause (a) and (b); *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article VIII.D or Article VIII.E of the Plan; (y) timely objects to the releases contained in Article VIII.D or Article VIII.E of the Plan and such objection is not resolved before Confirmation; or (z) was the beneficiary of the repurchase, redemption, or other satisfaction of HoldCo Convertible Notes prior to the Petition Date.

"*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) RingCentral; (e) each DIP Lender; (f) each Agent/Trustee; (g) each Consenting Stakeholder; (h) all Holders of Claims that vote to accept the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) each current and former Affiliate of each Entity in clause (a) through (k); and (m) each Related Party of each Entity in clause (a) through (l) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.  Notwithstanding the foregoing, any Entity that is a Settlement Group Releasing Party shall not be a Releasing Party unless such Entity is a member of the PW Ad Hoc Group as of the Petition Date,

in which case such Entity shall not be a Releasing Party solely with respect to any HoldCo Convertible Notes Claims.

"*Settlement Group Releasing Party*" means a holder of HoldCo Convertible Notes Claims, solely in its capacity as such, that does not (x) elect to opt out of the releases contained in Article VIII.E of the Plan; or (y) object to, challenge, or impede in any manner, formally or informally, any action taken by the Debtors or any Consenting Stakeholders in the Chapter 11 Cases, the transactions contemplated by the RSA, the Plan, the Restructuring Transactions or the entry of any order consistent with, or contemplated by, the terms of the RSA.

**Item 2**. **Certifications.**

By signing this Beneficial Holder Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

a.  that, as of February 9, 2023, either:  (i) the undersigned is the Holder of Interests; (ii) the undersigned is an authorized signatory for an Entity or Person that is the Holder of Interests;

b.  that the Holder has received a copy of the *Notice of Non-Voting Status* and that this Beneficial Holder Opt-Out Form is made pursuant to the terms and conditions set forth therein;

c.  that the undersigned has made the same election with respect to all Interests; and

d.  that no other Beneficial Holder Opt-Out Form has been cast with respect to the Holder's Interests, or, if any other Beneficial Holder Opt-Out Forms have been cast with respect to such Interests, such Beneficial Holder Opt-Out Forms are hereby revoked.

By signing this Beneficial Holder Opt-Out Form, the undersigned authorizes and instructs its Nominee (a) to furnish the election information in a Master Opt-Out Form to be transmitted to the Claims and Noticing Agent and (b) to retain this Beneficial Holder Opt-Out Form and related information in its records for at least one year after the Effective Date of the Plan.

YOUR RECEIPT OF THIS BENEFICIAL HOLDER OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR INTEREST HAS BEEN OR WILL BE ALLOWED.

| | |
|---|---|
| **Name of Holder:** | _____ |
| | *(Print or Type)* |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| | *(If other than Holder)* |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |
| | _____ |
| **Date Completed:** | _____ |
| | |

**PLEASE COMPLETE, SIGN AND DATE THIS BENEFICIAL HOLDER OPT-OUT FORM AND RETURN IT TO YOUR NOMINEE IN SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO PROCESS YOUR INSTRUCTIONS ON A MASTER OPT-OUT FORM AND RETURN TO THE CLAIMS AND NOTICING AGENT SO THAT IT IS ACTUALLY RECEIVED ON OR PRIOR TO THE OPT OUT DEADLINE.**

IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> A MASTER OPT-OUT FORM ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.

BENEFICIAL HOLDER OPT-OUT FORMS SENT DIRECTLY TO THE CLAIMS AND NOTICING AGENT WILL <u>NOT</u> BE ACCEPTED.

## <u>INSTRUCTIONS FOR COMPLETING THIS FORM</u>

1.   Capitalized terms used in the Beneficial Holder Opt-Out Form or in these instructions (the "<u>Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.   To ensure that your election is counted, you <u>must</u> complete the Beneficial Holder Opt-Out Form and take the following steps:  (a)  clearly indicate your decision to "opt out" of the Release set forth in the Plan in <u>Item 1</u> above; (b) make sure that the information required by <u>Item 2</u> above has been correctly inserted; <u>and</u> (c) sign, date and return an original of your Beneficial Holder Opt-Out Form to your Nominee in accordance with paragraph 3 directly below.

3.   **<u>Return of Beneficial Holder Opt-Out Form</u>**:  Your Beneficial Holder Opt-Out Form MUST be returned to your Nominee in sufficient time to allow your Nominee to process your instructions on a Master Opt-Out Form and return to the Claims and Noticing Agent so as to be **<u>actually received</u>** by the Claims and Noticing Agent on or before the Opt-Out Deadline, which is **<u>4:00 p.m. (prevailing Central Time) on March 17, 2023</u>**.

4.   If a Master Opt-Out Form is received by the Claims and Noticing Agent <u>after</u> the Opt-Out Deadline, it will not be effective.  Additionally, the following Opt-Out Forms will <u>NOT</u> be counted:

> ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE INTEREST;

> ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE RELEASE;

> ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AND NOTICING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

> ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM TRANSMITTED BY FACSIMILE OR TELECOPY;

> ➢   ANY UNSIGNED BENEFICIAL HOLDER OR MASTER OPT-OUT FORM**;** OR

> ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SOLICITATION ORDER.

5.   The method of delivery of Beneficial Opt-Out Forms to your Nominee is at the election and risk of each Holder of an Interest.  Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Claims and Noticing Agent **<u>actually receives</u>** a Master Opt-Out Form from your Nominee.  Beneficial Holders and their Nominees should allow sufficient time to assure timely delivery.

6.      If multiple Opt-Out Forms are received from the same Holder with respect to the same Interest prior to the Opt-Out Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

7.      The Beneficial Holder Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt-out of the Release.  Accordingly, at this time, Holders of Interests should not surrender certificates or instruments representing or evidencing their Interests, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Opt-Out Form.

8.      The Beneficial Holder Opt-Out Form does <u>not</u> constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

9.      <u>Please be sure to sign and date your Beneficial Holder Opt-Out Form</u>.  If you are signing a Beneficial Holder Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Opt-Out Form.

**<u>PLEASE RETURN YOUR BENEFICIAL HOLDER OPT-OUT FORM PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AND NOTICING AGENT AT:
877-709-4751 (USA or Canada) or 424-236-7231 (International)
Or via online form: <u>www.kccllc.net/avaya/inquiry</u>**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THE MASTER OPT-OUT FORM FROM YOUR NOMINEE BEFORE THE OPT-OUT DEADLINE, WHICH IS 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN YOUR OPT-OUT ELECTION TRANSMITTED PURSUANT TO THE BENEFICIAL HOLDER OPT-OUT FORM WILL NOT BE EFFECTIVE.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE DOCUMENTS MAILED HEREWITH.

**<u>Exhibit A</u>**

***Please check one box below to indicate the CUSIP/ISIN to which this Beneficial Opt-Out Form pertains.  If you check more than one box below you risk having your vote invalidated.***

| | **DESCRIPTION** | **CUSIP / ISIN** |
|---|---|---|
| ☐ | Common Shares | CUSIP 05351X 10 1 / ISIN US05351X1019 |

## Exhibit 3C

**Opt-Out Form (Holders of Claims and Holders of Registered Interests)**

**OPTIONAL:  HOLDERS OF CLAIMS AND HOLDERS OF REGISTERED INTERESTS
OPT-OUT FORM**

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan"). Except as otherwise set forth in the definition of Releasing Party in the Plan, Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in Article VIII.D (the "Release"), set forth in the Notice unless a Holder affirmatively opts out of the Release or timely objects to the Release on or before March 17, 2023, at 4:00 p.m., prevailing Central Time, and such objection is not resolved before confirmation.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS OPT-OUT FORM.

**UNLESS YOU CHECK THE BOX ON THIS OPT-OUT FORM BELOW AND FOLLOW ALL INSTRUCTIONS, YOU WILL BE HELD TO FOREVER RELEASE THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**THIS OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY KURTZMAN CARSON CONSULTANTS LLC (THE "CLAIMS AND NOTICING AGENT") ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023 (THE "OPT-OUT DEADLINE").**

This Opt-Out Form may not be used for any purpose other than opting out of the Release contained in the Plan.  If you believe you have received this Opt-Out Form in error, or if you believe that you have received the wrong opt out form, please contact the Claims and Noticing Agent immediately by calling 877-709-4751 (USA or Canada) or 424-236-7231 (International) or sending an electronic message via online form to www.kccllc.net/avaya/inquiry with "Avaya" in the subject line.

Before completing this Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Opt-Out Form" carefully to ensure that you complete, execute, and return this Opt-Out Form properly.

**Item 1. Optional Third-Party Release.**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH BELOW.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF (I) THE COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐     **By checking this box, you elect to opt out of the Release set forth below.**

1

**Article VIII.D of the Plan contains the following Third-Party Release:**

As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan;

**(3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions related to the Third-Party Release:

"*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

"*Released Party*" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Settlement Group Releasing Party; (e) RingCentral; (f) each Agent/Trustee; (g) each DIP Commitment Party and each DIP Lender; (h) each RO Backstop Party; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); (j) each Related Party of each Entity in clause (c) through this clause (j); (k) each Debtor Related Party of each Entity in clause (a) and (b); *provided* that in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases contained in Article VIII.D or Article VIII.E of the Plan; (y) timely objects to the releases contained in Article VIII.D or Article VIII.E of the Plan and such objection is not resolved before Confirmation; or (z) was the beneficiary of the repurchase, redemption, or other satisfaction of HoldCo Convertible Notes prior to the Petition Date.

"*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) RingCentral; (e) each DIP Lender; (f) each Agent/Trustee; (g) each Consenting Stakeholder; (h) all Holders of Claims that vote to accept the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) each current and former Affiliate of each Entity in clause (a) through (k); and (m) each Related Party of each Entity in clause (a) through (l) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.  Notwithstanding the foregoing, any Entity that is a Settlement Group Releasing Party shall not be a Releasing Party unless such Entity is a member of the PW Ad Hoc Group as of the Petition Date,

in which case such Entity shall not be a Releasing Party solely with respect to any HoldCo Convertible Notes Claims.

"*Settlement Group Releasing Party*" means a holder of HoldCo Convertible Notes Claims, solely in its capacity as such, that does not (x) elect to opt out of the releases contained in Article VIII.E of the Plan; or (y) object to, challenge, or impede in any manner, formally or informally, any action taken by the Debtors or any Consenting Stakeholders in the Chapter 11 Cases, the transactions contemplated by the RSA, the Plan, the Restructuring Transactions or the entry of any order consistent with, or contemplated by, the terms of the RSA.

**Item 2**.  **Certifications.**

By signing this Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

    a.    that, as of February 9, 2023, either:  (i) the undersigned is the Holder of Claims or Interests; (ii) the undersigned is an authorized signatory for an Entity or Person that is the Holder of Claims or Interests;

    b.    that the Holder has received a copy of the *Notice of Non-Voting Status* and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

    c.    that the undersigned has made the same election with respect to all Claims or Interests; and

    d.    that no other Opt-Out Form has been cast with respect to the Holder's Claims or Interests, or, if any other Opt-Out Forms have been cast with respect to such Claims or Interests, such Opt-Out Forms are hereby revoked.

YOUR RECEIPT OF THIS OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM OR INTEREST HAS BEEN OR WILL BE ALLOWED.

| | |
|---|---|
| **Name of Holder:** | _____ |
| | *(Print or Type)* |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| | *(If other than Holder)* |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |
| | _____ |
| **Date Completed:** | _____ |

If your address or contact information has changed, please note the new information here.

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA (I) ONLINE FORM AT WWW.KCCLLC.NET/AVAYA, OR (II) FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO:**

Avaya Ballot Processing Center
c/o KCC
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

If you have any questions on the procedures for
voting on the Plan, please call the Claims and
Noticing Agent at: 877-709-4751 (USA or Canada)
or 424-236-7231 (International).

IF THE CLAIMS AND NOTICING AGENT DOES NOT ACTUALLY RECEIVE THIS OPT-OUT FORM ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.

OPT-OUT FORMS SENT BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.

## **INSTRUCTIONS FOR COMPLETING THIS FORM**

1. Capitalized terms used in the Opt-Out Form or in these instructions (the "<u>Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2. To ensure that your election is counted, you <u>must</u> complete the Opt-Out Form and take the following steps:  (a) clearly indicate your decision to "opt out" of the Release set forth in the Plan in <u>Item 1</u> above; (b) make sure that the information required by <u>Item 2</u> above has been correctly inserted; <u>and</u> (c) sign, date and return an original of your Opt-Out Form in accordance with paragraph 3 directly below.

3. **Return of Opt-Out Form**:  Your Opt-Out Form MUST be returned to the Claims and Noticing Agent so as to be **actually received** by the Claims and Noticing Agent on or before the Opt-Out Deadline, which is **4:00 p.m. (prevailing Central Time) on March 17, 2023**.

4. If an Opt-Out Form is received by the Claims and Noticing Agent <u>after</u> the Opt-Out Deadline, it will not be effective.  Additionally**,** the following Opt-Out Forms will <u>NOT</u> be counted:

   ➢ ANY OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE CLAIM OR INTEREST;

   ➢ ANY OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE RELEASE;

   ➢ ANY OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AND NOTICING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

   ➢ ANY OPT-OUT FORM TRANSMITTED BY FACSIMILE OR EMAIL;

   ➢ ANY UNSIGNED OPT-OUT FORM**;** OR

   ➢ ANY OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SOLICITATION ORDER.

5. The method of delivery of Opt-Out Forms to the Claims and Noticing Agent is at the election and risk of each Holder of a Claim or Interest.  Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Voting and Claims Agent **actually receives** the executed Opt-Out Form.  Holders should allow sufficient time to assure timely delivery.

6. If multiple Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest prior to the Opt-Out Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

7. The Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt-out of the Release.  Accordingly, at this time, Holders of Interests should not surrender certificates or instruments representing or evidencing their Interests, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with an Opt-Out Form.

8.      The Opt-Out Form does <u>not</u> constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

9.      <u>Please be sure to sign and date your Opt-Out Form.</u>  If you are signing an Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Opt-Out Form.

**PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AND NOTICING AGENT AT:**

**877-709-4751 (USA or Canada) or 424-236-7231 (International)**

**Or via online form: www.kccllc.net/avaya**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THE
OPT-OUT FORM FROM YOU BEFORE THE OPT-OUT DEADLINE, WHICH IS 4:00
P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN YOUR OPT-OUT
ELECTION TRANSMITTED THEREBY WILL NOT BE EFFECTIVE.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO
MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN
WHAT IS CONTAINED IN THE DOCUMENTS MAILED HEREWITH.

## Exhibit 3D

**Class 7 Opt-Out Form (Master)**

## CLASS 7 MASTER OPT-OUT FORM

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS MASTER OPT-OUT FORM.

**THIS MASTER OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED TO KURTZMAN CARSON CONSULTANTS LLC (THE "<u>CLAIMS AND NOTICING AGENT</u>") SO THAT IT IS ACTUALLY RECEIVED ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023 (THE "<u>OPT-OUT DEADLINE</u>").**

This Master Opt-Out Form may not be used for any purpose other than conveying their Beneficial Holder clients' elections to opt out of the Third-Party Release set forth in Article VIII.D of the Plan (the "<u>Third-Party Release</u>" and/or the Settlement Group Release set forth in Article VIII.E (the "<u>Settlement Group Release</u>" and together with the Third-Party Release, the "<u>Releases</u>"). If you believe you have received this Master Opt-Out Form in error, or if you believe that you have received the wrong opt out form, please contact the Claims and Noticing Agent <u>immediately</u> by calling 877-499-4509 (USA or Canada); 917-281-4800 (International) or sending an electronic mail message to <u>http://www.kccllc.net/avaya</u> with "Avaya" in the subject line. Nothing contained herein or in the enclosed documents shall render you or any other entity an agent of the Debtors or the Claims and Noticing Agent or authorize you or any other entity to use any document or make any statements on behalf of any of the Debtors with respect to the Plan, except for the statement contained in the documents enclosed herewith.

You are required to distribute the Beneficial Holder Opt-Out Form contained herewith to your Beneficial Holder clients holding Class 7 Claims as of February 9, 2023 (the "<u>Opt-Out Record Date</u>"), within five business days of your receipt of the Solicitation Packages in which this Master Opt-Out Form was included. With respect to the Beneficial Holder Opt-Out Forms returned to you, you must (1) execute this Master Opt-Out Form so as to reflect the Third-Party Release and/or the Settlement Group Release elections set forth in such Beneficial Holder Opt-Out Forms and (2) forward this Master Opt-Out Form to the Claims and Noticing Agent in accordance with the Form Instructions accompanying this Master Opt-Out Form. The CUSIP numbers for Class 7 Claims entitled to opt of the Releases are set forth on Exhibit A attached hereto. **Any election delivered to you by a Beneficial Holder shall not be counted unless you complete, sign, and return this Master Opt-Out Form to the Claims and Noticing Agent so that it is actually received by the Opt-Out Deadline.**

Before completing this Master Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Master Opt-Out Form" carefully to ensure that you complete, execute, and return this Master Opt-Out Form properly.

<u>**Item 1**</u>. **Certification of Authority to Make Elections.**

The undersigned certifies that as of the Opt-Out Record Date, the undersigned:

☐   Is a Nominee for the Beneficial Holders of Class 7 Claims listed in Item 2 below, or

☐   Is acting under a power of attorney or agency (a copy of which will be provided upon request) granted by a Nominee for the Beneficial Holders of Class 7 Claims listed in Item 2 below, or

☐   Has been granted a proxy (an original of which is attached hereto) from a Nominee for the Beneficial Holders (or the Beneficial Holders itself/themselves) of Class 7 Claims listed in Item 2 below;

1

and accordingly, has full power and authority to convey decisions to opt-out of the Releases, on behalf of the Beneficial Holders of the Class 7 Claims described in Item 2.

**Item 2. Optional Release Election.**

The undersigned certifies that that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Holders of Class 7 Claims, as identified by their respective account numbers, that made a decision to opt-out of the Releases via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary means of conveying such information.

Indicate in the appropriate column below the Beneficial Holder/Account Number of each Beneficial Holder that completed and returned the Beneficial Holder Opt-Out Form and the aggregate amount of Class 7 Claim held by such Beneficial Holder/Account Number electing to opt-out of the Third-Party Release and/or Settlement Group Release or attach such information to this Master Opt-Out Form in the form of the following table.

Please complete the information requested below (add additional sheets if necessary):

| Beneficial Holder/Account Number | Amount of Class 7 Claim Electing to Opt-Out of the Third-Party Release | Amount of Class 7 Claim Electing to Opt-Out of the Settlement Group Release |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| TOTAL | | |

**Item 3.  Additional Certifications.**

By signing this Master Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

a.   that either:  (i) the undersigned has received a completed Opt-Out Form from each Beneficial Holder of Class 7 Claims listed in Item 2 of this Master Opt-Out Form, or (ii) an e-mail, recorded telephone call, internet transmission, facsimile, voting instruction form, or other customary means of communication conveying a decision to opt-out of the Third-Party Release and/or the Settlement Group Release from each Holder of Class 7 Claims;

b.   that the undersigned is a Nominee (or agent of the Nominee) of the Beneficial Holders of Class 7 Claims listed in Item 2 of this Master Opt-Out Form; and

c.   that the undersigned has properly disclosed for each Beneficial Holder who submitted a Beneficial Holder Opt-Out Form or opt-out decisions via other customary means:  (i) the

respective amount of Class 7 Claims owned by each Beneficial Holder and (ii) the customer account or other identification number for each such Beneficial Holder.

| | |
|---|---|
| **Institution:** | |
| | **(Print or Type)** |
| **DTC Participant Number:** | |
| **Signature:** | |
| **Name of Signatory:** | |
| **Title:** | |
| **Address:** | |
| | |
| | |
| **Date Completed:** | |

**PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA (I) EMAIL (PREFERRED METHOD) AT <u>AVAYABALLOTS@KCCLLC.COM</u>, OR (II) FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO:**

> Avaya Ballot Processing Center
> c/o KCC
> 222 N. Pacific Coast Highway, Suite 300
> El Segundo, CA 90245
>
> If you have any questions on the procedures for voting on the Plan, please call the Claims and Noticing Agent at: 877-499-4509 (USA or Canada) or 917-281-4800 (International).

> IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-OUT FORM ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN THE ELECTIONS TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.
>
> OPT-OUT FORMS SENT BY FACSIMILE OR TELECOPY WILL <u>NOT</u> BE ACCEPTED.

## INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM

1.      Capitalized terms used in the Master Opt-Out Form or in these instructions (the "Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.      **Distribution of the Opt-Out Forms:**

       ➤  You should immediately distribute the Beneficial Holder Opt-Out Forms accompanied by pre-addressed, postage-paid return envelopes to all Beneficial Holders of Class 7 Claims as of the Opt-Out Record Date and take any action required to enable each such Beneficial Holders to make an opt-out election timely. You must include a pre-addressed, postage-paid return envelope or must certify that your Beneficial Holder clients that did not receive return envelopes were provided with electronic or other means (consented to by such Beneficial Holder clients) of returning their Beneficial Holder Opt-Out Forms in a timely manner.

       ➤  Any election delivered to you by a Beneficial Holder shall not be counted until you complete, sign, and return this Master Opt-Out Form to the Claims and Noticing Agent, so that it is actually received by the Opt-Out Deadline.

3.      You should solicit elections from your Beneficial Holder clients via the (a) delivery of duly completed Beneficial Holder Opt-Out Forms or (b) conveyance of their decision to opt-out of the Releases via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary and approved means of conveying such information.

