United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 22, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 )  |
| AVAYA INC., *et al.*,[1] | ) Case No. 23-90088 (DRJ) ) |
| Debtors. | ) (Jointly Administered) ) |
| | ) **Re: Docket No. 46** |

**FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO (A) CONTINUE USING
THE CASH MANAGEMENT SYSTEM, (B) MAINTAIN
EXISTING BANK ACCOUNTS, BUSINESS FORMS, AND
BOOKS AND RECORDS, AND (C) CONTINUE USING THE
INVESTMENT ACCOUNT AND THE INVESTMENT POLICY,
(II) AUTHORIZING CONTINUED INTERCOMPANY TRANSACTIONS,
(III) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY TRANSACTIONS, AND (IV) GRANTING RELATED RELIEF**

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) continue using the Cash Management System, including honoring certain prepetition obligations related thereto, (ii) maintain existing Bank Accounts, Business Forms, and Books and Records, and (iii) continue using the Investment Account and the Investment Policy, (b) authorizing the Debtors to continue Intercompany Transactions, (c) granting administrative expense status to all Postpetition Intercompany Transactions, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://www.kccllc.net/avaya. The location of Debtor Avaya Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 350 Mount Kemble Avenue, Morristown, New Jersey 07960.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court, if any; and this Court having determined that the legal and factual bases set forth in support of the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. Subject to the limitations of this Final Order, the Debtors are authorized to: (a) continue using the Cash Management System as described in the Motion and honor any prepetition obligations related to the use thereof, including, but not limited to, any prefunding arrangements consistent with prepetition practice with the Cash Management Banks; (b) designate, maintain, and close any or all of their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on **Exhibit 1** attached hereto, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds from the Bank Accounts by all means, including checks, wire transfers, ACH transfers, and other debits or electronic means; (d) treat their prepetition Bank Accounts for all purposes as debtor in possession accounts; (e) open new debtor in possession Bank Accounts; and (f) pay the Bank Fees, including any prepetition amounts, and any ordinary course Bank Fees incurred in connection with the Bank

Accounts, and to otherwise perform their obligations under the Bank Account agreements; *provided* that in the case of each of (a) through (f), such action is taken in the ordinary course of business and consistent with prepetition practices.

2. The Debtors are authorized to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, and maintain and continue using, in their present form, the Books and Records; *provided* that once they have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor In Possession" and with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession" within ten (10) business days.

3. Section 345 of the Bankruptcy Code requiring that the Debtor Bank Accounts be maintained at U.S. Trustee authorized depositories is waived with respect to the Debtor Bank Accounts existing as of the Petition Date.

4. The Debtors are authorized to continue investing funds in accordance with the Investment Policy, in each case, in the ordinary course of business and consistent with prepetition practices, and the requirements of section 345 of the Bankruptcy Code are hereby waived with respect to such deposit and investment practices.

5. Except as otherwise provided in this Final Order and only to the extent sufficient funds standing in the Debtors' credit are available in each applicable Bank Account, all Cash Management Banks at which the Bank Accounts are maintained are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, consistent with prepetition

practices, including prefunding arrangements, and to receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH and other transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; ; provided that the Debtors will instruct the Cash Management Banks as to which checks, drafts, wire transfers (excluding any wire transfers or ACH transfers that the Cash Management Banks are obligated to settle), or other items presented, issued, or drawn, shall not be honored.

6. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

7. Except as otherwise provided in this Final Order, the Cash Management Banks are authorized to charge, and the Debtors are authorized to pay, honor, or allow, prepetition and postpetition fees, costs, charges, overdrafts, dishonored or returned checks, and expenses, including the Bank Fees, and charge back returned items, whether such items were deposited prepetition or postpetition, to the Bank Accounts in the ordinary course of business and consistent with prepetition practices. Any such postpetition fees, costs, charges, overdrafts, dishonored or returned checks, and expenses, including the Bank Fees, or charge-backs that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

8. As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Cash Management Banks.

9. The Debtors are authorized and directed, subject to the terms of any Financing Orders, to fund the Initial Intercompany Transaction and are authorized to continue Postpetition Intercompany Transactions in the ordinary course of business; *provided* that subject to the Intercompany Transfer Mechanic in all respects, each Debtor shall: (a) continue to pay its obligations consistent with such Debtor's prepetition practices with respect to intercompany transfers and obligations, and in no event shall any of the Debtors pay the prepetition or postpetition obligations of any other Debtor in a manner inconsistent with such Debtor's prepetition practices; (b) continue to maintain current records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, and properly recorded on applicable intercompany accounts; and (c) on or before the fifteenth (15th) day of each month, provide the Notice Parties a monthly summary of any Postpetition Intercompany Transactions that occurred during the preceding month, which summary shall include (i) the name of the Debtor transferor, (ii) the name of the transferee, (iii) the amount of the transfer, and (iv) the purpose of the transfer, with the first such summary to be provided to the Notice Parties no later than March 15, 2023.