4.      With regard to any Beneficial Holder Opt-Out Forms returned to you by a Beneficial Holder, you must: (a) compile and validate the elections and other relevant information of each such Beneficial Holder on the Master Opt-Out Form using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Opt-Out Form; and (c) transmit the Master Opt-Out form to the Claims and Noticing Agent.

5.      **Return of Master Opt-Out Form**: The Master Opt-Out Form must be returned to the Claims and Noticing Agent so as to be **actually received** by the Claims and Noticing Agent on or before the Opt-Out Deadline, which is **4:00 p.m. (prevailing Central Time) on March 17, 2023**.

6.      If a Master Opt-Out Form is received by the Claims and Noticing Agent after the Opt-Out Deadline, it will not be effective.  Additionally, the following Opt-Out Forms will NOT be counted:

       ➤  ANY MASTER OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE CLAIM;

       ➤  ANY MASTER OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE RELEASES;

       ➤  ANY MASTER OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AND NOTICING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

       ➤  ANY UNSIGNED MASTER OPT-OUT FORM; OR

> ➤ ANY MASTER OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SCHEDULING ORDER.

7.     The method of delivery of Master Opt-Out Forms to the Claims and Noticing Agent is at the election and risk of Nominee.  Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Claims and Noticing Agent **actually receives** the originally executed Master Opt-Out Form.  Nominees should allow sufficient time to assure timely delivery.

8.     Multiple Master Opt-Out Forms may be completed and delivered to the Claims and Noticing Agent.  Elections reflected by multiple Master Opt-Out Forms will be deemed valid.  If two or more Master Opt-Out Forms are submitted, please mark the subsequent Master Opt-Out Form(s) with the words "Additional Election" or such other language as you customarily use to indicate an additional election that is not meant to revoke an earlier election.

9.     The Master Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to transmit elections to opt-out of the Releases.  Holders of Interests in Avaya should not surrender certificates (if any) representing their Interests at this time, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates transmitted together with a Master Opt-Out Form.

10.     This Master Opt-Out Form does not constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

11.     <u>Please be sure to sign and date your Master Opt-Out Form.</u>  If you are signing a Master Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Opt-Out Form.

12.     No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation.  Upon written request, however, the Debtor will reimburse you for reasonable, customary mailing and handling expenses incurred by you in forwarding the Opt-Out Forms to your client(s).

**PLEASE RETURN YOUR MASTER OPT-OUT FORM PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AND NOTICING AGENT AT:**

**877-499-4509 (USA or Canada) or 917-281-4800 (International)**

**Or via email at: AVAYABALLOTS@KCCLLC.COM**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT ACTUALLY RECEIVE THIS
MASTER OPT-OUT FORM FROM YOU BEFORE THE OPT-OUT DEADLINE,
WHICH IS 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN
THE OPT-OUT ELECTIONS TRANSMITTED THEREBY WILL NOT BE EFFECTIVE.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO
MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN
WHAT IS CONTAINED IN THE DOCUMENTS MAILED HEREWITH.

## Exhibit A

***Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Master Opt Out Form pertains (or clearly indicate such information directly on the Master Opt Out Form or on a schedule thereto). If you check more than one box below, the Beneficial Holder votes submitted on this Master Opt Out Form may be invalidated:***

| | DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 2.25% Convertible Senior Notes | CUSIP 05351X AB 7 / ISIN US05351XAB73 |

## <u>Exhibit 3E</u>

**Class 7 Opt-Out Form (Beneficial Holders)**

**OPTIONAL:  CLASS 7 BENEFICIAL HOLDER OPT-OUT FORM**

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a Holder of a Claim that is not entitled to vote on the *Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan").  As set forth in the Plan, Holders of Class 7 Claims are deemed to grant the Third-Party Release set forth in Article VIII.D of the Plan (the "Third-Party Release"), unless a Holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before March 17, 2023, at 4:00 p.m., prevailing Central Time, and such objection is not resolved before confirmation.  Notwithstanding the foregoing, any Entity that is a Settlement Group Releasing Party shall not be a Releasing Party (each as defined in the Plan and copied below) unless such Entity is a member of the PW Ad Hoc Group as of the Petition Date, in which case such Entity shall not be a Releasing Party solely with respect to any HoldCo Convertible Notes Claims.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER OPT-OUT FORM.

**UNLESS YOU CHECK THE BOX ON THIS BENEFICIAL HOLDER OPT-OUT FORM BELOW AND FOLLOW ALL INSTRUCTIONS, YOU WILL BE HELD TO FOREVER RELEASE THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**THIS BENEFICIAL HOLDER OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED TO YOUR NOMINEE IN SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO PROCESS YOUR INSTRUCTIONS ON A MASTER OPT-OUT FORM AND RETURN TO KURTZMAN CARSON CONSULTANTS LLC (THE "CLAIMS AND NOTICING AGENT") SO THAT IS ACTUALLY RECEIVED ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023 (THE "OPT-OUT DEADLINE").**

This Beneficial Holder Opt-Out Form may not be used for any purpose other than opting out of the Release contained in the Plan.  If you believe you have received this Beneficial Holder Opt-Out Form in error, or if you believe that you have received the wrong opt out form, please contact the Claims and Noticing Agent immediately by calling 877-709-4751 (USA or Canada) or 424-236-7231 (International) or sending an electronic message via online form at www.kccllc.net/avaya/inquiry with "Avaya" in the subject line.

Before completing this Beneficial Holder Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Beneficial Holder Opt-Out Form" carefully to ensure that you complete, execute, and return this Beneficial Holder Opt-Out Form properly.

Item 1. **Optional Third-Party Release**

AS A HOLDER OF A CLASS 7 CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH BELOW.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF (I) THE COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  THE

ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐        **By checking this box, you elect to opt <u>out</u> of the Third-Party Release set forth below.**

**Article VIII.D of the Plan contains the following Third-Party Release:**

**As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release**

<u>**Item 2**</u>**. Optional Settlement Group Release**

AS SET FORTH IN ARTICLE IV.B OF THE PLAN, ON OR AS SOON AS REASONABLY PRACTICABLE AFTER THE EFFECTIVE DATE, PROVIDED THE HOLDCO CONVERTIBLE NOTES SETTLEMENT TRIGGER HAS BEEN SATISFIED AND THE SETTLEMENT GROUP RELEASING PARTIES HOLD HOLDCO CONVERTIBLE NOTES CLAIMS IN CLASS 7 IN AN AMOUNT EQUAL TO OR GREATER THAN THE HOLDCO CONVERTIBLE NOTES THRESHOLD, EACH SETTLEMENT GROUP RELEASING PARTY, IN CONSIDERATION FOR GRANTING THE VOLUNTARY RELEASES SET FORTH IN ARTICLE VIII.E OF THE PLAN,  SHALL RECEIVE ITS PRO RATA SHARE OF THE HOLDCO CONVERTIBLE NOTES SETTLEMENT CONSIDERATION, PROVIDED, HOWEVER, THAT ANY HOLDER OF A HOLDCO CONVERTIBLE NOTES CLAIM IN CLASS 7 THAT FAILS TO SATISFY THE STANDARDS TO BE A SETTLEMENT GROUP RELEASING PARTY SHALL NOT BE ENTITLED TO RECEIVE ANY HOLDCO CONVERTIBLE NOTES SETTLEMENT CONSIDERATION.  FOR THE AVOIDANCE OF DOUBT, ANY HOLDER OF A HOLDCO CONVERTIBLE NOTES CLAIM IN CLASS 7 THAT IS ALSO A HOLDER OF A FIRST LIEN CLAIM MAY PARTICIPATE IN THE RIGHTS OFFERING IN ITS CAPACITY AS A HOLDER OF A FIRST LIEN CLAIM.

YOU WILL NOT BE CONSIDERED A "SETTLEMENT GROUP RELEASING PARTY" UNDER THE PLAN <u>IF</u> (I) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) OBJECT TO, CHALLENGE, OR IMPEDE IN ANY MANNER, FORMALLY OR INFORMALLY, ANY ACTION TAKEN BY THE DEBTORS OR ANY CONSENTING STAKEHOLDERS IN THE CHAPTER 11 CASES, THE TRANSACTIONS CONTEMPLATED BY THE RSA, THE PLAN, THE RESTRUCTURING TRANSACTIONS OR THE ENTRY OF ANY ORDER CONSISTENT WITH, OR CONTEMPLATED BY, THE TERMS OF THE RSA.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE SETTLEMENT GROUP RELEASE IS AT YOUR OPTION.

☐     **By checking this box, you elect to opt <u>out</u> of the Settlement Group Release set forth below.**

**Article VIII.E of the Plan contains the following Settlement Group Release:**

**As of the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by each Settlement Group Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Settlement Group Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen**

or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained in the Plan to the contrary, but subject in all respects to the immediately following sentence, the Settlement Group Release shall include any and all claims and Causes of Action alleged in, or related to, that certain Summons with Notice filed in the Supreme Court of the State of New York, New York County, Index Number: 650626/2023, which shall be deemed released with prejudice by the Settlement Releasing Parties, in their capacity as such, and withdrawn upon the occurrence of the Effective Date. Notwithstanding the foregoing, (a) to the extent the largest Holder of Secured Exchangeable Notes Claims in the Akin Ad Hoc Group as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Secured Exchangeable Notes Claim, a Settlement Group Releasing Party that is also a Holder of a Secured Exchangeable Notes Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Secured Exchangeable Notes Claim, (b) to the extent a Holder or group of Holders holding at least 25% of the amount of B-3 Term Loan Claims as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a B-3 Term Loan Claim, a Settlement Group Releasing Party that is also a Holder of a B-3 Term Loan Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such B-3 Term Loan Claim, and (c) to the extent a Holder or group of Holders holding at least 50% of the amount of Legacy Term Loan Claims or Legacy Notes Claims, as applicable, in the aggregate as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Legacy Term Loan Claim or a Legacy Notes Claim, as applicable, a Settlement Group Releasing Party that is also a Holder of Legacy Term Loan Claims or Legacy Notes Claim, as applicable, as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Legacy Term Loan Claim or Legacy Notes Claim, as applicable; provided, for the avoidance of doubt, no Settlement Group Releasing Party shall bring any claims or Causes of Action against any Entity in respect of any HoldCo Convertible Notes Claims or in respect of any Claims previously owned by such Settlement Group Releasing Party prior to the Petition Date but not owned as of the Petition Date. Notwithstanding anything in this Settlement Party Release, any member of the PW Ad Hoc Group as of the Petition Date shall only be a Settlement Group Releasing Party with respect to its HoldCo Convertible Notes Claims.

Definitions related to the Third-Party Release and the Settlement Group Release:

"*HoldCo Convertible Notes Settlement Trigger*" shall mean (i) the representation, at the first hearing in the Chapter 11 Cases on the record before the Bankruptcy Court, by Holders of at least 67% of HoldCo Convertible Notes Claims in Class 7 in the aggregate as of the Petition Date, by and through counsel for the S&C Ad Hoc Group and counsel for the PW Ad Hoc Group, of their support of the settlement set forth in Article IV.B of the Plan, and (ii) the delivery of written confirmation of such representation by counsel to the S&C Ad Hoc Group and counsel to the PW Ad Hoc Group within two (2) business days of such hearing setting forth the exact amount of HoldCo Convertible Notes Claims in Class 7 held by the members of the S&C Ad Hoc Group and the PW Ad Hoc Group as of the Petition Date which amount shall be at least equal to the HoldCo Convertible Notes Threshold to counsel to the Debtors, counsel to the Akin Ad Hoc Group, counsel to the PW Ad Hoc Group and counsel to the S&C Ad Hoc Group, in each case which shall be confirmed in writing to counsel to the S&C Ad Hoc Group and counsel to the PW Ad Hoc Group by counsel to the Debtors promptly upon satisfaction of each such condition.

"*HoldCo Convertible Notes Threshold*" shall mean the amount of HoldCo Convertible Notes Claims held by the members of the PW Ad Hoc Group and the S&C Ad Hoc Group as of the Petition Date which amount shall be at least 67% of the HoldCo Convertible Notes Claims in Class 7 in the aggregate.

"*PW Ad Hoc Group*" means that certain ad hoc group of Holders of First Lien Claims represented by the PW Ad Hoc Group Advisors.

"*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

"*Released Party*" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Settlement Group Releasing Party; (e) RingCentral; (f) each Agent/Trustee; (g) each DIP Commitment Party and each DIP Lender; (h) each RO Backstop Party; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); (j) each Related Party of each Entity in clause (c) through this clause (j); (k) each Debtor Related Party of each Entity in clause (a) and (b); *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article VIII.D or Article VIII.E of the Plan; (y) timely objects to the releases contained in Article VIII.D or Article VIII.E of the Plan and such objection is not resolved before Confirmation; or (z) was the beneficiary of the repurchase, redemption, or other satisfaction of HoldCo Convertible Notes prior to the Petition Date.

"*Releasing Party*" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) RingCentral; (e) each DIP Lender; (f) each Agent/Trustee; (g) each Consenting Stakeholder; (h) all Holders of Claims that vote to accept the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the

applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) each current and former Affiliate of each Entity in clause (a) through (k); and (m) each Related Party of each Entity in clause (a) through (l) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.  Notwithstanding the foregoing, any Entity that is a Settlement Group Releasing Party shall not be a Releasing Party unless such Entity is a member of the PW Ad Hoc Group as of the Petition Date, in which case such Entity shall not be a Releasing Party solely with respect to any HoldCo Convertible Notes Claims.

"*S&C Ad Hoc Group*" means that certain ad hoc group of Holders of Claims represented by Sullivan & Cromwell and Houlihan Lokey.

"*Settlement Group Releasing Party*" means a holder of HoldCo Convertible Notes Claims, solely in its capacity as such, that does not (x) elect to opt out of the releases contained in Article VIII.E of the Plan; or (y) object to, challenge, or impede in any manner, formally or informally, any action taken by the Debtors or any Consenting Stakeholders in the Chapter 11 Cases, the transactions contemplated by the RSA, the Plan, the Restructuring Transactions or the entry of any order consistent with, or contemplated by, the terms of the RSA.

**Item 3.  Certifications.**

By signing this Beneficial Holder Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

a.   that, as of February 9, 2023, either:  (i) the undersigned is the Holder of Class 7 Claims; (ii) the undersigned is an authorized signatory for an Entity or Person that is the Holder of Class 7 Claims;

b.   that the Holder has received a copy of the *Notice of Non-Voting Status* and that this Beneficial Holder Opt-Out Form is made pursuant to the terms and conditions set forth therein;

c.   that the undersigned has made the same election(s) with respect to all Claims; and

d.   that no other Beneficial Holder Opt-Out Form has been cast with respect to the Holder's Class 7 Claims, or, if any other Beneficial Holder Opt-Out Forms have been cast with respect to such Claims, such Beneficial Holder Opt-Out Forms are hereby revoked.

By signing this Beneficial Holder Opt-Out Form, the undersigned authorizes and instructs its Nominee (a) to furnish the election information in a Master Opt-Out Form to be transmitted to the Claims and Noticing Agent and (b) to retain this Beneficial Holder Opt-Out Form and related information in its records for at least one year after the Effective Date of the Plan.

YOUR RECEIPT OF THIS BENEFICIAL HOLDER OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

| | |
|---|---|
| **Name of Holder:** | _____ |
| | **(Print or Type)** |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| | **(If other than Holder)** |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |
| | _____ |
| **Date Completed:** | _____ |
| | |

**PLEASE COMPLETE, SIGN AND DATE THIS BENEFICIAL HOLDER OPT-OUT FORM AND RETURN IT TO YOUR NOMINEE IN SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO PROCESS YOUR INSTRUCTIONS ON A MASTER OPT-OUT FORM AND RETURN TO THE CLAIMS AND NOTICING AGENT SO THAT IT IS ACTUALLY RECEIVED ON OR PRIOR TO THE OPT OUT DEADLINE.**

---

IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> A MASTER OPT-OUT FORM ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023, THEN YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.

BENEFICIAL HOLDER OPT-OUT FORMS SENT DIRECTLY TO THE CLAIMS AND NOTICING AGENT WILL <u>NOT</u> BE ACCEPTED.

---

**<u>INSTRUCTIONS FOR COMPLETING THIS FORM</u>**

1.  Capitalized terms used in the Beneficial Holder Opt-Out Form or in these instructions (the "<u>Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.  To ensure that your election is counted, you <u>must</u> complete the Beneficial Holder Opt-Out Form and take the following steps:  (a)  clearly indicate your decision to "opt out" of the Third-Party Release set forth in the Plan in <u>Item 1</u> above and/or the Settlement Group Release set forth in the Plan in <u>Item 2</u> above; (b) make sure that the information required by <u>Item 3</u> above has been correctly inserted; <u>and</u> (c) sign, date and return an original of your Beneficial Holder Opt-Out Form to your Nominee in accordance with paragraph 3 directly below.

3.  **<u>Return of Beneficial Holder Opt-Out Form</u>**:  Your Beneficial Holder Opt-Out Form MUST be returned to your Nominee in sufficient time to allow your Nominee to process your instructions on a Master Opt-Out Form and return to the Claims and Noticing Agent so as to be **actually received** by the Claims and Noticing Agent on or before the Opt-Out Deadline, which is **<u>4:00 p.m. (prevailing Central Time) on March 17, 2023</u>**.

4.  If a Master Opt-Out Form is received by the Claims and Noticing Agent <u>after</u> the Opt-Out Deadline, it will not be effective.  Additionally, the following Opt-Out Forms will <u>NOT</u> be counted:

    ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE INTEREST;

    ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE RELEASE;

    ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AND NOTICING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

    ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM TRANSMITTED BY FACSIMILE OR TELECOPY;

    ➢   ANY UNSIGNED BENEFICIAL HOLDER OR MASTER OPT-OUT FORM**;** OR

    ➢   ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SOLICITATION ORDER.

5.  The method of delivery of Beneficial Opt-Out Forms to your Nominee is at the election and risk of each Holder of a Class 7 Claim.  Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Voting and Claims Agent **actually receives** a Master Opt-Out Form from your Nominee.  Beneficial Holders and their Nominees should allow sufficient time to assure timely delivery.

6.    If multiple Opt-Out Forms are received from the same Holder with respect to the same Claim prior to the Opt-Out Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

7.    The Beneficial Holder Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt-out of a Release.  Accordingly, at this time, Holders of Interests should not surrender certificates or instruments representing or evidencing their Interests, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Opt-Out Form.

8.    The Beneficial Holder Opt-Out Form does <u>not</u> constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

9.    <u>Please be sure to sign and date your Beneficial Holder Opt-Out Form</u>.  If you are signing a Beneficial Holder Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Opt-Out Form.

**<u>PLEASE RETURN YOUR BENEFICIAL HOLDER OPT-OUT FORM PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AND NOTICING AGENT AT:**

**877-709-4751 (USA or Canada) or 424-236-7231 (International)
Or via online form: <u>www.kccllc.net/avaya/inquiry</u>**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THE
MASTER OPT-OUT FORM FROM YOUR NOMINEE BEFORE THE OPT-OUT
DEADLINE, WHICH IS 4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17,
2023, THEN YOUR OPT-OUT ELECTION TRANSMITTED PURSUANT TO THE
BENEFICIAL HOLDER OPT-OUT FORM WILL NOT BE EFFECTIVE.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO
MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN
WHAT IS CONTAINED IN THE DOCUMENTS MAILED HEREWITH.

**Exhibit A**

***Please check one box below to indicate the CUSIP/ISIN to which this Beneficial Opt-Out Form pertains.  If you check more than one box below you risk having your vote invalidated.***

| | DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 2.25% Convertible Senior Notes | CUSIP 05351X AB 7 / ISIN US05351XAB73 |

## Exhibit 4A

**Class 4 Claims (Ballot)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| AVAYA INC., *et al.*,[1] | ) | **IMPORTANT**: No chapter 11 case has been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**BALLOT FOR VOTING ON THE JOINT
PREPACKAGED PLAN OF REORGANIZATION OF AVAYA INC. AND
ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 4 – FIRST LIEN CLAIMS**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY MARCH 17, 2023**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF AVAYA INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR AVAYA INC., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11. THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY KURTZMAN CARSON CONSULTANTS LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") PRIOR TO **4:00 P.M. PREVAILING CENTRAL TIME ON MARCH 17, 2023** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT AVAYABALLOTS@KCCLLC.COM AND REFERENCE "AVAYA" IN THE SUBJECT LINE, OR CALL 877-709-4751 (USA OR CANADA) OR 424-236-7231 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/avaya. The location of Debtor Avaya Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 350 Mount Kemble Avenue, Morristown, New Jersey 07960.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

1

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Class, among others.  Subject to the terms and conditions of the Plan, you will receive the treatment identified in **Exhibit A**.  **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan**.

You have received this Ballot because the Company's books and records indicate that you are a Holder of an Allowed Claim in Class 4 (the "Voting Class") as of February 9, 2023 (the "Voting Record Date") and as set forth in Item 1 of the Ballot.  Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Claims.

This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent immediately.

You should review the Plan before you vote.  You may wish to seek legal advice concerning the proposals related to the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Ballot.  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, and to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Bankruptcy Court may confirm the Plan and thereby bind all Beneficial Holders of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Notice and Claims Agent **actually receives** it on or before the Voting Deadline.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH A CLAIM.**

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MARCH 17, 2023.**

**VOTING — COMPLETE THIS SECTION**

**Item 1.  Principal Amount of Claims**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Claims in the Voting Class as set forth below (your "<u>Claims</u>").  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for each Voting Class in order to have your vote in that particular Voting Class counted.

Please note that you are voting all of your Claims in each particular Voting Class either to accept or reject the Plan.  You may not split your vote in any particular Voting Class.  If you do not indicate that you either accept or reject the Plan in each particular Voting Class by checking the applicable box(es) below, your vote in that particular Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for a particular Voting Class by checking both boxes below, your vote in that particular Voting Class will not be counted.