10. Subject to the terms of any Financing Order, the Debtors' use of funds from the Foreign Reserve Account for any intercompany loans (the "Foreign Reserve Account Withdrawal") shall, in addition to the Intercompany Transfer Mechanic, be subject to the following procedures: (i) the Debtors shall submit in writing to the DIP Term Loan Agent, with a copy the DIP ABL Agent and its advisors and the advisors to the Akin Ad Hoc Group and the PW Ad Hoc Group, a withdrawal request (the "Foreign Reserve Account Withdrawal Notice"), which Foreign Reserve Account Withdrawal Notice shall include (a) the proposed foreign non-Debtor recipient of the transfer; (b) the proposed transfer amount; and (c) the proposed use of funds; and (ii) the

DIP Term Loan Agent shall, within three (3) business days from receipt of the Foreign Reserve Account Withdrawal Notice, advise the Debtors if the Required DIP Term Lenders consent to any such Foreign Reserve Account Withdrawal, which consent shall not be unreasonably withheld.

11.     Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all valid postpetition payments on account of a Postpetition Intercompany Transaction (a) from a Debtor to another Debtor or (b) from a non-Debtor affiliate to a Debtor, shall in each case be accorded administrative expense status, subject and junior to the claims, including adequate protection claims, granted in connection with the DIP Financing in accordance with any Financing Order, except to the extent such Postpetition Intercompany Transactions are on account of antecedent debts.

12.     Unless prohibited by applicable law, transfers made by a Debtor to a non-Debtor affiliate pursuant to a Postpetition Intercompany Transaction (including disbursements from the Foreign Reserve Account) shall be deemed a claim against, and loan to, such non-Debtor affiliate (and not a contribution of capital), except to the extent such Postpetition Intercompany Transactions are on account of antecedent debts.

13.     The Debtors shall maintain accurate and detailed records of all transfers, including the Postpetition Intercompany Transactions, in accordance with their prepetition practices, so that all transactions may be ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

14.     Except as otherwise set forth herein, the Debtors and the Cash Management Banks may, without further order of the Court, and to the extent permitted under the terms of any Financing Order, agree and implement changes to the Cash Management System and procedures

in the ordinary course of business. The Debtors are only authorized to close any Bank Accounts after providing seven (7) days prior written notice to the Notice Parties.

15. The Debtors are authorized to open new bank accounts so long as (a) any such new account is with one of the Debtors' existing Cash Management Banks or with a bank that (i) is insured with the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) is designated as an authorized depository by the U.S. Trustee and (b) the Debtors provide seven (7) days prior written notice to the Notice Parties of the opening of such account; *provided* that each account opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Final Order, be deemed a Bank Account as if it had been listed on **Exhibit 1** attached hereto, and the bank at which such new account is maintained shall, for purposes of this Final Order, be deemed a Cash Management Bank.

15. Nothing contained herein shall prevent the Debtors from closing any Bank Accounts as they may deem necessary and appropriate, to the extent consistent with any orders of the Court relating thereto, and any relevant Cash Management Bank is authorized to honor the Debtors' requests to close such Bank Accounts.

16. The Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business and without further order of the Court on account of (a) all checks drawn on the Debtors' accounts that were cashed at the Cash Management Banks' counters or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date; (b) all checks, ACH entries, or other items deposited in, or credited to, one of the Debtors' accounts with such bank prior to the Petition Date which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition and

postpetition amounts outstanding, if any, owed to the Cash Management Bank as Bank Fees for the maintenance of the Cash Management System and charge back returned items to the Bank Accounts in the ordinary course.

17. Notwithstanding any other provision of this Final Order, should any Cash Management Bank honor a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, such Cash Management Bank shall not be deemed to be nor shall be liable to the Debtors, their estates or any other person or entity, or otherwise be in violation of this Final Order. The Cash Management Banks may rely, without a duty of inquiry, upon the failure of the Debtors to issue a stop payment order with respect to any item, whether such item is issued prepetition or postpetition, as a direction by the Debtors that such item be paid.