The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.

The Holder of the Claims in the Voting Class set forth below votes to (*please check <u>one and only one box per applicable Voting Claim</u>*):

| Master Account:  [List Master Name] | | | | | |
|---|---|---|---|---|---|
| **Investor:  [List Fund]** | | | | | |
| **Voting Class** | **Description** | **Amount** | **Vote to Accept the Plan** | **Vote to Reject the Plan** | **Opt Out of Third-Party Release or Settlement Group Release** |
| **Class 4 (First Lien Claims)** | | | | | |
| Class 4 | First Lien Claims | $_____ | | | |

**Item 2. Release Information**

**Article VIII.D of the Plan provides for a third-party release (the "<u>Third-Party Release</u>"):**

As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Article VIII.E of the Plan provides for the Settlement Group Release:

As of the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by each Settlement Group Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Settlement Group Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained in the Plan to the contrary, but subject in all respects to the immediately following sentence, the Settlement Group Release shall include any and all claims and Causes of Action alleged in, or related to, that certain Summons with Notice filed in the Supreme Court of the State of New York, New York County, Index Number: 650626/2023, which shall be deemed released with prejudice by the Settlement Releasing Parties, in their capacity as such, and withdrawn upon the occurrence of the Effective Date. Notwithstanding the foregoing, (a) to the extent the largest Holder of Secured Exchangeable Notes Claims in the Akin Ad Hoc Group as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Secured Exchangeable Notes Claim, a Settlement Group Releasing Party that is also a Holder of a Secured Exchangeable Notes Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Secured Exchangeable Notes Claim, (b) to the extent a Holder or group of Holders holding at least 25% of the amount of B-3 Term Loan Claims as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a B-3 Term Loan Claim, a Settlement Group Releasing Party that is also a Holder of a B-3 Term Loan Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such B-3 Term Loan Claim, and (c) to the extent a Holder or group of Holders holding at least 50% of the amount of Legacy Term Loan Claims or Legacy Notes Claims, as applicable, in the aggregate as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Legacy Term Loan Claim or a Legacy Notes Claim, as applicable, a Settlement Group Releasing Party that is also a Holder of Legacy Term Loan Claims or Legacy Notes Claim, as applicable, as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Legacy Term Loan Claim or Legacy Notes Claim, as applicable; provided, for the avoidance of doubt, no Settlement Group Releasing Party shall bring any claims or Causes of Action against any Entity in respect of any HoldCo Convertible Notes Claims or in respect of any Claims previously owned by such Settlement Group Releasing Party prior to the Petition Date but not owned as of the Petition Date.  Notwithstanding anything in this Settlement Party Release, any member

**of the PW Ad Hoc Group as of the Petition Date shall only be a Settlement Group Releasing Party with respect to its HoldCo Convertible Notes Claims.**

**<u>IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE</u>:**

**UNDER THE PLAN, "RELATED PARTY" MEANS MEANS EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, COMMITTEE MEMBERS, MEMBERS OF ANY GOVERNING BODY, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS (INCLUDING ANY OTHER ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS AND ANY SUCH PERSON'S OR ENTITY'S RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES.**

**UNDER THE PLAN, "RELEASING PARTY" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) RINGCENTRAL; (E) EACH DIP LENDER; (F) EACH AGENT/TRUSTEE; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (K); AND (M) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (L) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  NOTWITHSTANDING THE FOREGOING, ANY ENTITY THAT IS A SETTLEMENT GROUP RELEASING PARTY SHALL NOT BE A RELEASING PARTY UNLESS SUCH ENTITY IS A MEMBER OF THE PW AD HOC GROUP AS OF THE PETITION DATE, IN WHICH CASE SUCH ENTITY SHALL NOT BE A RELEASING PARTY SOLELY WITH RESPECT TO ANY HOLDCO CONVERTIBLE NOTES CLAIMS.**

**"SETTLEMENT GROUP RELEASING PARTY" MEANS A HOLDER OF HOLDCO CONVERTIBLE NOTES CLAIMS, SOLELY IN ITS CAPACITY AS SUCH, THAT DOES NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.E OF THE PLAN; OR (Y) OBJECT TO, CHALLENGE, OR IMPEDE IN ANY MANNER, FORMALLY OR INFORMALLY, ANY ACTION TAKEN BY THE DEBTORS OR ANY CONSENTING STAKEHOLDERS IN THE CHAPTER 11 CASES, THE TRANSACTIONS CONTEMPLATED BY THE RSA, THE PLAN, THE RESTRUCTURING TRANSACTIONS OR THE ENTRY OF ANY ORDER CONSISTENT WITH, OR CONTEMPLATED BY, THE TERMS OF THE RSA.**

2em

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLES VIII.D OR VIII.E OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLES VIII.D OR VIII.E OF THE PLAN <u>ONLY IF</u> YOU (A) CHECK THE BOX BELOW OR (B) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLES VIII.D OR VIII.E OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLES VIII.D OR VIII.E OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**<u>IN ORDER TO OPT OUT OF THE THIRD-PARTY RELEASE OR THE GROUP SETTLEMENT RELEASE, THE UNDERSIGNED MUST CHECK THE BOX IN ITEM 1 IN THE COLUMN LABELED "OPT OUT OF THIRD-PARTY RELEASE OR SETTLEMENT GROUP RELEASE."</u>**

**Item 3.  Certification, Ballot Completion, and Delivery Instructions**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a)  that, as of the Voting Record Date, either:  (i) the undersigned is the Holder of the Claims in the Voting Class as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Class as set forth in Item 1;

(b)  that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)  that the undersigned has cast the same vote with respect to all Claims in each particular Voting Class; and

(d)  that no other Ballots with respect to the Claims in the Voting Class identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION |
|---|

Name of Holder: _____

Signature: _____

Signatory Name (if other
than the Holder): _____

Title: _____

Address: _____

Email Address: _____

Date Completed: _____

---

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY.  THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT PRIOR TO THE VOTING DEADLINE. YOU MAY SUBMIT YOUR BALLOT VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**Avaya Ballot Processing Center**
**c/o KCC**
**222 N. Pacific Coast Highway, Suite 300**
**El Segundo, CA 90245**

---

**ALTERNATIVELY,**
**YOU CAN SUBMIT YOUR BALLOT ELECTRONICALLY (FILLED PDF OR SCANNED)**
**(AN "E-BALLOT"). PLEASE COMPLETE, SIGN, AND DATE YOUR E-BALLOT AND SUBMIT BY EMAIL:**

avayaballots@kccllc.com

With a reference to "Avaya" in the subject line.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT 877-709-4751 (USA OR CANADA); 424-236-7231 (INTERNATIONAL) OR EMAIL AVAYABALLOTS@KCCLLC.COM.**

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release, exculpation, and injunction provisions:[1]

**Article VIII.C: Releases by the Debtors**

As of the Effective Date and subject to (i) the Settlement Group Settlement, as applicable, (ii) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this Release, and (iii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan (including the Preserved Tranche B-3 Claims), the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, the Governance Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release (including the release of the Preserved Tranche B-3 Claims),

---

[1]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

<u>Article VIII.D: Releases by Third Parties</u>

As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the

Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

**Article VIII.E:  Releases by the Settlement Group Releasing Parties**

As of the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by each Settlement Group Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Settlement Group Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained in the Plan to the contrary, but subject in all respects to the immediately following sentence, the Settlement Group Release shall include any and all claims and Causes of Action alleged in, or related to, that certain Summons with Notice filed in the Supreme Court of the State of New York, New York County, Index Number: 650626/2023, which shall be deemed released with prejudice by the Settlement Releasing Parties, in their capacity as such, and withdrawn upon the occurrence of the Effective Date. Notwithstanding the foregoing, (a) to the extent the largest Holder of Secured Exchangeable Notes Claims in the Akin Ad Hoc Group as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Secured Exchangeable Notes Claim, a Settlement Group Releasing Party that is also a Holder of a Secured Exchangeable Notes Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Secured Exchangeable Notes Claim, (b) to the extent a Holder or group of Holders holding at least 25% of the amount of B-3 Term Loan Claims as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a B-3 Term Loan Claim, a Settlement Group Releasing Party that is also a Holder of a B-3 Term Loan Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such B-3 Term Loan Claim, and (c) to the extent a Holder or group of Holders holding at least 50% of the amount of Legacy Term Loan Claims or Legacy Notes Claims, as applicable, in the aggregate as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Legacy Term Loan Claim or a Legacy Notes Claim, as applicable, a Settlement Group Releasing Party that is also a Holder of Legacy Term Loan Claims or Legacy Notes Claim, as applicable, as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Legacy Term Loan Claim or Legacy

Notes Claim, as applicable; provided, for the avoidance of doubt, no Settlement Group Releasing Party shall bring any claims or Causes of Action against any Entity in respect of any HoldCo Convertible Notes Claims or in respect of any Claims previously owned by such Settlement Group Releasing Party prior to the Petition Date but not owned as of the Petition Date. Notwithstanding anything in this Settlement Party Release, any member of the PW Ad Hoc Group as of the Petition Date shall only be a Settlement Group Releasing Party with respect to its HoldCo Convertible Notes Claims.

## Article VIII.F:  Exculpation

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action (including, for the avoidance of doubt, any Claim or Cause of Action with respect to (i) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (ii) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

## Article VIII.G:  Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

14

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, Article VIII.E, and Article VIII.F of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT:

1. This Ballot contains voting options with respect to the Plan.

2. To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered (a) via first class mail, overnight courier, or hand delivery to Avaya Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245 or   (b) via e-mail to avayaballots@kccllc.com, so that this Ballot is actually received by the Claims and Noticing Agent on or before the Voting Deadline, 4:00 p.m. prevailing Central Time on March 17, 2023.

3. Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan or is improperly signed and returned will <u>NOT</u> be counted unless the Company otherwise determines.

4. To vote, you <u>MUST</u> deliver your completed Ballot (whether via mail, hand delivery, e-mail, or electronically on the Claims and Noticing Agent's website) so that it is <u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline by one of the methods described above.  **The Voting Deadline is 4:00 p.m. prevailing Central Time on March 17, 2023**.

5. Any Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company otherwise determines. No Ballot may be withdrawn or modified after the Voting Deadline without the Company's prior consent.

6. Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives your paper Ballot or E-Ballot.  In all cases, you should allow sufficient time to assure timely delivery.

7. If you deliver multiple Ballots to the Claims and Noticing Agent, <u>ONLY</u> the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8. You must vote all of your Claims in each particular Voting Class either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Claims in the Voting Class, the Company may direct the Claims and Noticing Agent to aggregate those Claims for the purpose of counting votes.

9. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim, in the Company's chapter 11 cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. <u>SIGN AND DATE</u> your Ballot.[1]  In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot.  Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

---

[1]  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Company, the Company's proposed counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

12. If your Claim or Interest is held in multiple accounts, you may receive more than one Ballot coded for each such account for which your Claims are held.  Each Ballot votes only your Claims indicated on that Ballot.  Accordingly, complete and return each Ballot you receive.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY EMAILING <u>AVAYABALLOTS@KCCLLC.COM</u> AND REFERENCE "AVAYA" IN THE SUBJECT LINE, OR BY CALLING 877-709-4751 (USA OR CANADA); 424-236-7231 (INTERNATIONAL).**

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**<u>Exhibit A</u>**

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:

| | | |
|---|---|---|
| Class 4 | First Lien Claims | Each Holder of a First Lien Claim shall receive, in full and final satisfaction of such Claim, (i) such Holder's applicable Takeback Term Loan Recovery, (ii) its *Pro Rata* share of 100% of the New Equity Interests, subject to dilution on account of the Management Incentive Plan Pool; the RO Common Shares, the RO Backstop Shares, the RO Premium Shares, and the DIP Commitment Shares, and (iii) its *Pro Rata* share of the Rights. |

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

**<u>Exhibit 4B</u>**

**Class 4 Claims (Master Ballot)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| AVAYA INC., *et al.*,[1] | ) | **IMPORTANT**:  No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**MASTER BALLOT FOR VOTING ON THE JOINT
PREPACKAGED PLAN OF REORGANIZATION OF AVAYA INC. AND
ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 4 – FIRST LIEN CLAIMS**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY MARCH 17, 2023**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF AVAYA INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR AVAYA INC., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY KURTZMAN CARSON CONSULTANTS LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON MARCH 17, 2023** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT AVAYABALLOTS@KCCLLC.COM AND REFERENCE "AVAYA" IN THE SUBJECT LINE, OR CALL 877-499-4509 (USA OR CANADA) OR 917-281-4800 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/avaya.  The location of Debtor Avaya Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 350 Mount Kemble Avenue, Morristown, New Jersey 07960.

[2]  Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Class, among others.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[3] of a First Lien Claim in Class 4 (the "Voting Class") as of **February 9, 2023** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders' Class 4 Claims to transmit to the Claims and Noticing Agent the votes of such Beneficial Holders in respect of their Class 4 Claims to accept or reject the Plan.  The CUSIP numbers (the "CUSIP") for Class 4 Claims entitled to vote and of which you are the Nominee are set forth on Exhibit A attached hereto. THE VOTES ON THIS BALLOT FOR BENEFICIAL HOLDERS OF CLAIMS IN CLASS 4 SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLASS 4 CLAIM.**

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot. This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, and to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

---

[3]    "Beneficial Holder" is a beneficial owner of Class 4 Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

The Bankruptcy Court may confirm the Plan and thereby bind all Beneficial Holders of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Notice and Claims Agent **actually receives** it on or before the Voting Deadline.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MARCH 17, 2023.**

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a broker, bank, or other nominee for the beneficial owners of the aggregate principal amount of the Claims listed in Item 2 below, and is the record holder of such bonds; or

☐ is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below; or

☐ has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the beneficial owners of the Claims described in Item 2.

**Item 2.  Claims in the Voting Class Vote on Plan and Item 3.  Releases.**

The undersigned transmits the following votes and releases of Beneficial Holders of Claims against the Debtors in the Voting Class as set forth below and certifies that the following Beneficial Holders of the Classes of Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Ballots casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of their Claims in the Voting Class either to accept or reject the Plan and may not split such vote.  Any Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan in the Voting Class will not be counted.  If the Beneficial Holder has checked the box on Item 2 of the Beneficial Holder Ballot pertaining to the releases by Holders of Claims, as detailed in Articles VIII.D and VIII.E of the Plan, please place an X in the Item 3 column of the Voting Class below.  The full text of Articles VIII.D and VIII.E is duplicated in the Master Ballot Instructions.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

| CUSIP AS INDICATED ON EXHIBIT A ATTACHED HERETO | | | | |
|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder Who Voted in this Plan Class** | **Principal Amount Held as of the Voting Record Date** | **Item 2**<br><br>**Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below.** | | **Item 3**<br><br>**If the box in Item 2 of the Beneficial Holder Ballot was completed, place an "X" in the column below.** |
| | | **Accept the Plan** | **or** | **Reject the Plan** | |
| **Class 4 – First Lien Claims** | | | | |
| 1. | $ | | | | |
| 2. | $ | | | | |
| 3. | $ | | | | |
| 4. | $ | | | | |
| 5. | $ | | | | |
| 6. | $ | | | | |
| **TOTALS** | $ | | | | |

4

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Item 3.  Certification as to Transcription of Information from Item 3 of the Ballots as to Claims in the Voting Class Voted Through Other Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 3 of each Ballot received from a Beneficial Holder.  Please use additional sheets of paper if necessary.

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 3 of the Ballots | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number of Other Claims Voted | DTC Participant Name and Number | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted |
| Class 4 – First Lien Claims | | | | |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Item 4.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.      it has received a copy of the Disclosure Statement, the Plan, the Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims in the Voting Class listed in Item 2 above or delivered materials via other customary communications used to solicit or collect votes;

2.      it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 of this Master Ballot;

3.      it is the registered Beneficial Holder of the securities being voted;

4.      it has been authorized by each such Beneficial Holder to vote on the Plan;

5.      it has properly disclosed:  (a) the number of Beneficial Holders who completed Ballots; (b) the respective amounts of the Claims in the Voting Class as set forth in Item 2, as the case may be, by each Beneficial Holder who completed a Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) each such Beneficial Holder's certification as to other Claims voted; and (e) the customer account or other identification number for each such Beneficial Holder; and

6.      it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

Name of Nominee:      _____
                                           (Print or type)

DTC Participant Number:  _____

Name of Proxy Holder or Agent
for Nominee (if applicable):
                                      _____
                                           (Print or type)

Signature:                  _____


Name of Signatory:      _____

Title:                          _____

Address:                    _____

                                _____

                                _____

Date Completed:        _____

Email Address:           _____

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MARCH 17, 2023.**

**PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, OR BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE ADDRESS BELOW, OR BY EMAIL (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT (KURTZMAN CARSON CONSULTANTS LLC) BY THE VOTING DEADLINE.**

---

**By first class mail, overnight courier, or hand delivery to:**

Avaya Ballot Processing Center
c/o KCC
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**If you would like to coordinate hand delivery of your Master Ballot, please email avayaballots@kccllc.com at least 24 hours in advance of the anticipated date and time of your delivery.**

---

**OR**

---

**By electronic mail:**

Submit your Master Ballot via electronic mail to avayaballots@kccllc.com with "Avaya Master Ballot" in the subject line.

**IMPORTANT NOTE:  For any ballot cast via electronic mail, a format of the attachment must be found in the common workplace and industry standard format (i.e., industry-standard pdf file) and the received date and time in the Solicitation Agent's inbox will be used as a timestamp for receipt.**

Nominees that cast a Master Ballot via electronic mail should NOT also submit a paper Master Ballot.

---

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT 877-499-4509 (DOMESTIC TOLL-FREE) OR 917-281-4800 (INTERNATIONAL TOLL/LOCAL) OR AVAYABALLOTS@KCCLLC.COM.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**MASTER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY E-MAIL TO AVAYABALLOTS@KCCLLC.COM WITH A REFERENCE TO "AVAYA MASTER BALLOT" IN THE SUBJECT LINE).**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**VOTING INSTRUCTIONS**

1.  As described in the Disclosure Statement, the Company is soliciting the votes of Beneficial Holders of Class 4 Claims with respect to the Plan referred to in the Disclosure Statement.  The Plan and the Disclosure Statement are included in the Solicitation Package.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.  The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.  You should immediately distribute the Ballots (or other customary material used to collect votes in lieu of the Ballots) and the Solicitation Package to all Beneficial Holders of Class 4 Claims and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds.  You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Claims and Noticing Agent, a Master Ballot that reflects the vote of such Beneficial Holders by 4:00 p.m., prevailing Central Time, on March 17, 2023, or otherwise validate the Ballot in a manner acceptable to the Claims and Noticing Agent.

    If you are transmitting the votes of any beneficial owners of Claims in the Voting Class, you may either:

    (a)  "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 4 Claim for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Claims and Noticing Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Ballot and including their DTC participant name and DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of the Class 4 Claim held by the Nominee for such Beneficial Holder, applying a medallion guarantee stamp to the ballot to certify the principal amount of the Class 4 Claim owned by the Beneficial Holder as of the Voting Record Date and then forwarding the Ballot together with the Solicitation Package to the Beneficial Holder.  The Beneficial Holder then completes the information requested on the Ballot and returns the Ballot directly to the Claims and Noticing Agent.  A list of the Beneficial Holders to whom "pre-validated" Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; OR

    (b)  Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 4 Claim for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the beneficial owner then returning the individual Beneficial Holder Ballot to the Nominee.  In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on a Master Ballot that will be provided to the Nominee separately by the Claims and Noticing Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Claims and Noticing Agent.  The Nominee should advise the Beneficial Holders to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and

8

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

return the Master Ballot to the Claims and Noticing Agent so that the Master Ballot is **actually received** by the Claims and Noticing Agent on or before the Voting Deadline.

4. With regard to any Ballots returned to you by a Beneficial Holder, you must:  (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Claims and Noticing Agent by the Voting Deadline; and (d) retain such Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date.  You may be ordered to produce the Ballots to the Company or the Bankruptcy Court.

5. The time by which a Ballot is **actually received** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is March 17, 2023, at 4:00 p.m., prevailing Central Time**.

6. If a Ballot is received after the Voting Deadline, it will not be counted unless the Company determines otherwise or as permitted by applicable law or court order.  In all cases, Nominees should allow sufficient time to ensure timely delivery.  No Ballot should be sent to the Company or the Company's financial or legal advisors.  A Ballot will not be counted unless received by the Claims and Noticing Agent.

7. If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot.

8. If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

9. If a voter simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots shall not be counted.

10. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Company will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

11. The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim in the Company's chapter 11 cases.

12. Please be sure to sign and date your Master Ballot.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Claims and Noticing Agent, the Company, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13. If you are both the Nominee and the Beneficial Holder of any of the Claims in the Voting Class and you wish to vote such Claims in the Voting Class, you may return a Master Ballot for such Claims in the Voting Class and you must vote your entire Claim in the Voting Class to either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot, other than a Master Ballot with the votes of multiple Holders, that partially rejects and partially accepts the Plan will not be counted.

9

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

14.     The following Ballots and Master Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder of the Claim; (b) any Ballot or Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot or Master Ballot; (d) any Ballot or Master Ballot not marked to accept or reject the Plan; and (e) any Ballot or Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

15.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided* that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

The following additional rules shall apply to Master Ballots:

16.     Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims in the Voting Class as of the Record Date, as evidenced by the record and depository listings;

17.     Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Claims in the Voting Class held by such Nominee;

18.     To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Claims and Noticing Agent will attempt to reconcile discrepancies with the Nominee;

19.     To the extent that overvotes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Claims and Noticing Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the overvote, but only to the extent of the Nominee's position in the relevant Claims in the Voting Class; and

20.     For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Claims and Noticing Agent may be asked to adjust such principal amount to reflect the Claim amount.