18. All time periods set forth in this Final Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

19. Notwithstanding the relief granted herein and any actions taken pursuant to such relief, and subject to the administrative status afforded pursuant to Paragraph 10 of this Final Order, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an

administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

20. Notwithstanding anything to the contrary in this Final Order, any payment made or to be made hereunder, and any authorization herein, shall be subject to the requirements (if any) imposed on the Debtors under any Financing Orders, including any documentation with respect to such financing and any budget in connection with such Financing Order.  In the event of any conflict between the terms of this Final Order and a Financing Order, the terms of the applicable Financing Order shall control (solely to the extent of such conflict).

21. The contents of this Motion satisfy the requirements of Bankruptcy Rule 6003(b).

22. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

23. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

24. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

25. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Signed: March 22, 2023.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## Exhibit 1

## Bank and Investment Accounts

| Entity | Bank | Country | Currency | Account Number | Account Designation[1] | Account Balance |
|---|---|---|---|---|---|---|
| Avaya Inc. | JPMorgan | USA | USD | Ending 4399 | Main Concentration Account | $0 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 7562 | Deposit | $713,000 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 4724 | Deposit | $5,069,000 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 6707 | Deposit | $0 |
| Avaya Inc. | Citibank | USA | USD | Ending 5852 | Deposit | $0 |
| Avaya Inc. | Citibank | USA | USD | Ending 8000 | Deposit | $0 |
| Avaya Management | JPMorgan | USA | USD | Ending 6390 | Deposit | $0 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 4410 | Disbursement | $1,402,000 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 4509 | Disbursement | $771,000 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 6715 | Disbursement | $24,319,000 |
| Avaya Federal | JPMorgan | USA | USD | Ending 4432 | Disbursement | $1,177,000 |
| Avaya Management | JPMorgan | USA | USD | Ending 6382 | Disbursement | $630,000 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 1412 | Payroll | $4,710,000 |
| Avaya Federal | JPMorgan | USA | USD | Ending 1984 | Payroll | $1,097,000 |
| Intellisist | JPMorgan | USA | USD | Ending 9756 | Operating | $779,000 |
| Avaya Holdings Corp. | JPMorgan | USA | USD | Ending 6801 | Operating | $0 |
| Sierra Communication | JPMorgan | USA | USD | Ending 3147 | Operating | $0 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 4763 | Investment Transfer/DIP Term Loan Proceeds | $0 |
| Avaya Inc. | BOA | USA | USD | Ending 0975 | Master Account | $259,000 |
| Avaya Inc. | BOA | USA | USD | Ending 0988 | Deposit | $0 |
| Avaya Inc. | BOA | USA | USD | Ending 0991 | Deposit | $0 |
| Avaya Inc. | BOA | USA | USD | Ending 3441 | Deposit | $0 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 7418 | Customs | $0 |
| Avaya Inc. | Citibank | USA | USD | Ending 6392 | Environmental Escrow | $0 |

---

[1]  These descriptions of Bank Account types are for illustrative purposes only.  A single Bank Account may fall into more than one of the categories described above.

| Entity | Bank | Country | Currency | Account Number | Account Designation[1] | Account Balance |
|---|---|---|---|---|---|---|
| Avaya Inc. | Delaware Trust | USA | USD | Ending 5418 | IP Escrow | $0 |
| Avaya Cloud | JPMorgan | USA | USD | Ending 2044 | Operating | $954,000 |
| Avaya EMEA | Citibank | Greece | EUR | Ending 7017 | Operating | $109,000 |
| Avaya EMEA | Citibank | Portugal | EUR | Ending 4019 | Operating | $901,000 |
| Avaya EMEA | Citibank | Saudi Arabia | SAR | Ending 9021 | Operating | $4,000 |
| Avaya EMEA | Citibank | Saudi Arabia | USD | Ending 9005 | Operating | $0 |
| Avaya EMEA | Saudi British Bank | Saudi Arabia | SAR | Ending 8001 | Operating | $35,000 |
| Avaya EMEA | JPMorgan | Saudi Arabia | SAR | Ending 3522 | Payroll | $1,000 |
| Avaya EMEA | Citibank | South Africa | ZAR | Ending 1018 | Operating | $876,000 |
| Sierra AP | Citibank | Thailand | THB | Ending 4005 | Operating | $1,252,000 |
| Sierra AP | Citibank | Taiwan | TWD | Ending 4008 | Operating | $1,119,000 |
| Avaya Inc. | Goldman Sachs | USA | USD | Ending 9100 | Investment | $0 |
| Avaya Inc. | JPMorgan | USA | USD | Ending 8754 | Utilities Escrow | $0 |
| Avaya Inc. | Citibank | USA | USD | Ending 7900 | Foreign Reserve Account | $0 |

13