**Important Information Regarding Releases under the Plan**:[4]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

          **As of the Effective Date and subject to (i) the settlement set forth in Article IV.B of the Plan, as applicable, (ii) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this Release, and (iii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and**

---

[4]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Master Ballot.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan (including the Preserved Tranche B-3 Claims), the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, the Governance Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release (including the release of the Preserved Tranche B-3 Claims), which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that

11

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

VIII.E of the Plan provides for the Settlement Group Release:

As of the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by each Settlement Group Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Settlement Group Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law,

12

[CUSIPs / ISINs as indicated on Exhibit A attached hereto]

or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained in the Plan to the contrary, but subject in all respects to the immediately following sentence, the Settlement Group Release shall include any and all claims and Causes of Action alleged in, or related to, that certain Summons with Notice filed in the Supreme Court of the State of New York, New York County, Index Number: 650626/2023, which shall be deemed released with prejudice by the Settlement Releasing Parties, in their capacity as such, and withdrawn upon the occurrence of the Effective Date. Notwithstanding the foregoing, (a) to the extent the largest Holder of Secured Exchangeable Notes Claims in the Akin Ad Hoc Group as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Secured Exchangeable Notes Claim, a Settlement Group Releasing Party that is also a Holder of a Secured Exchangeable Notes Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Secured Exchangeable Notes Claim, (b) to the extent a Holder or group of Holders holding at least 25% of the amount of B-3 Term Loan Claims as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a B-3 Term Loan Claim, a Settlement Group Releasing Party that is also a Holder of a B-3 Term Loan Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such B-3 Term Loan Claim, and (c) to the extent a Holder or group of Holders holding at least 50% of the amount of Legacy Term Loan Claims or Legacy Notes Claims, as applicable, in the aggregate as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Legacy Term Loan Claim or a Legacy Notes Claim, as applicable, a Settlement Group Releasing Party that is also a Holder of Legacy Term Loan Claims or Legacy Notes Claim, as applicable, as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Legacy Term Loan Claim or Legacy Notes Claim, as applicable; provided, for the avoidance of doubt, no Settlement Group Releasing Party shall bring any claims or Causes of Action against any Entity in respect of any HoldCo Convertible Notes Claims or in respect of any Claims previously owned by such Settlement Group Releasing Party prior to the Petition Date but not owned as of the Petition Date.  Notwithstanding anything in this Settlement Party Release, any member of the PW Ad Hoc Group as of the Petition Date shall only be a Settlement Group Releasing Party with respect to its HoldCo Convertible Notes Claims.

Definitions Related to the Debtor Release, the Third-Party Release, and the Settlement Group Release:

UNDER THE PLAN, "***RELATED PARTY***" MEANS EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, COMMITTEE MEMBERS, MEMBERS OF ANY GOVERNING BODY, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS (INCLUDING ANY OTHER ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR

MANAGER OF AN ENTITY), ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS AND ANY SUCH PERSON'S OR ENTITY'S RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES.

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH SETTLEMENT GROUP RELEASING PARTY; (E) RINGCENTRAL; (F) EACH AGENT/TRUSTEE; (G) EACH DIP COMMITMENT PARTY AND EACH DIP LENDER; (H) EACH RO BACKSTOP PARTY; (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (C) THROUGH THIS CLAUSE (J); (K) EACH DEBTOR RELATED PARTY OF EACH ENTITY IN CLAUSE (A) AND (B); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OR ARTICLE VIII.E OF THE PLAN; (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OR ARTICLE VIII.E OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION; OR (Z) WAS THE BENEFICIARY OF THE REPURCHASE, REDEMPTION, OR OTHER SATISFACTION OF HOLDCO CONVERTIBLE NOTES PRIOR TO THE PETITION DATE.

UNDER THE PLAN, "***RELEASING PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) RINGCENTRAL; (E) EACH DIP LENDER; (F) EACH AGENT/TRUSTEE; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (K); AND (M) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (L) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION. NOTWITHSTANDING THE FOREGOING, ANY ENTITY THAT IS A SETTLEMENT GROUP RELEASING PARTY SHALL NOT BE A RELEASING PARTY UNLESS SUCH ENTITY IS A MEMBER OF THE PW AD HOC GROUP AS OF THE PETITION DATE, IN WHICH CASE SUCH ENTITY SHALL NOT BE A RELEASING PARTY SOLELY WITH RESPECT TO ANY HOLDCO CONVERTIBLE NOTES CLAIMS.

UNDER THE PLAN, "***SETTLEMENT GROUP RELEASING PARTY***" MEANS A HOLDER OF HOLDCO CONVERTIBLE NOTES CLAIMS, SOLELY IN ITS CAPACITY AS SUCH, THAT DOES NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.E OF THE PLAN; OR (Y) OBJECT TO, CHALLENGE, OR IMPEDE IN ANY MANNER, FORMALLY OR INFORMALLY, ANY ACTION TAKEN BY THE DEBTORS OR ANY CONSENTING STAKEHOLDERS IN THE CHAPTER 11 CASES, THE TRANSACTIONS CONTEMPLATED BY THE RSA, THE PLAN, THE RESTRUCTURING TRANSACTIONS OR THE ENTRY OF ANY ORDER CONSISTENT WITH, OR CONTEMPLATED BY, THE TERMS OF THE RSA.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

Article VIII.F of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

> **To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action (including, for the avoidance of doubt, any Claim or Cause of Action with respect to (i) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (ii) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Article VIII.G of the Plan establishes an injunction (the "**Injunction**"):

> **Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

> **No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, Article VIII.E, and Article VIII.F of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action**

[CUSIPs / ISINs as indicated on Exhibit A attached hereto]

represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT 877-499-4509 (DOMESTIC TOLL-FREE) OR 917-281-4800 (INTERNATIONAL TOLL/LOCAL) OR AVAYABALLOTS@KCCLLC.COM.   ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.

<u>PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY</u>

[CUSIPs / ISINs as indicated on Exhibit A attached hereto]

**Exhibit A**

*Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto.  If you check more than one box below, the Beneficial Holder votes submitted on this Master Ballot may be invalidated:*

| | BOND DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| | **Class 4 (First Lien Claims)** | |
| ☐ | 6.125% Senior First Lien Notes | CUSIP U05258 AF 2 / ISIN USU05258AF20 |
| ☐ | 6.125% Senior First Lien Notes | CUSIP 053499 AL 3 / ISIN US053499AL36 |
| ☐ | 8.00% Exchangeable Senior Secured Notes | CUSIP 053499 AN 9 / ISIN US053499AN91 |

<u>**Exhibit 4C**</u>

**Class 4 Claims (Beneficial Holder Ballot)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| AVAYA INC., *et al.*,[1] | **IMPORTANT**: No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
| Debtors. | |

### BENEFICIAL HOLDER BALLOT FOR VOTING ON THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF AVAYA INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 4 – FIRST LIEN CLAIMS

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY MARCH 17, 2023**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF AVAYA INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR AVAYA INC., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS BALLOT (OR THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BALLOT) MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY KURTZMAN CARSON CONSULTANTS LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON MARCH 17, 2023** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT HTTP://WWW.KCCLLC.NET/AVAYA/INQUIRY AND REFERENCE "AVAYA" IN THE SUBJECT LINE, OR CALL 877-709-4751 (USA OR CANADA) OR 424-236-7231 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES OR VOTING INSTRUCTIONS, INCLUDING ANY QUESTIONS ABOUT HOW TO SUBMIT YOUR VOTE, PLEASE CONTACT YOUR NOMINEE (AS DEFINED BELOW).

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/avaya.  The location of Debtor Avaya Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 350 Mount Kemble Avenue, Morristown, New Jersey 07960.

[2]   Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

- IF A BENEFICIAL HOLDER[3] HOLDS CLASS 4 CLAIMS THROUGH ONE OR MORE NOMINEES,[4] SUCH BENEFICIAL HOLDER MUST IDENTIFY ALL CLASS 4 CLAIMS HELD IN ACCORDANCE WITH ITEM 3 OF THIS BALLOT, AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Class, among others.

You are receiving this ballot (the "Ballot") because your Nominee has identified you as a Beneficial Holder of a First Lien Claim in Class 4 (the "Voting Class") as of **February 9, 2023** (the "Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package").  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by Holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH CLAIM(S).**

---

[3]   "Beneficial Holder" is a beneficial owner of Class 4 Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company and/or the applicable indenture trustee, as of the Voting Record Date.

[4]   "Nominee" means a broker, dealer, commercial bank, trust company, or other nominee who holds Class 4 Claims, or such firm's agent, on behalf of a Beneficial Holder.

2

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been placed in Class 4 under the Plan*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MARCH 17, 2023.**

**Item 1.  Voting - Complete This Section.**

| **ITEM 1:** **PRINCIPAL AMOUNT OF CLAIMS** | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of Claim(s) in the Voting Class as set forth below (your "Claims").  If you do not know the amount of your Class 4 First Lien Claim as of the Voting Record Date, please contact your Nominee for this information.  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for the Voting Class in order to have your vote in the Voting Class counted. Please note that you are voting all of your Claims in the Voting Class either to accept or reject the Plan.  You may not split your vote in the Voting Class.  If you do not indicate that you either accept or reject the Plan in the Voting Class by checking the applicable box below, your vote in the Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for the Voting Class by checking both boxes below, your vote in the Voting Class will not be counted. The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor. The Beneficial Holder of the Claim(s) in the Voting Class set forth below votes to (*please check one and only one box per applicable Voting Claim or Interest*): |
|---|---|

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 4 | First Lien Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN <br><br> ☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2.  Important Information Regarding Releases under the Plan.**[5]

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**As of the Effective Date and subject to (i) the settlement set forth in Article IV.B of the Plan, as applicable, (ii) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this Release, and (iii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or**

---

[5]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan (including the Preserved Tranche B-3 Claims), the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, the Governance Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release (including the release of the Preserved Tranche B-3 Claims), which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date and subject to (i) the Preserved Claims (other than the Preserved Tranche B-3 Claims), which shall not be included in this release, and (ii) the completion of that certain investigation commenced by, and under the direction and authority of, the Audit Committee, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or

unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (i) other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date, from any claim or Cause of Action with respect to (a) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (b) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) or (ii) from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Article VIII.E of the Plan provides for the Settlement Group Release:

As of the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by each Settlement Group Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Settlement Group Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions

[CUSIPs / ISINs as indicated on Exhibit A attached hereto]

**or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained in the Plan to the contrary, but subject in all respects to the immediately following sentence, the Settlement Group Release shall include any and all claims and Causes of Action alleged in, or related to, that certain Summons with Notice filed in the Supreme Court of the State of New York, New York County, Index Number: 650626/2023, which shall be deemed released with prejudice by the Settlement Releasing Parties, in their capacity as such, and withdrawn upon the occurrence of the Effective Date. Notwithstanding the foregoing, (a) to the extent the largest Holder of Secured Exchangeable Notes Claims in the Akin Ad Hoc Group as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Secured Exchangeable Notes Claim, a Settlement Group Releasing Party that is also a Holder of a Secured Exchangeable Notes Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Secured Exchangeable Notes Claim, (b) to the extent a Holder or group of Holders holding at least 25% of the amount of B-3 Term Loan Claims as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a B-3 Term Loan Claim, a Settlement Group Releasing Party that is also a Holder of a B-3 Term Loan Claim as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such B-3 Term Loan Claim, and (c) to the extent a Holder or group of Holders holding at least 50% of the amount of Legacy Term Loan Claims or Legacy Notes Claims, as applicable, in the aggregate as of the Petition Date commences a lawsuit against any Entity that is not otherwise released under the Plan on account of, or related to, a Legacy Term Loan Claim or a Legacy Notes Claim, as applicable, a Settlement Group Releasing Party that is also a Holder of Legacy Term Loan Claims or Legacy Notes Claim, as applicable, as of the Petition Date shall be permitted to commence a lawsuit seeking the same relief, solely in its capacity as such with respect to such Legacy Term Loan Claim or Legacy Notes Claim, as applicable; provided, for the avoidance of doubt, no Settlement Group Releasing Party shall bring any claims or Causes of Action against any Entity in respect of any HoldCo Convertible Notes Claims or in respect of any Claims previously owned by such Settlement Group Releasing Party prior to the Petition Date but not owned as of the Petition Date. Notwithstanding anything in this Settlement Party Release, any member of the PW Ad Hoc Group as of the Petition Date shall only be a Settlement Group Releasing Party with respect to its HoldCo Convertible Notes Claims.**

Definitions Related to the Debtor Release and the Third-Party Release and the Settlement Group Release:

UNDER THE PLAN, "***RELATED PARTY***" MEANS EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, COMMITTEE MEMBERS, MEMBERS OF ANY GOVERNING BODY, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS (INCLUDING ANY OTHER ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS AND ANY SUCH PERSON'S OR ENTITY'S RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES.

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH SETTLEMENT GROUP RELEASING PARTY; (E) RINGCENTRAL; (F) EACH AGENT/TRUSTEE; (G) EACH DIP COMMITMENT PARTY AND EACH DIP LENDER; (H) EACH RO BACKSTOP PARTY; (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (C) THROUGH THIS CLAUSE (J); (K)

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

EACH DEBTOR RELATED PARTY OF EACH ENTITY IN CLAUSE (A) AND (B); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OR ARTICLE VIII.E OF THE PLAN; (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OR ARTICLE VIII.E OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION; OR (Z) WAS THE BENEFICIARY OF THE REPURCHASE, REDEMPTION, OR OTHER SATISFACTION OF HOLDCO CONVERTIBLE NOTES PRIOR TO THE PETITION DATE.

UNDER THE PLAN, "***RELEASING PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS;  (B) THE REORGANIZED DEBTORS;  (C) EACH COMPANY PARTY;  (D) RINGCENTRAL;  (E) EACH DIP LENDER;  (F) EACH AGENT/TRUSTEE;  (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (K); AND (M) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (L) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  NOTWITHSTANDING THE FOREGOING, ANY ENTITY THAT IS A SETTLEMENT GROUP RELEASING PARTY SHALL NOT BE A RELEASING PARTY UNLESS SUCH ENTITY IS A MEMBER OF THE PW AD HOC GROUP AS OF THE PETITION DATE, IN WHICH CASE SUCH ENTITY SHALL NOT BE A RELEASING PARTY SOLELY WITH RESPECT TO ANY HOLDCO CONVERTIBLE NOTES CLAIMS.

UNDER THE PLAN, "***SETTLEMENT GROUP RELEASING PARTY***" MEANS A HOLDER OF HOLDCO CONVERTIBLE NOTES CLAIMS, SOLELY IN ITS CAPACITY AS SUCH, THAT DOES NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.E OF THE PLAN; OR (Y) OBJECT TO, CHALLENGE, OR IMPEDE IN ANY MANNER, FORMALLY OR INFORMALLY, ANY ACTION TAKEN BY THE DEBTORS OR ANY CONSENTING STAKEHOLDERS IN THE CHAPTER 11 CASES, THE TRANSACTIONS CONTEMPLATED BY THE RSA, THE PLAN, THE RESTRUCTURING TRANSACTIONS OR THE ENTRY OF ANY ORDER CONSISTENT WITH, OR CONTEMPLATED BY, THE TERMS OF THE RSA.

### IMPORTANT INFORMATION REGARDING THE RELEASES:

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND, SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT, ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OR THE SETTLEMENT GROUP RELEASE CONTAINED IN ARTICLE VIII.E OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLES VIII.D OR VIII.E OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF:  (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES; <u>AND</u> (II) YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT

[CUSIPs / ISINs as indicated on Exhibit A attached hereto]

AGREEMENT.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLES VIII.D OR VIII.E OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

☐    **By checking this box, the Holder of the Claims identified in Item 1 elects to opt out of the Third-Party Release or the Settlement Group Release, as applicable.**

Article VIII.F of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Renegotiated RingCentral Contracts, the Governance Documents, the RO Backstop Agreement, the RO Documents, the DIP Facilities, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action (including, for the avoidance of doubt, any Claim or Cause of Action with respect to (i) the repurchase, redemption, or other satisfaction by any Company Party of HoldCo Convertible Notes previously held by such Released Party prior to the Petition Date or (ii) the marketing, arrangement, syndication, issuance, or other action or inaction with respect to the incurrence of the B-3 Term Loans or the Secured Exchangeable Notes) in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Article VIII.G of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, Article VIII.E, and Article VIII.F of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

**Item 3.  Certification of Claims in the Voting Class Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Claims identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Claims in the Voting Class identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Claims identified in the following table.  **To be clear, if any Beneficial Holder holds Claims in a Voting Class through one or more Nominees, such Beneficial Holder must identify all Claims in the Voting Class held through its own name and/or each Nominee in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

ONLY COMPLETE ITEM 3 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF THE SAME VOTING CLASS

| Account Number of Other Claims Voted in the Voting Class | Name of Owner[6] | Principal Amount of Other Claims Voted in the Voting Class | CUSIP of Other Claims Voted in the Voting Class |
|---|---|---|---|
| **Class 4 – First Lien Claims** | | | |
| | | | |
| | | | |
| | | | |
| | | | |

---

[6]   **Insert your name if the Claims in the respective Voting Class are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank and their DTC Participant Number.**

10

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Item 4. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.    as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of the Claims in the Voting Class set forth in Item 1;

b.    the Beneficial Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.    the Beneficial Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.    the Beneficial Holder has cast the same vote with respect to all of the Beneficial Holder's Claims in the Voting Class;

e.    the Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent;

f.    the Beneficial Holder understands and acknowledges that the Claims and Noticing Agent may verify the amount of the Claims in the Voting Class set forth in Item 1 held by the Beneficial Holder as of the Voting Record Date with any Nominee through which the Beneficial Holder holds its the Claims in the Voting Class set forth in Item 1 and by returning an executed Ballot the Beneficial Holder directs any such Nominee to provide any information or comply with any actions requested by the Claims and Noticing Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Claims and Noticing Agent, the amount shown on the records of the Nominee, if applicable, or the Company's records shall control; and

g.    the Beneficial Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Holder.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Item 5.  Beneficial Holder Information and Signature.**

Name of Beneficial Holder:_____

(*print or type*)

DTC Participant Number:_____

Signature:_____

Name of Signatory:_____

(*if other than Beneficial Holder*)

Title: _____

Address:_____

_____

_____

Date Completed:_____

Email Address:_____

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON MARCH 17, 2023.**

**IF YOU RECEIVED A PRE-VALIDATED BALLOT AND A RETURN ENVELOPE ADDRESSED TO THE CLAIMS AND NOTICING AGENT (KURTZMAN CARSON CONSULTANTS LLC), PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE THE VOTING DEADLINE.**

**IF YOU HAVE ANY QUESTIONS ABOUT THIS BALLOT OR THE PLAN SOLICITATION OR YOU NEED ADDITIONAL VOTING MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT HTTP://WWW.KCCLLC.NET/AVAYA/INQUIRY AND REFERENCE "AVAYA" IN THE SUBJECT LINE OR CALL 877-709-4751 (USA OR CANADA) OR 424-236-7231 (INTERNATIONAL).  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES, PLEASE CONTACT YOUR NOMINEE.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

## VOTING INSTRUCTIONS

1.  As described in the Disclosure Statement, the Company is soliciting the votes of Beneficial Holders of Class 4 Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and the Disclosure Statement are included in the Solicitation Package you received with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2.  The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.  To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) **sign and return the Ballot in accordance with the instructions received, so that this Ballot (if "pre-validated" by your Nominee) or a Master Ballot cast on your behalf is actually received by the Claims and Noticing Agent by the Voting Deadline**. If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Claims and Noticing Agent so that it is underlined actually received by the Voting Deadline. Your Nominee is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

    **The Claims and Noticing Agent will not accept beneficial ballots by facsimile or other electronic means (other than by email at avayaballots@kccllc.com for pre-validated beneficial ballots and Master Ballots only).** If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot to your Nominee, including all certifications.

4.  The time by which a Ballot or Master Ballot including your vote is **actually received** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. **The Voting Deadline is March 17, 2023, at 4:00 p.m., prevailing Central Time**.

5.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Company determines otherwise or as permitted by applicable law or court order. In all cases, Beneficial Holders should allow sufficient time to ensure timely delivery. No Ballot should be sent to the Company or the Company's financial or legal advisors. A Ballot will not be counted unless received by the Claims and Noticing Agent.

6.  The Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent.

7.  If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8.  If a Beneficial Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

9.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Company will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10.     The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11.     Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12.     You must vote your entire Claim in the Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan as to the Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

13.     Any Ballot that is properly completed, executed, and timely returned to the Company that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14.     The following Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15.     If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims or Interests indicated on that Ballot. Please complete and return each Ballot you receive.

16.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

———————————————————

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Claims and Noticing Agent at <u>http://www.kccllc.net/avaya/inquiry</u> OR call 877-709-4751 (USA Or Canada) OR 424-236-7231 (International).**

<u>**PLEASE SUBMIT YOUR BALLOT PROMPTLY**</u>

14

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Exhibit A**

***Please check one box below to indicate the CUSIP/ISIN to which this Beneficial Ballot pertains.  If you check more than one box below you risk having your vote invalidated.***

|  | BOND DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| | **Class 4 (First Lien Claims)** | |
| ☐ | 6.125% Senior First Lien Notes | CUSIP U05258 AF 2 / ISIN USU05258AF20 |
| ☐ | 6.125% Senior First Lien Notes | CUSIP 053499 AL 3 / ISIN US053499AL36 |
| ☐ | 8.00% Exchangeable Senior Secured Notes | CUSIP 053499 AN 9 / ISIN US053499AN91 |

## **Exhibit 5**

**Rights Offering Procedures**

## AVAYA RIGHTS OFFERING PROCEDURES

Pursuant to the ***Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*** (as such plan of reorganization may be amended or modified from time to time, the "Plan") of Avaya Inc. and its affiliated debtors (the "Debtors"), each Holder[1] of an Allowed First Lien Claim (exclusive of the B-3 Escrow Claims) is being granted a subscription right (each, a "Right") to fund Exit Term Loans (such Exit Term Loans, the "Rights Offering Term Loans") pursuant to the Plan, as more fully described in these Rights Offering Procedures.  Each Holder of an Allowed First Lien Claim (exclusive of the B-3 Escrow Claims) that exercises its Rights to fund Rights Offering Term Loans will also receive its Pro Rata Share (as defined below) of a number of New Equity Interests (the "New RO Common Stock") equal to the number of New Equity Interests that would have been issued if the Rights Offering (as defined below) were an offering of New Equity Interests of Reorganized Avaya (the "Company") in an amount equal to the Rights Offering Amount (as defined below) at a 37.5% discount to an implied equity value of $538.8125 million after giving effect to the Rights Offering (the "New RO Common Stock"),  as more fully described in these Rights Offering Procedures.  In addition, each Holder of an Allowed First Lien Claim (exclusive of the B-3 Escrow Claims) that validly exercises its Rights to fund Rights Offering Term Loans will receive their RO Participant Takeback Term Loan Allocation[2], while each Holder of an Allowed First Lien Claim (exclusive of the B-3 Escrow Claims) that does not exercise its Rights to fund Rights Offering Term Loans will receive their RO Non-Participant Takeback Term Loan Allocation[3] (and will not receive any New RO Common Stock).

The Allowed First Lien Claims are claims arising under or based upon (1) the B-1 Term Loans, the B-2 Term Loans and the B-3 Term Loans (collectively, the "Existing 1L Term Loans") and (2) the Legacy Notes and the Secured Exchangeable Notes (collectively, the "Existing 1L Notes").

The offering of $150.0 million (the "Rights Offering Amount") of Rights Offering Term Loans is referred to as the "Rights Offering."

The offer of the New RO Common Stock before the Petition Date shall be exempt from the registration requirements of the Securities Act of 1933, as amended (the "Securities Act")

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

[2] "RO Participant Takeback Term Loan Allocation" for a holder of First Lien Claims (exclusive of the B-3 Escrow Claims) who elects to participate in the Rights Offering means a dollar principal amount of Exit Term Loans equal to the result of the following formula: (a) a fraction (expressed as a percentage), the numerator of which is the First Lien Claims (exclusive of any B-3 Escrow Claims) held by such holder and the denominator of which is all First Lien Claims (exclusive of the B-3 Escrow Claims) *multiplied by* (b) 150 million.

[3] "RO Non-Participant Takeback Term Loan Allocation" for a holder of First Lien Claims (exclusive of the B-3 Escrow Claims) who elects not to participate in the Rights Offering means a dollar principal amount of Exit Term Loans equal to the result of the following formula: (a) a fraction (expressed as a percentage), the numerator of which is the First Lien Claims (exclusive of any B-3 Escrow Claims) held by such holder and the denominator of which is all First Lien Claims (exclusive of the B-3 Escrow Claims) *multiplied by* (b) 300 million.

in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and in reliance on Regulation S under the Securities Act.

The offering, issuance and distribution of the New RO Common Stock under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") to the maximum extent permitted by law, or, if section 1145(a) of the Bankruptcy Code is not available, then the New RO Common Stock is being offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the New RO Common Stock is issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such New RO Common Stock may be resold by the holders thereof without registration unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.

The RO Backstop Shares and Premium Shares (each, as defined below) are being offered, issued and distributed to certain Backstop Parties without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Resales of New RO Common Stock issued to "underwriters," and resales of RO Backstop Shares and Premium Shares will require registration under the Securities Act or an exemption from registration under the Securities Act.  Resale restrictions are discussed in more detail in Article XII of the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, the "Disclosure Statement"), entitled "Certain Securities Law Matters."

None of the Rights distributed in connection with these Rights Offering Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.

To exercise the Rights with respect to the Existing 1L Term Loans, each Holder of the underlying Existing 1L Term Loans as reflected on the registers maintained by the administrative agent of the Existing 1L Term Loans on the date of any such exercise of Rights (a "Lender") must timely and properly execute and deliver its duly completed and executed Lender Subscription Form (as defined below) (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to KCC LLC (the "Subscription Agent") in advance of the Subscription Expiration Deadline (as defined below).

To exercise the Rights with respect to the Existing 1L Notes, each Holder of the underlying Existing 1L Notes as of the date of any such exercise of Rights (a "Noteholder") must (i) return its duly completed and executed Noteholder Beneficial Owner Subscription Form (as defined below) (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its bank, broker, intermediary, securities nominee or agent (each, a

"Nominee") (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration Deadline, and (ii) electronically deliver (or cause to be delivered) such Existing 1L Notes to the appropriate contra CUSIP established by The Depository Trust Company ("DTC") for the Rights Offering through the Automated Tender Offer Program ("ATOP") of DTC, so that they are received by the Subscription Expiration Deadline.

The Rights will not be detachable or otherwise transferable separately from the underlying Existing 1L Term Loans and Existing 1L Notes.  Rather, the Rights, together with the underlying Existing 1L Term Loans and Existing 1L Notes with respect to which such Rights were allocated, will trade together and will be evidenced by the underlying Existing 1L Term Loans and Existing 1L Notes until the Subscription Expiration Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Existing 1L Term Loans and Existing 1L Notes; *provided*, that following the exercise of any Rights, the Holder thereof shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the above, a "Transfer") the Existing 1L Term Loans and Existing 1L Notes corresponding to such Rights unless the Rights Offering is terminated; *provided further*, that Holders of Allowed First Lien Claims shall be permitted to designate affiliates to participate in the Rights Offering and/or to receive the New RO Common Stock without the need to Transfer any Existing 1L Loans or Existing 1L Notes to such affiliate (including any controlled investment affiliates).

The Rights Offering is being conducted by the Company in good faith and in compliance with the Bankruptcy Code. In accordance with section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

The distribution or communication of these Rights Offering Procedures and the issuance of the New Equity Interests in certain jurisdictions may be restricted by law. No action has been taken or will be taken to permit the distribution or communication of these Rights Offering Procedures in any jurisdiction where any action for that purpose may be required.  Accordingly, these Rights Offering Procedures may not be distributed or communicated, and the Rights Offering Term Loans and New Equity Interests may not be subscribed for or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription or issuance would comply with all applicable laws without the need for the Debtors to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws. Further, the Rights Offering has not been approved or disapproved by the U.S. Securities and Exchange Commission or any other state securities commission or any other regulatory or governmental authority, nor have any of the

**foregoing passed upon the accuracy or adequacy of the information presented, and any representation to the contrary is a criminal offense.**

Lenders, Noteholders and Nominees of Noteholders should note the following dates and times relating to the Rights Offering:

| Date | Calendar Date | Event |
|---|---|---|
| Subscription Commencement Date | February 14, 2023 | The commencement date of the Rights Offering (the "**Subscription Commencement Date**"). |
| Subscription Expiration Deadline | 5:00 p.m. (Prevailing Eastern Time) on March 9, 2023 (as may be extended pursuant to the terms herein) | The deadline for Lenders and Noteholders to subscribe for Rights Offering Term Loans, as such deadline may be extended pursuant to the terms herein (the "**Subscription Expiration Deadline**").<br><br>A Lender's duly completed and executed Lender Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be returned to the Subscription Agent on or prior to the Subscription Expiration Deadline. Lenders that participate in the Rights Offering shall be prohibited from Transferring the underlying Existing 1L Term Loans, and the administrative agent of the Existing 1L Term Loans shall be prohibited from effectuating any such requested Transfers unless the Rights Offering is terminated.<br><br>A Noteholder's duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be returned to its Nominee (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration Deadline. The Noteholder must instruct its Nominee to electronically deliver the applicable underlying Existing 1L Notes via ATOP to the appropriate contra CUSIP established by DTC, so that such underlying Existing 1L Notes are actually received by the Subscription Agent on or before the Subscription Expiration Deadline. Existing 1L Notes delivered to the Subscription Agent via ATOP may not thereafter be Transferred unless the Rights Offering is terminated.<br><br>Holders of Allowed First Lien Claims who are not Backstop Parties must deliver the Funding Amount (as defined below) for all Subscribed Term Loans (as defined below) by the Subscription Expiration Deadline.<br><br>Holders of Allowed First Lien Claims who are Backstop Parties must deliver the Funding Amount for all Subscribed Term Loans (if any) and for the applicable |

| | | Backstop Term Loans (as defined below) (if any) no later than the Backstop Funding Deadline (as defined below) to the Subscription Agent or otherwise in accordance with the Backstop Agreement.<br><br>The Subscription Expiration Deadline may be extended by the Debtors, with consent of the Required Consenting Stakeholders and Requisite Commitment Parties (as defined in the Backstop Agreement) (for which email of counsel shall suffice), or as required by law, either before or after the previously scheduled Subscription Expiration Deadline.  In the event that the Debtors extend the Subscription Expiration Deadline, the Debtors shall: (i) post a notice of such extension (the "**Extension Notice**") on the Debtors' restructuring website at **www.kccllc.net/avaya**; (ii) file a copy of the Extension Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) provide a copy of the Extension Notice to counsel to the Akin Ad Hoc Group and the PW Ad Hoc Group, with email notice being sufficient.  The Debtors shall use commercially reasonable efforts to cause such notice to be posted, filed, and delivered in accordance with the foregoing at least five (5) Business Days prior to any previously scheduled Subscription Expiration Deadline. |
| --- | --- | --- |

To Lenders, Noteholders and Nominees of Noteholders:

The Debtors expect to file the Plan and the Disclosure Statement on or about February 14, 2023.  Pursuant to the Plan, each Lender and Noteholder has the right to participate in the Rights Offering in accordance with the terms and conditions of the Plan and these Rights Offering Procedures.

Pursuant to the Plan and these Rights Offering Procedures, each Lender will be allocated Rights to subscribe for and fund Rights Offering Term Loans in an amount equal to its pro rata share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is its First Lien Claims (exclusive of any B-3 Escrow Claims) and the denominator of which is all First Lien Claims (exclusive of the B-3 Escrow Claims), ("**Pro Rata Share**"), and may exercise such Rights by (x) timely and properly executing and delivering its Lender Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), the form of which is attached to these Rights Offering Procedures as Annex 1 (the "**Lender Subscription Form**"), to the Subscription Agent by the Subscription Expiration Deadline, and (y) funding in cash the aggregate funding amount (the "**Funding Amount**"), as calculated in accordance with its Lender Subscription Form in accordance with the instructions provided herein.

Pursuant to the Plan and these Rights Offering Procedures, each Noteholder will be allocated Rights to subscribe for and fund Rights Offering Term Loans in an amount equal to its Pro Rata Share of the Rights Offering Amount, and may exercise such Rights by (x) timely and properly executing and delivering its Noteholder Beneficial Owner Subscription Form (with

accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), the form of which is attached to these Rights Offering Procedures as Annex 2 (the "**Noteholder Beneficial Owner Subscription Form**"), to its Nominee (or as otherwise directed by its Nominee) in sufficient time to allow such Nominee to process and deliver copies of all Noteholder Beneficial Owner Subscription Forms (with accompanying IRS Forms) to the Subscription Agent on or before the Subscription Expiration Deadline, (y) electronically delivering (or causing to be delivered) such Existing 1L Notes through ATOP to the appropriate contra CUSIP established by DTC, so that they are received by the Subscription Expiration Deadline and (z) funding in cash the Funding Amount, as calculated in accordance with its Noteholder Beneficial Owner Subscription Form in accordance with the instructions provided herein.

**As part of the exercise process, following exercise of the Rights, the Existing 1L Term Loans underlying the Rights that are being exercised will be frozen from Transfer, Lenders that participate in the Rights Offering shall be prohibited from Transferring the underlying Existing 1L Term Loans, and the administrative agent of the Existing 1L Term Loans shall be prohibited from effectuating any such requested Transfers unless the Rights Offering is terminated, as described below. As part of the exercise process, following exercise of the Rights, the Existing 1L Notes underlying the Rights that are being exercised will be frozen from Transfer unless the Rights Offering is terminated, as described below.** All Noteholder Beneficial Owner Subscription Forms and/or other instructions required by the Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the applicable underlying Existing 1L Notes through ATOP to the appropriate contra CUSIP established by DTC prior to the Subscription Expiration Deadline. By instructing its Nominee to submit the underlying Existing 1L Notes through ATOP to the appropriate contra CUSIP established by DTC, the Noteholder is (i) authorizing its Nominee to exercise all Rights associated with the amount of Existing 1L Notes as to which the instruction pertains, and (ii) certifying that it understands that, once submitted, the underlying Existing 1L Notes will be frozen from Transfer unless the Rights Offering is terminated. Notwithstanding the above, Lenders and Noteholders shall be permitted to designate affiliates to participate in the Rights Offering and/or to receive the New RO Common Stock without the need to Transfer any Existing 1L Loans or Existing 1L Notes to such affiliate.

Unless the Rights Offering is terminated, on the Effective Date:

(a) the underlying First Lien Claims will be cancelled pursuant to the Plan;

(b) each Lender and Noteholder will receive its applicable share of New Equity Interests distributed pursuant to the Plan;

(c) each Lender and Noteholder that does not subscribe for and fund Rights Offering Term Loans will receive their RO Non-Participant Takeback Term Loan Allocation distributed pursuant to the Plan;

(d) each Lender and Noteholder that validly subscribes for and funds Rights Offering Term Loans, and is not a Backstop Party, will receive:

(i) their RO Participant Takeback Term Loan Allocation distributed pursuant to the Plan;

(ii) an amount of Rights Offering Term Loans equal to such Lender's or Noteholder's Pro Rata Share of the Rights Offering Amount (the "**Subscribed Term Loans**"), as further described in these Rights Offering Procedures; and

(iii) such Lender's or Noteholder's Pro Rata Share of a number of shares of New RO Common Stock equal to the number of New Equity Interests that would have been issued if the Rights Offering were an offering of New Equity Interests in an amount equal to the Rights Offering Amount at a 37.5% discount to an implied equity value of $538.8125 million after giving effect to the Rights Offering;

(e) each Backstop Party will receive:

(i) such Backstop Party's Subscribed Term Loans, as further described in these Rights Offering Procedures;

(ii) in the case of a Backstop Party that validly subscribes for and funds Rights Offering Term Loans, their RO Participant Takeback Term Loan Allocation, and in the case of a Backstop Party that does not subscribe for and fund Rights Offering Term Loans, their RO Non-Participant Takeback Term Loan Allocation, in either case reduced dollar-for-dollar by the amount of Backstop Term Loans that such Backstop Party funds;

(iii) in the case of a Backstop Party that validly subscribes for and funds Rights Offering Term Loans, such Backstop Party's Pro Rata Share of a number of shares of New RO Common Stock equal to the number of New Equity Interests that would have been issued if the Rights Offering were an offering of New Equity Interests in an amount equal to the Rights Offering Amount at a 37.5% discount to an implied equity value of $538.8125 million after giving effect to the Rights Offering;

(iv) a number of additional New Equity Interests (the "**RO Backstop Shares**") in an amount equivalent to the amount of New RO Common Stock that would have been received by a Lender or Noteholder that funded Rights Offering Term Loans in the Rights Offering in an amount equivalent to such amount of Backstop Term Loans actually funded by such Backstop Party; and

(v) its applicable number of Premium Shares in accordance with the Backstop Agreement.

Each Holder of Allowed First Lien Claims that is both a Lender and a Noteholder and wishes to exercise its Rights with respect to both its Existing 1L Term Loans and Existing 1L Notes must follow the respective procedures for both Existing 1L Term Loans and Existing 1L Notes. If a Noteholder holds Existing 1L Notes underlying the Rights that it wishes to exercise through multiple Nominees, it must complete, execute and deliver a separate Noteholder Beneficial Owner Subscription Form with respect to each such Nominee.

**Failure of a Lender to submit its Lender Subscription Form on a timely basis will result in forfeiture of such Lender's Rights, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities. None of the Company, the Subscription Agent or any of the Backstop Parties will have any liability for any such failure.**

**The amount of time necessary for a Nominee to process and deliver the applicable Existing 1L Notes through ATOP may vary. Noteholders are urged to consult with their Nominees to determine the necessary deadline to return their Noteholder Beneficial Owner Subscription Forms to their Nominee (as well as any other steps required by such Nominee, which may vary from Nominee to Nominee). Failure of a Noteholder to submit such Noteholder Beneficial Owner Subscription Form (or other instructions required by the Nominee) on a timely basis will result in forfeiture of such Noteholder's Rights, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities. None of the Company, the Subscription Agent or any of the Backstop Parties will have any liability for any such failure.**

No Lender or Noteholder shall be entitled to participate in the Rights Offering unless cash in an amount equal to the Funding Amount of its Subscribed Term Loans, calculated in accordance with its Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, is received by the Subscription Agent (i) in the case of a Lender or Noteholder that is not a Backstop Party, on or before the Subscription Expiration Deadline and (ii) in the case of a Lender or Noteholder that is a Backstop Party, no later than the Backstop Funding Deadline (together with the Funding Amount for the applicable Backstop Term Loans as set forth in the Funding Notice), or otherwise in accordance with the terms of the Backstop Agreement. If the Rights Offering is terminated for any reason, the Funding Amount previously received by the Subscription Agent will be returned to the applicable Lenders and Noteholders as provided in Section 6 hereof and, with respect to deposited Existing 1L Notes, the deposited Existing 1L Notes will be released by the Subscription Agent. No interest will be paid on any advanced funding of the Funding Amount or on any returned Funding Amount.

Before electing to participate in the Rights Offering, each Lender and Noteholder should review the Disclosure Statement (including the risk factors described in Article IX entitled "Risk Factors") and the Plan, and, in each case, any amendments, supplements or other modifications thereto, in addition to these Rights Offering Procedures and the instructions contained herein and in its Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable. A copy of the Disclosure Statement is available from the Subscription Agent and on the Debtors' restructuring website at www.kccllc.net/avaya.

**In order to participate in the Rights Offering, you must complete all the steps outlined below. If all of the steps outlined below are not completed by the Subscription Expiration Deadline (other than with respect to payments of the Funding Amount by Backstop Parties, which must be received by the Backstop Funding Deadline), you shall be deemed to have forever and irrevocably relinquished and waived your right to participate in the Rights Offering, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

## 1. Participation in the Rights Offering; Description of Backstop

Lenders and Noteholders have the right, but not the obligation, to participate in the Rights Offering by subscribing for and funding Rights Offering Term Loans.

Subject to the terms and conditions set forth in the Plan and these Rights Offering Procedures, each Lender and Noteholder is entitled to subscribe for either all or none of its Pro Rata Share of Rights Offering Term Loans. Subject to the terms and conditions as set forth in the Plan, these Rights Offering Procedures and the Backstop Agreement, each Backstop Party has certain obligations with respect to the funding of Backstop Term Loans. Each Lender or Noteholder that exercises its Rights to fund Rights Offering Term Loans will also receive its Pro Rata Share of the New RO Common Stock.

There will be no over-subscription privilege in the Rights Offering. Any amount of Rights Offering Term Loans that is unsubscribed by the Lenders and Noteholders entitled thereto (the "**Backstop Term Loans**") will be funded by the applicable Backstop Parties as Backstop Term Loans in accordance with the Backstop Agreement. Subject to the terms and conditions of the Backstop Agreement, each Backstop Party has agreed to fund (on a several and not joint basis) a certain principal amount of Rights Offering Term Loans and/or Backstop Term Loans. Each Backstop Party will receive RO Backstop Shares in an amount equivalent to the amount of New RO Common Stock that would have been received by a Lender or Noteholder that funded Rights Offering Term Loans in the Rights Offering in an amount equivalent to such amount of Backstop Term Loans actually funded by such Backstop Party. As consideration for their undertakings, the Backstop Parties will receive the premium set forth in Section 3.1 of the Backstop Agreement (the "**Premium Shares**").

The offering of the New RO Common Stock before the Petition Date shall be exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and in reliance on Regulation S under the Securities Act.

The offering, issuance and distribution of the New RO Common Stock under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code to the maximum extent permitted by law, or, if section 1145(a) is not available, then the New RO Common Stock is being offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the New RO Common Stock is issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such New RO Common Stock may be resold by the holders thereof without registration unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.

The RO Backstop Shares and Premium Shares are being offered, issued and distributed to certain Backstop Parties without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available

exemption. Resales of New RO Common Stock issued to "underwriters," and resales of RO Backstop Shares and Premium Shares will require registration under the Securities Act or an exemption from registration under the Securities Act.  Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement, entitled "Certain Securities Law Matters."

None of the Rights distributed in connection with these Rights Offering Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.

**SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN AND THESE RIGHTS OFFERING PROCEDURES, ALL SUBSCRIPTIONS SET FORTH IN EACH LENDER SUBSCRIPTION FORM AND NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM ARE IRREVOCABLE AND WITHDRAWALS WILL NOT BE PERMITTED.[4]**

**2.     Subscription Period**

The Rights Offering will commence on the Subscription Commencement Date and will expire on the Subscription Expiration Deadline (as such deadline may be extended pursuant to the terms set forth herein).  Each Lender or Noteholder intending to fund Rights Offering Term Loans in the Rights Offering must affirmatively elect to exercise its Rights in the manner set forth in the Rights Offering Instructions (consistent herewith, including as described in Section 4 hereof) on or prior to the Subscription Expiration Deadline and must fund the Funding Amount for any exercised Rights by the applicable deadline.

Any exercise (including payment by any Lender or Noteholder that is not a Backstop Party) of Rights after the Subscription Expiration Deadline will not be allowed and any purported exercise received by the Subscription Agent after the Subscription Expiration Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.

The Subscription Expiration Deadline may be extended by the Debtors with the consent of the Required Consenting Stakeholders and Requisite Commitment Parties (for which email of counsel shall suffice), or as required by law.  In the event that the Debtors extend the Subscription Expiration Deadline, the Debtors shall: (i) post the Extension Notice on the Debtors' restructuring website at www.kccllc.net/avaya; (ii) file a copy of the Extension Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) provide a copy of the Extension Notice to counsel to the Akin Ad Hoc Group and the PW Ad Hoc Group, with email notice being sufficient.  The Debtors shall use commercially reasonable efforts to cause the Extension Notice to be posted, filed, and delivered in accordance with the foregoing at least five (5) Business Days prior to any previously scheduled Subscription Expiration Deadline.

---

[4] Notwithstanding that subscriptions are irrevocable, in the event Noteholder positions are erroneously delivered to the wrong contra CUSIPs at DTC via ATOP, the Subscription Agent will use best efforts to cure such defects, subject to the approval of DTC.

**3.     Delivery of the Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form**

Each Lender and Noteholder may exercise either all or none of such Lender's or Noteholder's Rights, but subject to the terms and conditions of the Plan and these Rights Offering Procedures, the exercise of any Rights will be irrevocable.  In order to facilitate the exercise of the Rights, beginning on the Subscription Commencement Date, the Subscription Agent will furnish, or cause to be furnished, to each Lender the Lender Subscription Form and to each Noteholder or Noteholder's Nominee, as applicable, the Noteholder Beneficial Owner Subscription Form, together with appropriate instructions for the proper completion and due execution by, and timely delivery by or on behalf of, the Lender or Noteholder of the Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, and the payment of the Funding Amount, as calculated in accordance with such Lender's or Noteholder's Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable.  To effectuate delivery of the aforementioned documents, the Subscription Agent is authorized to rely on (i) information or registers provided by the administrative agent of the Existing 1L Term Loans and (ii) securities position reports requested and obtained from DTC for purposes of distribution.  In addition, appropriate service of the aforementioned documents will be deemed completed by the Subscription Agent upon delivery of such documents to DTC and the applicable Nominees (or such Nominees' agents); *provided*, *however*, that the Subscription Agent will instruct such Nominees (or their agents) to immediately distribute such documents to the underlying Noteholders, as applicable, in accordance with their customary procedures.

**4.     Exercise of Rights**

(a)     More specifically, in order to validly exercise Rights, each Lender or Noteholder that is not a Backstop Party must:

(i)     with respect to Noteholders, instruct its Nominee(s) to electronically deliver, the Existing 1L Notes underlying the Rights that are being exercised through ATOP, such that they are received by the Subscription Expiration Deadline;

(ii)     for Noteholders who wish to designate another person to receive their New RO Common Stock, submit the Existing 1L Notes as instructed by the Subscription Agent such that they are received by the Subscription Expiration Deadline;

(iii)     return a duly completed and executed Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable (each with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to (a) the Subscription Agent, if a Lender, or (b) to a Noteholder's Nominee (or as otherwise directed by its Nominee), if a Noteholder, so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration Deadline; and

(iv)     no later than the Subscription Expiration Deadline, fund the Funding Amount for all Subscribed Term Loans, to the Subscription Agent by wire transfer of immediately available funds in accordance with the instructions included in Item 3

of the Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable.

(b)        In order to validly exercise Rights, each Lender or Noteholder that is a Backstop Party must:

(i)        with respect to Noteholders, instruct its Nominees to electronically deliver the Existing 1L Notes underlying the Rights that are being exercised through ATOP, such that they are received by the Subscription Expiration Deadline;

(ii)       for Noteholders who wish to designate another person to receive their New RO Common Stock, submit the Existing 1L Notes as instructed by the Subscription Agent such that they are received by the Subscription Expiration Deadline;

(iii)      (a) return a duly completed and executed Lender Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to the Subscription Agent, if a Lender, and/or (b) return a duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to a Noteholder's Nominee (or as otherwise directed by its Nominee), if a Noteholder, so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration Deadline;

(iv)      for Noteholders, ensure that the Backstop Party Addendum (as defined below) is provided to their Nominee so that the Nominee will receive confirmation that payment does not have to be made prior to the Subscription Expiration Deadline; and

(v)       no later than the deadline specified in the Funding Notice (such deadline, the "**Backstop Funding Deadline**"), pay the Funding Amount for all Subscribed Term Loans and for the applicable Backstop Term Loans to the Subscription Agent by wire transfer of immediately available funds in accordance with the instructions included in the Funding Notice.

(c)        In the event that funds received by the Subscription Agent in payment for a subscribing Lender's Subscribed Term Loans are less than the aggregate Funding Amount for the Subscribed Term Loans of such Lender, the subscription(s) represented by such subscribing Lender's Lender Subscription Form will not be recognized, and the associated Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.

(d)        In the event that funds received by the Subscription Agent in payment for a subscribing Noteholder's Subscribed Term Loans are less than the aggregate Funding Amount for the Subscribed Term Loans of such Noteholder, the subscription represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.  For the avoidance of doubt, if the principal amount(s) of underlying Existing 1L Notes held by a Noteholder that is

13

electronically delivered through ATOP is less than all of such Noteholder's Existing 1L Notes, the subscription represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.

(e)     The payments of cash made in accordance with the Rights Offering will be deposited and held by the Subscription Agent in a segregated bank account established by the Subscription Agent for this purpose, until disbursed to the Company in connection with the settlement of the Rights Offering on the Effective Date or returned to subscribing Lenders and Noteholders as provided in Section 6.  The Subscription Agent may not use such funds for any other purpose prior to the Effective Date and may not encumber or permit such funds to be encumbered with any lien or similar encumbrance.  Such funds held in the segregated bank account or otherwise by the Subscription Agent shall not be deemed part of the Debtors' bankruptcy estate.

Special note for Backstop Parties.  Backstop Parties must complete the Backstop Party Addendum attached to the Lender Subscription Form or Noteholder Beneficial Owner Subscription Form, as applicable (the "**Backstop Party Addendum**") and submit the Backstop Party Addendum to the Subscription Agent. Backstop Parties that are Lenders must complete and return the Backstop Party Addendum to the Subscription Agent in accordance with the directions included in the Backstop Party Addendum. Backstop Parties that are Noteholders must arrange for the Backstop Party Addendum to (a) be completed and returned to the Subscription Agent in accordance with the directions included in the Backstop Party Addendum and (b) be provided to their Nominee so that the Nominee will be informed that funding from such Backstop Party does not have to be made prior to the Subscription Expiration Deadline.  Each Backstop Party must provide its payment by the deadline set forth in the Funding Notice (as defined in the Backstop Agreement) to the extent that such payment has not already been made to the Subscription Agent, or otherwise in accordance with the terms of the Backstop Agreement.

The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth in these Rights Offering Procedures or any Subscription Form.

**5.     Transfer Restriction; Revocation**

(a)     The Rights will not be detachable or otherwise transferable separately from the Existing 1L Term Loans and Existing 1L Notes.  If any Rights are Transferred by a Lender or Noteholder in contravention of the foregoing, the Rights will be cancelled, and neither such Lender or Noteholder nor the purported transferee will receive any Rights Offering Term Loans otherwise purchasable on account of such Transferred Rights.

(b)     Lenders and Noteholders shall be permitted to designate affiliates to participate in the Rights Offering and/or to receive the New RO Common Stock without the need to Transfer any Existing 1L Loans or Existing 1L Notes to such affiliate.

(c)     The Rights, together with the underlying Existing 1L Term Loans or Existing 1L Notes with respect to which such Rights were allocated, will trade together as a unit, subject to

14

such limitations, if any, that would be applicable to the transferability of the underlying Existing 1L Term Loans or Existing 1L Notes.

(d)     Once a Lender or Noteholder has properly exercised its Rights, subject to the terms and conditions contained in these Rights Offering Procedures (and the Backstop Agreement in the case of any Backstop Party), such exercise will be irrevocable.  Moreover, following the exercise of any Rights, the Holder thereof shall be prohibited from Transferring or assigning the Existing 1L Term Loans and Existing 1L Notes, as applicable, corresponding to such Rights unless the Rights Offering is terminated.

## 6.     Termination/Return of Payment

Unless the Effective Date has occurred, the Rights Offering will be deemed automatically terminated without any action of any party upon the earlier of (i) revocation of the Plan or rejection of the Plan by all classes entitled to vote, (ii) termination of the RSA in accordance with its terms, (iii) termination of the Backstop Agreement in accordance with its terms, and (iv) May 15, 2023, if the closing of the Rights Offering has not occurred on or prior to that date, which (A) may be extended by the Debtors with the consent of the Required Consenting Stakeholders and Requisite Commitment Parties (for which email of counsel shall suffice) and (B) shall be automatically deemed extended if Milestone (k) in the Restructuring Term Sheet is extended in accordance with the RSA by the number of days by which Milestone (k) is extended; provided that no extension under this clause (B) may be for longer than 30 days in total after May 15, 2023.  If the Rights Offering is terminated, any cash paid to the Subscription Agent will be returned, without interest, and all deposited Existing 1L Notes shall be released by the Subscription Agent, to the applicable Noteholder as soon as reasonably practicable thereafter, but in any event within six (6) Business Days after the date on which the Rights Offering is terminated.

## 7.     Settlement of the Rights Offering and Distribution of the Subscribed Term Loans and New RO Common Stock

The settlement of the Rights Offering is conditioned on confirmation of the Plan by the Bankruptcy Court, compliance by the Debtors with these Rights Offering Procedures, satisfaction of the conditions precedent set forth in the Backstop Agreement and the simultaneous occurrence of the Effective Date.

The Debtors intend that the Rights Offering Term Loans and Backstop Term Loans will be reflected on the register of the Exit Term Loans maintained by the administrative agent for the Exit Term Loans.

The Debtors intend that (i) the New RO Common Stock will be issued in book-entry form in accordance with the practices and procedures of DTC, and that DTC, or its Nominee, will be the holder of record of such New RO Common Stock, and (ii) the RO Backstop Shares and Premium Shares will be issued on the books of the Company's transfer agent unless the RO Backstop Shares and Premium Shares may be issued in book-entry form in accordance with the practices and procedures of DTC.  For subscribing Noteholders, the Company will either (i) cause the New RO Common Stock to be credited to the accounts at DTC through which the respective Noteholders or Nominees, as applicable, held the Existing 1L Notes underlying the applicable

Allowed First Lien Claims (as evidenced by the Noteholder's ATOP submission), and the Nominees will arrange for the credit of the New RO Common Stock to the individual accounts of the applicable Noteholders or (ii) deliver the New RO Common Stock to accounts of persons designated by the subscribing Noteholders at DTC via DWAC deposits. For subscribing Lenders, the Subscription Agent will obtain delivery instructions directly from the Lenders that participate in the Rights Offering and the Company will cause the New RO Common Stock to be credited to the accounts of such Lenders at DTC. The Company will cause RO Backstop Shares and Premium Shares to be issued on the books and records of the Company's transfer agent unless the RO Backstop Shares and Premium Shares may be issued in book-entry form in accordance with the practices and procedures of DTC.

Lenders who comply with their obligations under these procedures will receive their New RO Common Stock through a *Deposit or Withdrawal at Custodian* ("**DWAC**") deposit to a bank or broker that is a participant in the DTC system (a "**DTC Participant**"). Lenders should be aware that it will be necessary to have an account with a DTC Participant in order to receive the New RO Common Stock.

If, for any reason, the New RO Common Stock to be issued in book-entry form in accordance with the practices and procedures of DTC cannot be issued in such form, then such New RO Common Stock will be issued and registered in the name of the subscribing Lenders and Noteholders on the books and records of the Company's transfer agent, subject to the terms of the Plan and applicable law, including compliance with section 1145 of the Bankruptcy Code. After the initial issuance of the New RO Common Stock, however, Lenders and Noteholders may freely transfer such New RO Common Stock in accordance with the procedures of the Company's transfer agent subject to applicable securities laws and provisions of the Governance Documents. For the avoidance of doubt, the RO Backstop Shares and Premium Shares are being issued pursuant to Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption, and such shares will bear a legend indicating that the securities may not be sold or otherwise transferred unless such securities are registered with the SEC pursuant to the Securities Act and comply with any applicable state or local law requiring registration of securities, or such sale or transfer is exempt from registration requirements of the Securities Act and any applicable state or local law.

**8.      No Fractional New RO Common Stock**

No fractional Rights or shares of New RO Common Stock, RO Backstop Shares, or Premium Shares will be issued in connection with the Rights Offering.  All New RO Common Stock, RO Backstop Shares, and Premium Share allocations will be calculated and rounded down to the nearest whole share.  No compensation shall be paid, whether in cash or otherwise, in respect of any rounded-down amounts.

**9.      Bulk Tenders**

With respect to subscribing Noteholders, Nominees must submit instructions on account of each Noteholder separately.  "Bulk Tenders" via ATOP are not permitted and will be rejected.

10.     **Validity of Exercise of Rights**

All questions concerning the timeliness, viability, form, and eligibility of any exercise of Rights will be determined in good faith by the Debtors in consultation with the Required Consenting Stakeholders and Requisite Commitment Parties and if necessary, subject to a final and binding determination by the Bankruptcy Court.  The Debtors, with the consent of the Required Consenting Stakeholders and Requisite Commitment Parties (for which email of counsel shall suffice) or pursuant to the terms of the Backstop Agreement, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such time as they may determine in good faith, or reject the purported exercise of any Rights.  Lender Subscription Forms and Noteholder Beneficial Owner Subscription Forms will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in good faith and with the consent of the Required Consenting Stakeholders and Requisite Commitment Parties (for which email of counsel shall suffice).  In addition, the Debtors, with the consent of the Required Consenting Stakeholders and Requisite Commitment Parties (for which email of counsel shall suffice) or pursuant to the terms of the Backstop Agreement, may permit any such defect or irregularity to be cured within such time as they may determine in good faith to be appropriate.

For the avoidance of doubt and notwithstanding the above, the Debtor and its agents are not required to inform parties of any defect or irregularity with their submission of documents or payments and may reject such submissions without previously notifying the party prior to such rejection other than as required pursuant to the terms of the Backstop Agreement.  Additionally, each such irregularity or defect if reviewed, will be done so on an individual submission basis.

11.      **Minimum Denominations**

There is no minimum principal amount of Existing 1L Term Loans or Existing 1L Notes with respect to which Rights may be exercised.

12.     **DTC**

All of the Existing 1L Notes are held in book-entry form in accordance with the practices and procedures of DTC. The Debtors intend to comply with the practices and procedures of DTC for the purpose of conducting the Rights Offering, and, subject to compliance with Section 13 hereof, these Rights Offering Procedures will be deemed appropriately modified to achieve such compliance.

13.     **Modification of Procedures**

The Debtors reserve the right, subject to the terms of the Backstop Agreement and with the consent of the Required Consenting Stakeholders and Requisite Commitment Parties  (for which email of counsel shall suffice), to modify these Rights Offering Procedures or adopt additional procedures consistent with the provisions of these Rights Offering Procedures to effectuate the Rights Offering and to issue the Subscribed Term Loans; *provided, however*, that the Debtors shall provide prompt written notice (the "**Modification Notice**") to the Lenders and Noteholders of any material modification to these Rights Offering Procedures made after the Subscription Commencement Date by: (i) posting the Modification Notice on the Debtors' restructuring website

at www.kccllc.net/avaya; (ii) filing a copy of the Modification Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) providing a copy of the Modification Notice to counsel the Akin Ad Hoc Group and the PW Ad Hoc Group, with email notice being sufficient.  Subject to the terms of the Backstop Agreement and the RSA, the Debtors, with the consent of the Required Consenting Stakeholders and Requisite Commitment Parties (for which email of counsel shall suffice), may execute and enter into agreements and take further action that the Debtors determine in good faith are necessary and appropriate to effect and implement the Rights Offering and the issuance of the Subscribed Term Loans, New RO Common Stock, RO Backstop Shares and Premium Shares.

**14.     Inquiries and Transmittal of Documents; Subscription Agent**

The Rights Offering Instructions should be carefully read and strictly followed.

Questions relating to the Rights Offering should be directed to the Subscription Agent at the following phone number or email address:  877-499-4509 (domestic toll-free) or 917-281-4800 (for international calls) or AvayaBallots@kccllc.com.  To obtain copies of the documents, please visit www.kccllc.net/avaya.

The risk of non-delivery of all documents and payments to the Subscription Agent and any Nominee is on the Lender or Noteholder electing to exercise its Rights and not the Debtors or the Subscription Agent.

Lenders and Nominees (or Noteholders that are instructed by their Nominees to return the Noteholder Beneficial Owner Subscription Form directly to the Subscription Agent) must return the Lender Subscription Form and/or the Noteholder Beneficial Owner Subscription Form, as applicable, and the appropriate IRS tax form by no later than the Subscription Expiration Deadline to the following:

Avaya Rights Offering Subscription
c/o KCC
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
AvayaBallots@kccllc.com

All documents relating to the Rights Offering are available from the Subscription Agent. In addition, these documents, together with all filing made with the Court by the Debtors, are available free of charge from the Debtors' restructuring website at www.kccllc.net/avaya.

**Only choose <u>one</u> method of return.  If you choose to return the applicable documents via email, do not follow up with hard copies.**

15.     **Backstop Agreement**

The Debtors are party to that certain Backstop Agreement (the "**Backstop Agreement**") dated February 14, 2023 with each Party listed as a "Commitment Party" on Schedule 1 thereto (the "**Backstop Parties**").  In the event of any conflict between these Rights Offering Procedures and the terms of the Backstop Agreement, the terms of the Backstop Agreement will control.

## Exhibit 6

**Lender Subscription Form**

**LENDER SUBSCRIPTION FORM**
**FOR RIGHTS OFFERING**

**FOR USE BY HOLDERS OF**
**EXISTING 1L TERM LOANS**

**IN CONNECTION WITH THE DEBTORS'**
**DISCLOSURE STATEMENT DATED FEBRUARY 14, 2023**

---

**SUBSCRIPTION EXPIRATION DEADLINE**

The Subscription Expiration Deadline is 5:00 p.m. (Prevailing Eastern Time) on March 9, 2023, unless otherwise extended pursuant to the terms of the Rights Offering Procedures (the "Procedures"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Procedures.

To exercise the Rights with respect to the Existing 1L Term Loans, each Holder of the underlying Existing 1L Term Loans as reflected on the registers maintained by the administrative agent of the Existing 1L Term Loans on the date of any such exercise of Rights (a "Lender") must timely and properly execute and deliver its duly completed and executed Lender Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to KCC LLC (the "Subscription Agent") in advance of the Subscription Expiration Deadline.

Lenders who are not Backstop Parties must deliver the Funding Amount for all Subscribed Term Loans by the Subscription Expiration Deadline.

Lenders who are Backstop Parties must deliver the Funding Amount for all Subscribed Term Loans (if any) and for the applicable Backstop Term Loans (if any) no later than the Backstop Funding Deadline.

The Rights will not be detachable or otherwise transferable separately from the underlying Existing 1L Term Loans. Rather, the Rights, together with the underlying Existing 1L Term Loans with respect to which such Rights were allocated, will trade together and will be evidenced by the underlying Existing 1L Term Loans until the Subscription Expiration Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Existing 1L Term Loans; provided, that following the exercise of any Rights, the Holder thereof shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the above, a "Transfer") the Existing 1L Term Loans corresponding to such Rights unless the Rights Offering is terminated; provided further, that Holders of Allowed First Lien Claims shall be permitted to designate affiliates to participate in the Rights Offering and/or to receive the New RO Common Stock without the need to Transfer any Existing 1L Loans to such affiliate (including any controlled investment affiliates).

As part of the exercise process, following exercise of the Rights, the Existing 1L Term Loans

underlying the Rights that are being exercised will be frozen from Transfer, Lenders that participate in the Rights Offering shall be prohibited from Transferring the underlying Existing 1L Term Loans, and the administrative agent of the Existing 1L Term Loans shall be prohibited from effectuating any such requested Transfers unless the Rights Offering is terminated, as described in the Procedures.

Holders that are Backstop Parties must arrange for the Backstop Party Addendum to be completed and returned to the Subscription Agent.

The offering of the New RO Common Stock before the Petition Date shall be exempt from the registration requirements of the Securities Act of 1933, as amended (the "Securities Act") in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and in reliance on Regulation S under the Securities Act.

The offering, issuance and distribution of the New RO Common Stock under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") to the maximum extent permitted by law, or, if section 1145(a) of the Bankruptcy Code is not available, then the New RO Common Stock is being offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the New RO Common Stock is issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such New RO Common Stock may be resold by the holders thereof without registration unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.

The RO Backstop Shares and Premium Shares are being offered, issued and distributed to certain Backstop Parties without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Resales of New RO Common Stock issued to "underwriters," and resales of RO Backstop Shares and Premium Shares will require registration under the Securities Act or an exemption from registration under the Securities Act. Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, the "Disclosure Statement"), entitled "Certain Securities Law Matters."

The Rights Offering is being conducted by the Company in good faith and in compliance with the Bankruptcy Code. In accordance with section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized debtor under the plan, is not liable, on account

of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

The distribution or communication of the Procedures and the issuance of the New Equity Interests in certain jurisdictions may be restricted by law. No action has been taken or will be taken to permit the distribution or communication of the Procedures in any jurisdiction where any action for that purpose may be required.  Accordingly, the Procedures may not be distributed or communicated, and the Rights Offering Term Loans and New Equity Interests may not be subscribed for or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription or issuance would comply with all applicable laws without the need for the Debtors to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws. Further, the Rights Offering has not been approved or disapproved by the U.S. Securities and Exchange Commission or any other state securities commission or any other regulatory or governmental authority, nor have any of the foregoing passed upon the accuracy or adequacy of the information presented, and any representation to the contrary is a criminal offense. Please consult the Plan, the Disclosure Statement and the Procedures (including the instructions attached thereto) for additional information with respect to this Lender Subscription Form.  Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the Procedures.

None of the Rights distributed in connection with the Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.

The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth herein or in the Procedures.

Please note that you are responsible for all calculations made pursuant to this Lender Subscription Form.

Please refer to the Procedures for details on your entitlement to the New RO Common Stock and your Participant Term Loan Allocation to the extent you participate in the Rights Offering.

If you have any questions, please contact the Subscription Agent at the following phone number or email address: 877-499-4509 (domestic toll-free) or 917-281-4800 (for international calls) or AvayaBallots@kccllc.com.  To obtain copies of the documents, please visit www.kccllc.net/avaya.

SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN AND THE PROCEDURES, ALL SUBSCRIPTIONS SET FORTH IN THIS LENDER SUBSCRIPTION FORM ARE IRREVOCABLE AND WITHDRAWALS WILL NOT BE PERMITTED.

To subscribe, fill out all Items in this Lender Subscription Form completely and legibly.

## Item 1. Amount of Existing 1L Term Loans

I certify that I am a holder of the Existing 1L Term Loans (exclusive of any B-3 Escrow Claims) in the following principal amount (insert amount on the lines below) or that I am the authorized signatory of that holder.  For the purposes of this Lender Subscription Form, do not adjust the principal (face) amount for any accrued or unmatured interest.  Accrued prepetition interest is accounted for in the multiplier set forth in Item 2 and Item 3a below.

If you do not know the principal amount of your Existing 1L Loans, please contact the administrative agent for the Existing 1L Loans immediately.

*Insert aggregate principal amount of Existing 1L Term Loans held, as applicable.*

B-1 Term Loans: _____
                                                    [1A]
B-2 Term Loans: _____ __
                                                    [1B]
B-3 Term Loans (exclusive of any B-3 Escrow Claims)[1]:

_____
                                            [1C]

## Item 2. Funding Amount Calculation

Each Lender is entitled to subscribe for and fund Rights Offering Term Loans in an amount equal to its Pro Rata Share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is its First Lien Claims (exclusive of any B-3 Escrow Claims) and the denominator of which is all First Lien Claims (exclusive of the B-3 Escrow Claims).

Each Lender has the right, but not the obligation, to participate in the Rights Offering by subscribing for and funding Rights Offering Term Loans.

Subject to the terms and conditions set forth in the Plan and the Procedures, each Lender is entitled to subscribe for either ***all or none*** of its Pro Rata Share of Rights Offering Term Loans at the Funding Amount.

By filling in the following blanks, you are indicating that the undersigned Lender is subscribing to fund the principal amount of Rights Offering Term Loans associated with the Principal Amount specified in Box C, on the terms and subject to the conditions set forth in the Procedures.

## Rights Offering Term Loans:

The amount of Rights Offering Term Loans for which the undersigned may subscribe, based on

---

[1] If B-3 Escrow Claims have not been satisfied with Escrow Cash at the time you are completing this Lender Subscription Form, please contact the Subscription Agent for assistance in calculating this amount.

the principal amount shown above, is calculated as follows:

| BOX A | | | | BOX B |
|---|---|---|---|---|
| _____<br>(Insert principal amount of B-1<br>Term Loans from Item 1 above) | X | 0.050231008564 | = | _____<br>[3A]<br>(Principal Amount of Rights Offering Term Loans)<br>(Round down to nearest whole number) |
| _____<br>(Insert principal amount of B-2<br>Term Loans from Item 1 above) | X | 0.050221651369 | = | _____<br>[3B]<br>(Principal Amount of Rights Offering Term Loans)<br>(Round down to nearest whole number) |
| _____<br>(Insert principal amount of B-3<br>Term Loans (exclusive of any B-3 Escrow Claims) from Item 1 above) | X | 0.043335217614 | = | _____<br>[3C]<br>(Principal Amount of Rights Offering Term Loans)<br>(Round down to nearest whole number) |

| BOX C |
|---|
| **Funding Amount**: _____<br>[3A]+[3B]+[3C] |

## Item 3. Payment and Delivery Instructions

**Insert Funding Amount as set forth in BOX C:**

$_____

For Holders that did not check the box in Item 5 below, payment of the Funding Amount calculated pursuant to Item 2 above must be made by wire transfer ONLY of immediately available funds in accordance with the following wire instructions:

*Domestic/International wire:*

| Name of Account: | Computershare Inc AAF for Client Funds 1 |
|---|---|
| Account No.: | 4426942285 |
| SWIFT No.: | BOFAUS3N |
| Bank Name: | Bank of America |
| Bank Address: | 100 West 33rd St. New York, NY 10001 |
| Routing Number: | 026009593 |
| Special Instructions: | Funding for KCC – AVAYA Offer – [Name of Participant] |

Holders of Allowed First Lien Claims who are not Backstop Parties must deliver the Funding Amount for all Subscribed Term Loans shown in Box C above by the Subscription Expiration Deadline.

Holders of Allowed First Lien Claims who are Backstop Parties will receive a separate Funding Notice (as defined in the Backstop Agreement) and must deliver the Funding Amount for all Subscribed Term Loans (if any) and for the applicable Backstop Term Loans (if any) no later than the Backstop Funding Deadline.

**THE PAYMENT MUST BE MADE BY HOLDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

Please provide your completed Lender Subscription Form (or other required instruction, as applicable) to the Subscription Agent. The Funding Amount must be paid by the Subscription Expiration Deadline, unless you are a Backstop Party.

**Item 4. Certification.**

The undersigned hereby certifies that it (i) is the holder of the Existing 1L Term Loans set forth in Item 1 above, or the authorized signatory (the "Authorized Signatory") of such Lender acting on behalf of the Lender, (ii) is entitled to participate in the Rights Offering, (iii) has reviewed a copy of the Plan, the Disclosure Statement and the Procedures (including the Avaya Rights Offering Instructions attached thereto) and other applicable materials and (iv) understands that the exercise of the Rights under the Rights Offering is subject to all the terms and conditions set forth in the Plan and the Procedures.

Please provide your completed Lender Subscription Form to the Subscription Agent by the Subscription Expiration Deadline. By subscribing for the total principal amount of Rights Offering Term Loans shown in Box C above, the Lender (or the Authorized Signatory on behalf of the Lender) acknowledges that payment of the Funding Amount shown in Box C must be made by the Lender by the Subscription Expiration Deadline, unless the Lender is a Backstop Party.

**The Lender (or the Authorized Signatory on behalf of such Lender) acknowledges that, by executing this Lender Subscription Form, the Lender has elected to subscribe for the number of Rights Offering Term Loans associated with the principal amount indicated and will be bound to pay the Funding Amount for the Rights Offering Term Loans it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment.**

**In the event that funds received by the Subscription Agent in payment for a subscribing Lender's Subscribed Term Loans are less than the aggregate Funding Amount for the Subscribed Term Loans of such Lender, the subscription(s) represented by such subscribing Lender's Lender Subscription Form will not be recognized, and the associated Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 of the Procedures relating to the waiver or correction of defects or irregularities.**

Date: _____

Name of Lender: _____

Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____

**Item 5. Backstop Party Representation.**

*(This section is only for Backstop Parties, each of whom is aware of its status as a Backstop Party. If you are a Backstop Party, a fully completed Backstop Party Addendum MUST be provided along with your Lender Subscription Form. A Backstop Party Addendum is attached to this Lender Subscription Form, and the Backstop Party is responsible for forwarding it to the Subscription Agent to confirm that payment does not have to be made prior to the Subscription Expiration Deadline. Please note that checking the box below if you are not a Backstop Party may result in forfeiture of your rights to participate in the Rights Offering.)*

☐    I am a Backstop Party identified in the Backstop Agreement and the Backstop Party Addendum has been included with my form.

**Item 6. Registration Information**

**The Debtors intend that the Rights Offering Term Loans and Backstop Term Loans will be reflected on the register of the Exit Term Loans maintained by the administrative agent for the Exit Term Loans. The Debtors intend that (i) the New RO Common Stock will be issued in book-entry form in accordance with the practices and procedures of DTC, and that DTC, or its Nominee, will be the holder of record of such New RO Common Stock, and (ii) the RO Backstop Shares and Premium Shares will be issued on the books and records of the Company's transfer agent unless the RO Backstop Shares and Premium Shares may be issued in book-entry form in accordance with the practices and procedures of DTC.**

**Please indicate on the lines provided below the name of the Lender or its designee in whose name the Rights Offering Term Loans and Backstop Term Loans should be registered, and in whose name the RO Backstop Shares, Premium Shares and New RO Common Stock should be issued in the event that such instruments are issued in registered form on the books and records of the Company's transfer agent. You may direct that the Rights Offering Term Loans, Backstop Term Loans, the New RO Common Stock, RO Backstop Shares and Premium Shares be issued to different parties in any allocation of your choice. For example, you may request that all Rights Offering Term Loans be delivered to fund 1 while all of the New RO Common Stock be delivered to fund 2.**

**It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

Registration Name[2] Line 1 (Maximum 35 Characters):_____

Registration Name Line 2 (Maximum 35 Characters):_____

(if needed)

Address 1:_____

Address 2:_____

Address 3:_____

City, State, Postal Code:_____

Telephone:_____

Email: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

☐   INDIVIDUAL ACCOUNT;

☐   IRA ACCOUNT;

☐   CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐   PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐   BANK;

☐   NOMINEE ACCOUNTS;

☐   THE NEW C-CORP;

☐   NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐   FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT

---

[2] To the extent there is more than one registrant, please attach a separate sheet with the information required under Item 6.

TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST));

☐ TENANTS IN COMMON;

☐ TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐ JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐ COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Please indicate on the lines provided below the DTC participant information for deposit of the New RO Common Stock, RO Backstop Shares and Premium Shares into the brokerage account of the Lender in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC.**

DTC Participant Name: _____

DTC Participant Number: _____

Beneficial Holder Name: _____

Beneficial Holder Account Number: _____

DTC Participant Contact Name: _____

DTC Participant Contact Telephone: _____

DTC Participant Contact Email: _____

**Item 7. Wire information in the event a refund is needed:**

| Account Name: | |
|---|---|
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

**Once completed, you must return this Lender Subscription Form to the Subscription Agent no later than the Subscription Expiration Deadline.**

**PLEASE RETURN THIS LENDER SUBSCRIPTION FORM ONLY TO THE SUBSCRIPTION AGENT BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

Return completed documents to:
Avaya Rights Offering Subscription

10

c/o KCC
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
AvayaBallots@kccllc.com

**The method of delivery of the Lender Subscription Form and any other required documents is at each Lender's option and sole risk.**

---

**PAYMENT OF THE FUNDING AMOUNT <u>MUST</u> BE MADE BY HOLDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

---

**Item 8. Designee Information.**

**Please complete ONLY if the Rights Offering Term Loans, Backstop Term Loans, RO Backstop Shares, Premium Shares or the New RO Common Stock are to be issued in the name of a designee or designees. Any such party must also submit an IRS Form W-8 or IRS Form W-9, as applicable.**

    (a)    <u>Amount of Designation.</u>[3]

Percentage of Rights Offering Term Loans: _____

Percentage of Backstop Term Loans: _____

Percentage of RO Backstop Shares: _____

Percentage of Premium Shares: _____

Percentage of New RO Common Stock: _____

    (b)    <u>Designee Registration Information.</u>

**Please indicate on the lines provided below the name of the designee in whose name the Rights Offering Term Loans and Backstop Term Loans should be registered, and in whose name the RO Backstop Shares, Premium Shares or the New RO Common Stock should be issued in the event that such instruments are issued in registered form on the books and records of the Company's transfer agent. It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

Registration Name Line 1 (Maximum 35 Characters): _____

---

[3]    To the extent there is more than one designee, please attach a separate sheet with the information required under Item 8.

Registration Name Line 2 (Maximum 35 Characters): _____

(if needed)

Address 1: _____

Address 2: _____

Address 3: _____

City, State, Postal Code: _____

Telephone: _____

Email: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

☐  INDIVIDUAL ACCOUNT;

☐  IRA ACCOUNT;

☐  CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐  PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐  BANK;

☐  NOMINEE ACCOUNTS;

☐  THE NEW C-CORP;

☐  NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐  FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST));

☐  TENANTS IN COMMON;

☐  TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

12

☐     JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐     COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Please indicate on the lines provided below the DTC participant information for deposit of the New RO Common Stock, RO Backstop Shares and Premium Shares into the brokerage account of the designee, in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC.**

DTC Participant Name: _____

DTC Participant Number: _____

Beneficial Holder Name: _____

Beneficial Holder Account Number: _____

DTC Participant Contact Name: _____

DTC Participant Contact Telephone: _____

DTC Participant Contact Email: _____

**BACKSTOP PARTY ADDENDUM**

The undersigned certifies that the undersigned is a party to that certain Backstop Commitment Agreement, dated February 14, 2023, by and among Avaya Inc., the other Debtors party thereto and the Backstop Parties party thereto, and therefore is not required to submit payment of the Funding Amount in connection with the Rights Offering prior to the Subscription Expiration Deadline. A Lender that is a Backstop Party must provide its payment in accordance with Section 2.2 of the Backstop Agreement. If you are a Backstop Party, please submit a properly executed Backstop Party Addendum along with the Lender Subscription Form.

**IN WITNESS WHEREOF**, the undersigned has executed this addendum on and as of the ___ day of _____ , 2023.

<u>**If an Entity**</u>:

Name of Entity:

Signature: _____

By: _____

Its: _____

State or Country of Principal Place of Business: _____

Address: _____

Fax: _____

E-mail

US Tax ID/EIN: _____

OR Check here if non-US (no TIN) ☐

<u>**If an Individual Investor**</u>:

Name of Individual:

Signature: _____

State or Country of Primary Residence: _____

Address: _____

Fax: _____

E-mail: _____

US Tax ID/EIN: _____

OR Check here if non-US (no TIN) ☐

14

## AVAYA RIGHTS OFFERING INSTRUCTIONS

**Terms used and not defined herein shall have the meaning assigned to them in the Plan.**

**To elect to participate in the Rights Offering, you must follow the instructions set out below:**

1.   **Insert** the principal amount of your Existing 1L Term Loans and/or Existing 1L Notes that you hold in the corresponding fields within your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable. There is no minimum principal amount of Existing 1L Term Loans or Existing 1L Notes with respect to which Rights may be exercised.

     If you are a Lender and you do not know the principal amount of your Existing 1L Loans, please contact the administrative agent for the Existing 1L Loans immediately. If you are a Noteholder and you do not know the principal amount of your Existing 1L Notes, please contact your Nominee immediately.  If you are a Noteholder, intending to exercise your Rights you must provide instructions to your Nominee to submit all of your Existing 1L Notes into the ATOP system through DTC to the appropriate contra CUSIP established by DTC.

2.   **Complete** the calculation in Item 2 of your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, which calculates your Funding Amount (i.e., the amount of Rights Offering Term Loans you are entitled to fund in the Rights Offering).

3.   **Read, complete and sign** the certification in Item 4 of your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, and all other requested information in the remaining items.

4.   **Read, complete and sign** an IRS Form W-9 if you are a U.S. person.  If you are a non-U.S. person, read, complete and sign an appropriate IRS Form W-8.  These forms may be obtained from the IRS at its website: www.irs.gov.

5.   **For Noteholders ONLY, instruct** your Nominee to electronically deliver via ATOP your Existing 1L Notes to the appropriate contra CUSIP established by DTC by the Subscription Expiration Deadline. If you are a Noteholder intending to exercise your Rights, you must provide instructions to your Nominee to submit all of your Existing 1L Notes into the ATOP system.

6.   **Return** your signed Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable (each with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to the Subscription Agent prior to the Subscription Expiration Deadline or, for Noteholders, to your Nominee in sufficient time to allow your Nominee to process your instructions and prepare and deliver your Noteholder Beneficial Owner Subscription Form to the Subscription Agent (or otherwise follow the instructions of your Nominee) prior to the Subscription Expiration Deadline.

7.     **Arrange for full payment** of the Funding Amount in immediately available funds, calculated in accordance with Item 2 of your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable.  A Lender or Noteholder who is not a Backstop Party should follow the payment instructions as provided in Item 3of the Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable. Any Backstop Party should follow the payment instructions that will be provided in the Funding Notice, except to the extent of any Funding Amount previously paid by such Backstop Party to the Subscription Agent, or otherwise in accordance with the terms of the Backstop Agreement.

8.     **For Backstop Parties ONLY, confirm** that you are a Backstop Party by checking the appropriate box in Item 5 of your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, so that the Nominee, if applicable, will receive confirmation that does not have to be made prior to the Subscription Expiration Deadline.  If you are a Backstop Party, you must also complete the Backstop Party Addendum which is attached to your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, and submit the Backstop Party Addendum to the Subscription Agent. (This instruction is only for Backstop Parties).

---

**The Subscription Expiration Deadline is 5:00 p.m. (Prevailing Eastern Time) on March 9, 2023 (as such deadline may be extended pursuant to the Rights Offering Procedures).**

**Lender Subscription Forms and Noteholder Beneficial Owner Subscription Forms (each with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by the Subscription Agent and, for Noteholders, the underlying Existing 1L Notes must be delivered through ATOP to the appropriate contra CUSIP established by DTC by the Subscription Expiration Deadline or the subscription(s) represented by your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, will not be recognized, and the associated Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

**For Noteholders, please note that, unless otherwise directed by your Nominee, the Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by your Nominee in sufficient time to allow such Nominee to process and deliver your underlying Existing 1L Notes through ATOP to the appropriate contra CUSIP established by DTC by the Subscription Expiration Deadline or the subscription represented by your Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

**Further, the full payment of the Funding Amount by Lenders and Noteholders who are not Backstop Parties must be received by the Subscription Agent by the Subscription Expiration Deadline or the subscription(s) represented by your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, will not be recognized, and the associated Rights will be deemed forever relinquished and waived,**

---

**subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

**Lenders and Noteholders that are Backstop Parties must deliver the Funding Amount for their Subscribed Term Loans and for the applicable Backstop Term Loans directly to the Subscription Agent, as applicable, pursuant to the Funding Notice (except to the extent of any Funding Amounts previously provided by any such Lenders and Noteholders to the Subscription Agent in accordance with the terms of the Backstop Agreement) no later than the Backstop Funding Deadline, or otherwise in accordance with the terms of the Backstop Agreement.**

**Questions relating to the Rights Offering should be directed to the Subscription Agent at the following phone number or email address: 877-499-4509 (domestic toll-free) or 917-281-4800 (for international calls) or AvayaBallots@kccllc.com.  To obtain copies of the documents, please visit www.kccllc.net/avaya.**

Lenders and Nominees (or Noteholders that are instructed by their Nominees to return the Noteholder Beneficial Owner Subscription Form directly to the Subscription Agent) must return the Lender Subscription Form, and/or Noteholder Beneficial Owner Subscription Form, as applicable, and the appropriate IRS tax form by no later than the Subscription Expiration Deadline to the following:

Avaya Rights Offering Subscription
c/o KCC
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
AvayaBallots@kccllc.com

**Only choose <u>one</u> method of return.  If you choose to return the applicable documents via email, do not follow up with hard copies.**

## **Annex 1**

**Lender Subscription Form**

[*Lender Subscription Form provided as a separate document*.]

**<u>Annex 2</u>**

**Noteholder Beneficial Owner Subscription Form**

[*Noteholder Beneficial Owner Subscription Form provided as a separate document*.]

**<u>Exhibit 6A</u>**

**Noteholder Beneficial Owner Subscription Form**

**NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM
FOR RIGHTS OFFERING**

**FOR USE BY HOLDERS OF
EXISTING 1L NOTES**

**IN CONNECTION WITH THE DEBTORS'
DISCLOSURE STATEMENT DATED FEBRUARY 14, 2023**

---

### SUBSCRIPTION EXPIRATION DEADLINE

**The Subscription Expiration Deadline is 5:00 p.m. (Prevailing Eastern Time) on March 9, 2023, unless otherwise extended pursuant to the terms of the Rights Offering Procedures (the "Procedures"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Procedures.**

**To exercise the Rights with respect to the Existing 1L Notes, each Holder of the underlying Existing 1L Notes (as defined below) as of the date of any such exercise of Rights (a "Noteholder") must (i) return its duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its bank, broker, intermediary, securities nominee or agent (each, a "Nominee") (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration Deadline, and (ii) electronically deliver (or cause to be delivered) such Existing 1L Notes into an appropriate contra CUSIP established by The Depository Trust Company ("DTC") for the Rights Offering through the Automated Tender Offer Program ("ATOP") of DTC, so that they are received by the Subscription Expiration Deadline.**

**Noteholders who are not Backstop Parties must deliver the Funding Amount for all Subscribed Term Loans by the Subscription Expiration Deadline.**

**Noteholders who are Backstop Parties must deliver the Funding Amount for all Subscribed Term Loans (if any) and for the applicable Backstop Term Loans (if any) no later than the Backstop Funding Deadline.**

**The Rights will not be detachable or otherwise transferable separately from the underlying Existing 1L Notes. Rather, the Rights, together with the underlying Existing 1L Notes with respect to which such Rights were allocated, will trade together and will be evidenced by the underlying Existing 1L Notes until the Subscription Expiration Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Existing 1L Notes; provided, that following the exercise of any Rights, the Holder thereof shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the above, a "Transfer") the Existing 1L Notes corresponding to such Rights unless the Rights Offering is terminated; provided further, that Holders of Allowed First Lien Claims shall be permitted to designate**

affiliates to participate in the Rights Offering and/or to receive the New RO Common Stock without the need to Transfer any Existing 1L Notes to such affiliate (including any controlled investment affiliates).

As part of the exercise process, following exercise of the Rights, the Existing 1L Notes underlying the Rights that are being exercised will be frozen from Transfer unless the Rights Offering is terminated, as described in the Procedures.

All Noteholder Beneficial Owner Subscription Forms and/or other instructions required by the Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the applicable underlying Existing 1L Notes through ATOP prior to the Subscription Expiration Deadline.  By instructing its Nominee to submit the underlying Existing 1L Notes through ATOP, the Noteholder is (i) authorizing its Nominee to exercise all Rights associated with the amount of Existing 1L Notes as to which the instruction pertains, and (ii) certifying that it understands that, once submitted, the underlying Existing 1L Notes will be frozen from Transfer unless the Rights Offering is terminated.

Noteholders that are Backstop Parties must arrange for the Backstop Party Addendum to (a) be completed and returned to the Subscription Agent and (b) be provided to their Nominee so that the Nominee will be informed that funding from such Backstop Party does not have to be made prior to the Subscription Expiration Deadline.  Noteholders that are Backstop Parties must deliver the Funding Amount for their Subscribed Term Loans and for the applicable Backstop Term Loans directly to the Subscription Agent pursuant to the Funding Notice (except to the extent of any funding amounts previously provided by any such Noteholders to the Subscription Agent in accordance with the terms of the Backstop Agreement) no later than the Backstop Funding Deadline, or otherwise in accordance with the terms of the Backstop Agreement.

The offering of the New RO Common Stock before the Petition Date shall be exempt from the registration requirements of the Securities Act of 1933, as amended (the "Securities Act") in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and in reliance on Regulation S under the Securities Act.

The offering, issuance and distribution of the New RO Common Stock under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") to the maximum extent permitted by law, or, if section 1145(a) of the Bankruptcy Code is not available, then the New RO Common Stock is being offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the New RO Common Stock is issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such New RO Common Stock may be resold by the

holders thereof without registration unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.

The RO Backstop Shares and Premium Shares are being offered, issued and distributed to certain Backstop Parties without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Resales of New RO Common Stock issued to "underwriters," and resales of RO Backstop Shares and Premium Shares will require registration under the Securities Act or an exemption from registration under the Securities Act. Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, the "Disclosure Statement"), entitled "Certain Securities Law Matters."

The Rights Offering is being conducted by the Company in good faith and in compliance with the Bankruptcy Code. In accordance with section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

The distribution or communication of the Procedures and the issuance of the New Equity Interests in certain jurisdictions may be restricted by law. No action has been taken or will be taken to permit the distribution or communication of the Procedures in any jurisdiction where any action for that purpose may be required. Accordingly, the Procedures may not be distributed or communicated, and the Rights Offering Term Loans and New Equity Interests may not be subscribed for or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription or issuance would comply with all applicable laws without the need for the Debtors to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws. Further, the Rights Offering has not been approved or disapproved by the U.S. Securities and Exchange Commission or any other state securities commission or any other regulatory or governmental authority, nor have any of the foregoing passed upon the accuracy or adequacy of the information presented, and any representation to the contrary is a criminal offense. Please consult the Plan, the Disclosure Statement and the Procedures (including the instructions attached thereto) for additional information with respect to this Noteholder Beneficial Owner Subscription Form. Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the Procedures.

**None of the Rights distributed in connection with the Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.**

**The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth herein or in the Procedures.**

**Please note that you are responsible for all calculations made pursuant to this Noteholder Beneficial Owner Subscription Form.**

**Please refer to the Procedures for details on your entitlement to the New RO Common Stock and your Participant Term Loan Allocation to the extent you participate in the Rights Offering.**

**If you have any questions, please contact the Subscription Agent at the following phone number or email address: 877-499-4509 (domestic toll-free) or 917-281-4800 (for international calls) or AvayaBallots@kccllc.com.  To obtain copies of the documents, please visit www.kccllc.net/avaya.**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN AND THE PROCEDURES, ALL SUBSCRIPTIONS SET FORTH IN THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM ARE IRREVOCABLE AND WITHDRAWALS WILL NOT BE PERMITTED.**

**To subscribe, fill out all Items in this Noteholder Beneficial Owner Subscription Form completely and legibly –** *and follow the instructions of your Nominee with respect to the submission of your instructions to the Nominee.*

**Item 1. Amount of Existing 1L Notes**

I certify that I am a beneficial owner of the aggregate principal amounts as set forth below of the Debtors' 8.00% Exchangeable Senior Secured Notes due 2027 (the "Exchangeable Notes") and 6.125% Senior First Lien Notes due 2028 (the "Legacy Notes" and, together with the Exchangeable Notes, the "Existing 1L Notes") in the following principal amounts (insert amount on the lines below) or that I am the authorized signatory of that beneficial holder. For the purposes of this Noteholder Beneficial Owner Subscription Form, do not adjust the principal (face) amount for any accrued or unmatured interest. Accrued prepetition interest is accounted for in the multiplier set forth in Item 2 and Item 3a below.

If you do not know the principal amount of your Existing 1L Notes, please contact your Nominee immediately.

*Insert aggregate principal amount of Existing 1L Notes held, as applicable.*

Exchangeable Notes (CUSIP
053499AN9/US053499AN91): _____
                                                   [1A]

Legacy Notes (CUSIP
053499AL3/US053499AL36): _____
                                                  [1B]

Legacy Notes (CUSIP
U05258AF2/USU05258AF20): _____
                                                  [1C]

**IMPORTANT NOTE: IF YOU HOLD YOUR EXISTING 1L NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST COMPLETE AND RETURN A SEPARATE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM TO EACH APPLICABLE NOMINEE. YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM.**

**Item 2. Funding Amount Calculation**

Each Noteholder is entitled to subscribe for and fund Rights Offering Term Loans in an amount equal to its Pro Rata Share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is its First Lien Claims (exclusive of any B-3 Escrow Claims) and the denominator of which is all First Lien Claims (exclusive of the B-3 Escrow Claims).

Each Noteholder has the right, but not the obligation, to participate in the Rights Offering by subscribing for and funding Rights Offering Term Loans.

Subject to the terms and conditions set forth in the Plan and the Procedures, each Noteholder is entitled to subscribe for either ***all or none*** of its Pro Rata Share of Rights Offering Term Loans at the Funding Amount.

By filling in the following blanks, you are indicating that the undersigned Noteholder is subscribing to fund the principal amount of Rights Offering Term Loans associated with the

6

Principal Amount specified in Box B, on the terms and subject to the conditions set forth in the Procedures.

**Rights Offering Term Loans:**

The amount of Rights Offering Term Loans for which the undersigned may subscribe, based on the principal amount shown above, is calculated as follows:

| BOX A | | | | | BOX B |
|---|---|---|---|---|---|
| _____ <br> (Insert principal amount of Exchangeable Notes from Item 1 above) | X | 0.056024314120 | = | | _____ <br> [3A] <br> (Principal Amount of Rights Offering Term Loans) <br> (Round down to nearest whole number) |
| _____ <br> (Insert principal amount of Legacy Notes from Item 1 above ([1B]+[1C])) | X | 0.052887110504 | = | | _____ <br> [3B] <br> (Principal Amount of Rights Offering Term Loans) <br> (Round down to nearest whole number) |

| BOX C |
|---|
| **Funding Amount**: _____ <br> [3A]+[3B] |

**Item 3. Payment and Delivery Instructions**

**Insert Funding Amount as set forth in BOX C:**

$_____

For Noteholders that did not check the box in Item 5 below, payment of the Funding Amount calculated pursuant to Item 2 above must be made by wire transfer ONLY of immediately available funds in accordance with the following wire instructions:

*Domestic/International wire:*

| Name of Account: | **Computershare Inc AAF for Client Funds 1** |
|---|---|
| Account No.: | 4426942285 |
| SWIFT No.: | BOFAUS3N |
| Bank Name: | Bank of America |
| Bank Address: | 100 West 33rd St. New York, NY 10001 |
| Routing Number: | 026009593 |
| Special Instructions: | Funding for KCC – AVAYA Offer – [Name of Participant] |

**Holders of Allowed First Lien Claims who are not Backstop Parties must deliver the Funding Amount for all Subscribed Term Loans shown in Box C above by the Subscription Expiration Deadline.**

**Holders of Allowed First Lien Claims who are Backstop Parties will receive a separate Funding Notice (as defined in the Backstop Agreement) and must deliver the Funding Amount for all Subscribed Term Loans (if any) and for the applicable Backstop Term Loans (if any) no later than the Backstop Funding Deadline.**

**THE PAYMENT MUST BE MADE BY NOTEHOLDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

Please provide your completed Noteholder Beneficial Owner Subscription Form (or other required instruction, as applicable) to your Nominee **in sufficient time** to allow such Nominee to deliver the aggregate principal amount of Existing 1L Notes shown in Box A via ATOP by the Subscription Expiration Deadline.

---

**PLEASE NOTE: NO SUBSCRIPTION WILL BE VALID UNLESS THE RELEVANT EXISTING 1L NOTES HAVE BEEN TENDERED THROUGH ATOP BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

---

**Item 4. Certification.**

The undersigned hereby certifies that it (i) is the beneficial owner of the Existing 1L Notes set forth in Item 1 above or the authorized signatory (the "Authorized Signatory") of such Noteholder acting on behalf of the Noteholder, (ii) is entitled to participate in the Rights Offering, (iii) has reviewed a copy of the Plan, the Disclosure Statement and the Procedures (including the Avaya Rights Offering Instructions attached thereto) and other applicable materials and (iv) understands that the exercise of the Rights under the Rights Offering is subject to all the terms and conditions set forth in the Plan and the Procedures.

Please provide your completed Noteholder Beneficial Owner Subscription Form to your Nominee in sufficient time to allow your Nominee to process and deliver your underlying Existing 1L Notes through ATOP by the Subscription Expiration Deadline. By subscribing for the total principal amount of Rights Offering Term Loans shown in Box C above, the Noteholder (or the Authorized Signatory on behalf of the Noteholder) is hereby instructing its Nominee to arrange for the delivery of the Existing 1L Notes shown in Box A via ATOP by the Subscription Expiration Deadline, and acknowledges that payment of the Funding Amount shown in Box C associated with the delivery of such Existing 1L Notes must be paid by the Noteholder by the Subscription Expiration Deadline, unless the Noteholder is a Backstop Party.

**The Noteholder (or the Authorized Signatory on behalf of such Noteholder) acknowledges that, by executing this Noteholder Beneficial Owner Subscription Form or otherwise providing its subscription instructions to its Nominee, the Noteholder has elected to subscribe for the principal amount of Rights Offering Term Loans associated with the principal amount indicated, and will be bound to pay the Funding Amount for the Rights Offering Term Loans it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment.**

**In the event that funds received by the Subscription Agent in payment for a subscribing Noteholder's Subscribed Term Loans are less than the aggregate Funding Amount for the Subscribed Term Loans of such Noteholder, the subscription(s) represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 of the Procedures relating to the waiver or correction of defects or irregularities.**

Date: _____

Name of Noteholder: _____

Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____

**Item 5. Backstop Party Representation.**

*(This section is only for Backstop Parties, each of whom is aware of its status as a Backstop Party.  If you are a Backstop Party, a fully completed Backstop Party Addendum MUST be provided to your Nominee.  A Backstop Party Addendum is attached to the Noteholder Beneficial Owner Subscription Form, and the Backstop Party is responsible for forwarding it to their Nominee who will confirm that payment does not have to be made prior to the Subscription Expiration Deadline.  Please note that checking the box below if you are not a Backstop Party may result in forfeiture of your rights to participate in the Rights Offering.)*

☐　　I am a Backstop Party identified in the Backstop Agreement and the Backstop Party Addendum has been provided to my Nominee.

**Item 6. Tender of Existing 1L Notes; Exercise Instruction.**

**Each Noteholder that exercises Rights in respect of Existing 1L Notes must direct its Nominee to electronically tender their applicable underlying Existing 1L Notes in the principal amount(s) set forth in Item 1 (which Nominees should copy below) to an account of the Subscription Agent via ATOP in order to participate in the Rights Offering.  Nominees must tender Noteholders' Existing 1L Notes on a per holder basis.  Nominees may not submit bulk tender instructions.**

| To Be Completed by Nominee Only (Evidence of electronic delivery of Existing 1L Notes via ATOP) | | | | | |
|---|---|---|---|---|---|
| **CUSIP / ISIN** | **Security Description** | **Principal Amount of Existing 1L Notes Tendered into ATOP** | **Name & DTC # of Nominee Holding Position at DTC** | **DTC ATOP Confirmation Number (VOI) (If Applicable)** | **Euroclear or Clearstream Reference Number (If Applicable)** |
| 74153QAH5/US 74153QAH56 | Exchangeable Notes | $ | | | |
| U05258AF2/ USU05258AF20 | Legacy Notes | $ | | | |
| 053499AL3/ US053499AL36 | Legacy Notes | $ | | | |

10

**Item 7. Registration Information**

The Debtors intend that the Rights Offering Term Loans and Backstop Term Loans will be reflected on the register of the Exit Term Loans maintained by the administrative agent for the Exit Term Loans. The Debtors intend that (i) the New RO Common Stock will be issued in book-entry form in accordance with the practices and procedures of DTC, and that DTC, or its Nominee, will be the holder of record of such New RO Common Stock, and (ii) the RO Backstop Shares and Premium Shares will be issued on the books and records of the Company's transfer agent unless the RO Backstop Shares and Premium Shares may be issued in book-entry form in accordance with the practices and procedures of DTC.

Please indicate on the lines provided below the name of the Noteholder in whose name the Rights Offering Term Loans and Backstop Term Loans should be registered, and in whose name the RO Backstop Shares, Premium Shares and New RO Common Stock should be issued in the event that such instruments are issued in registered form on the books and records of the Company's transfer agent. You may direct that the Rights Offering Term Loans, Backstop Term Loans, the New RO Common Stock, RO Backstop Shares and Premium Shares be issued to different parties in any allocation of your choice. For example, you may request that all Rights Offering Term Loans be delivered to fund 1 while all of the New RO Common Stock be delivered to fund 2. It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:

Registration Name[1] Line 1 (Maximum 35 Characters):_____

Registration Name Line 2 (Maximum 35 Characters):_____

(if needed)

Address 1:_____

Address 2:_____

Address 3:_____

City, State, Postal Code:_____

Telephone:_____

Email: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

---

[1] To the extent there is more than one registrant, please attach a separate sheet with the information required under Item 7.

☐ INDIVIDUAL ACCOUNT;

☐ IRA ACCOUNT;

☐ CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐ PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐ BANK;

☐ NOMINEE ACCOUNTS;

☐ THE NEW C-CORP;

☐ NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐ FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST));

☐ TENANTS IN COMMON;

☐ TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐ JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐ COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Please indicate on the lines provided below the DTC participant information for deposit of the RO Backstop Shares and Premium Shares into the brokerage account of the Noteholder in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC. The New RO Common Stock is expected to be issued to the same DTC Participant and Beneficial Holder as the Exchangeable Notes and/or Legacy Notes, unless a Noteholder designates an alternative recipient pursuant to Item 9 below.**

DTC Participant Name: _____

DTC Participant Number: _____

Beneficial Holder Name: _____

Beneficial Holder Account Number: _____

DTC Participant Contact Name: _____

DTC Participant Contact Telephone: _____

DTC Participant Contact Email: _____

**Item 8. Wire information in the event a refund is needed:**

| | |
|---|---|
| Account Name: | |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

**Once completed, you must return this Noteholder Beneficial Owner Subscription Form (or other form of instruction required by your Nominee) to your Nominee in accordance with your Nominee's instructions in sufficient time for your Nominee to tender your Existing 1L Notes to an appropriate contra CUSIP established by the DTC through DTC's ATOP system no later than the Subscription Expiration Deadline.**

**PLEASE RETURN THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM OR OTHER INSTRUCTION (AS REQUIRED BY THE NOMINEE) ONLY TO YOUR NOMINEE. <u>DO NOT</u> RETURN THIS FORM DIRECTLY TO THE SUBSCRIPTION AGENT, UNLESS YOUR NOMINEE HAS ALREADY TENDERED YOUR EXISTING 1L NOTES THROUGH ATOP OR OTHERWISE AND THE RELATED VOI NUMBER(S) (IF APPLICABLE) ARE PROVIDED ON THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM.**

**THE SUBSCRIPTION AGENT MUST BE IN RECEIPT OF THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

Return completed documents to:
Avaya Rights Offering Subscription
c/o KCC
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
AvayaBallots@kccllc.com

     **The method of delivery of the applicable Noteholder Beneficial Owner Subscription Form (or other form of instruction required by your Nominee) and any other required documents is at each Noteholder's option and sole risk. Each Noteholder must ensure that its Nominee tenders its Existing 1L Notes at or prior to the Subscription Expiration Deadline and, except for Noteholders who are Backstop Parties, coordinates payment of the Funding Amount.**

14

**PLEASE NOTE: THE SUBSCRIPTION WILL NOT BE VALID UNLESS THE RELEVANT EXISTING 1L NOTES HAVE BEEN TENDERED THROUGH ATOP OR OTHERWISE BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

**PAYMENT <u>MUST</u> BE MADE BY NOTEHOLDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

**Item 9. Designee Information.**

**Please complete ONLY if the Rights Offering Term Loans, Backstop Term Loans, RO Backstop Shares, Premium Shares or the New RO Common Stock are to be issued in the name of a designee or designees. Any such party must also submit an IRS Form W-8 or IRS Form W-9, as applicable.**

    (a)    <u>Amount of Designation.</u>[2]

Percentage of Rights Offering Term Loans: _____

Percentage of Backstop Term Loans: _____

Percentage of RO Backstop Shares: _____

Percentage of Premium Shares: _____

Percentage of New RO Common Stock: _____

    (b)    <u>Designee Registration Information.</u>

**Please indicate on the lines provided below the name of the designee in whose name the Rights Offering Term Loans and Backstop Term Loans should be registered, and in whose name the RO Backstop Shares, Premium Shares or the New RO Common Stock should be issued in the event that such instruments are issued in registered form on the books and records of the Company's transfer agent.**

**It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

Registration Name Line 1 (Maximum 35 Characters): _____

Registration Name Line 2 (Maximum 35 Characters): _____

(if needed)

Address 1: _____

Address 2: _____

Address 3: _____

City, State, Postal Code: _____

Telephone: _____

Email: _____

U.S. Tax Identification Number: _____

---

[2]    To the extent there is more than one designee, please attach a separate sheet with the information required under Item 9.

Check here if non-US (no TIN) ☐

☐   INDIVIDUAL ACCOUNT;

☐   IRA ACCOUNT;

☐   CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐   PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐   BANK;

☐   NOMINEE ACCOUNTS;

☐   THE NEW C-CORP;

☐   NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐   FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST));

☐   TENANTS IN COMMON;

☐   TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐   JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐   COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Please indicate on the lines provided below the DTC participant information for deposit of the New RO Common Stock, RO Backstop Shares and Premium Shares into the brokerage account of the designee, in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC.**

DTC Participant Name: _____

DTC Participant Number: _____

Beneficial Holder Name: _____

Beneficial Holder Account Number: _____

DTC Participant Contact Name: _____

DTC Participant Contact Telephone: _____

DTC Participant Contact Email: _____

## BACKSTOP PARTY ADDENDUM

The undersigned certifies that the undersigned is a party to that certain Backstop Commitment Agreement, dated February 14, 2023, by and among Avaya Inc., the other Debtors party thereto and the Backstop Parties party thereto, and therefore is not required to submit payment of the Funding Amount in connection with the Rights Offering prior to the Subscription Expiration Deadline. A Noteholder that is a Backstop Party must provide its payment in accordance with Section 2.2 of the Backstop Agreement. If you are a Backstop Party, please instruct your Nominee to submit a properly executed Backstop Party Addendum along with the Noteholder Beneficial Owner Subscription Form.  The information in the table below should be identical to the information provided in Item 7 of the Noteholder Beneficial Owner Subscription Form.

**IN WITNESS WHEREOF**, the undersigned has executed this addendum on and as of the ___ day of _____, 2023.

**If an Entity:**

Name of Entity:

Signature: _____

By: _____

Its: _____

State or Country of Principal Place of Business: _____

Address: _____

Fax: _____

E-mail: _____

US Tax ID/EIN: _____

OR Check here if non-US (no TIN) ☐

**If an Individual Investor:**

Name of Individual:

Signature: _____

State or Country of Primary Residence: _____

Address: _____

Fax: _____

E-mail: _____

US Tax ID/EIN: _____

OR Check here if non-US (no TIN) ☐

| To Be Completed by Nominee Only (Evidence of electronic delivery of Existing 1L Notes via ATOP) | | | | | |
|---|---|---|---|---|---|
| CUSIP / ISIN | Security Description | Principal Amount of Existing 1L Notes Tendered into ATOP | Name & DTC # of Nominee Holding Position at DTC | DTC ATOP Confirmation Number (VOI) (If Applicable) | Euroclear or Clearstream Reference Number (If Applicable) |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |